8/31/22, 8:18 AM
Case Summary



## 2022-CV-000447 : Luanne Leeds vs. Allianz Risk Consulting LLC, et al.

### DISTRICT COURTS - Shawnee County District Court

| Case Number | 2022-CV-000447 |
|---|---|
| Case Type | Other |
| Opened | |
| Status | Active |

| | |
|---|---|
| Plaintiff | Luanne Leeds |
| Defendant | Allianz Risk Consulting LLC et al |
| Judge | Teresa Watson - Division SNTEWATS |

⊞ Show/Hide Participants

| File Date | Case History |
|---|---|
| 07-26-2022 | Petition PLE: Petition |
| 07-26-2022 | Summons as to Allianz Risk Consulting LLC PLE: Summons |
| 07-26-2022 | Summons as to AssuredPartners Aerospace LLC PLE: Summons |
| 08-18-2022 | Return of Service of Summons as to AssuredPartners Aerospace LLC Certified Mail 08/15/2022 RET: Return of Service |
| 08-22-2022 | Generated from document Motion - Allianz Risk Consulting LLC |
| 08-22-2022 | Generated from document Alias Summons - Allianz Risk Consulting LLC |
| 08-22-2022 | Generated from document Alias Summons - Allianz Risk Consulting LLC |
| 08-22-2022 | Entry of Appearance INF: Entry of Appearance |
| 08-22-2022 | Entry of Appearance INF: Entry of Appearance |
| 08-22-2022 | Entry of Appearance INF: Entry of Appearance |
| 08-22-2022 | Entry of Appearance INF: Entry of Appearance |
| 08-22-2022 | Generated from document Entry of Appearance - Allianz Risk Consulting LLC |
| 08-22-2022 | Generated from document Entry of Appearance - Allianz Risk Consulting LLC |
| 08-23-2022 | Clerk's 14 Day Extension (Proposed) ORD: Clerk's Extension |
| 08-25-2022 | Alias Summons as to AssuredPartners Aerospace LLC PLE: Summons - Alias |

ELECTRONICALLY FILED
2022 Jul 26 PM 2:34
CLERK OF THE SHAWNEE COUNTY DISTRICT COURT
CASE NUMBER: 2022-CV-000447

Ronald P. Pope, #11913
Thomas B. Diehl, #23166
RALSTON, POPE & DIEHL, L.L.C.
2913 S.W. Maupin Lane
Topeka, KS 66614
Phone: (785) 273-8002
Fax: (785) 273-0744
ron@ralstonpope.com
tom@ralstonpope.com
*ATTORNEY FOR PLAINTIFF*

IN THE DISTRICT COURT OF SHAWNEE COUNTY, KANSAS
DIVISION NO. ___

| | | |
|---|---|---|
| LUANNE LEEDS as Executrix of the Estate of WILLIAM LEEDS, deceased, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 2022 CV _____ |
| ALLIANZ RISK CONSULTING, L.L.C. d/b/a ALLIANZ GLOBAL RISKS US INSURANCE COMPANY, | ) ) ) ) | |
| and | ) ) | |
| ASSUREDPARTNERS AEROSPACE L.L.C. d/b/a AIRSURE LIMITED, L.L.C., | ) ) ) | |
| Defendants. | ) ) | |

Pursuant to K.S.A. Chapter 60

**PETITION**

**COMES NOW** the plaintiff and for her causes of action against these Defendants alleges and states as follows:

1

## I.  THE PARTIES

1.  William Leeds, M.D., deceased, was born in the calendar year 1955 and died on July 31, 2017, as a result of an aircraft crash at the age of sixty-one (61).

2.  Plaintiff Luanne Leeds has been duly appointed as the Executrix of the Estate of Dr. William Leeds, deceased, pursuant to the Letters of Testamentary, which have been issued by the Shawnee County District Court, case number 2017-PR-518.

3.  Plaintiff Luanne Leeds, as Executrix of the Estate of Dr. William Leeds, deceased, brings this breach of contract action for recovery of the damages suffered and sustained by Dr. William Leeds, deceased; the Estate of Dr. William Leeds; and the surviving heirs-at-law of Dr. William Leeds, deceased.

4.  Defendant Allianz Risk Consulting, L.L.C., d/b/a Allianz Global Risks US Insurance Company is a foreign limited liability company, unregistered with the Kansas Secretary of State, but doing business in the State of Kansas. Defendant Allianz Risk Consulting, L.L.C., d/b/a Allianz Global Risks US Insurance Company may be properly served through its registered agent, C T Corporation System, located at 208 S. LaSalle St., Ste. 814, Chicago, IL 60604.

5.  Defendant AssuredPartners Aerospace, L.L.C. d/b/a AirSure Limited, L.L.C. is Foreign Limited Liability Company registered with the Kansas Secretary of State. Defendant AssuredPartners Aerospace, L.L.C. d/b/a AirSure Limited, L.L.C. may be properly served by serving its registered agent, Corporation Service Company, located 2900 S.W. Wanamaker Drive, Ste. 204, Topeka, Kansas 66614.

## II.     JURISDICTION AND VENUE

6.     Plaintiff adopts and incorporates by reference paragraphs 1 through 5 of the Petition as if fully set forth herein.

7.     Plaintiff Luanne Leeds, as Executrix for the Estate of Dr. William Leeds, deceased, brings this action pursuant to the Letters of Testamentary which have been issued to her by the Shawnee County District Court, case number 2017-PR-518.

8.     This Court has proper subject matter jurisdiction over the claims asserted by the plaintiff herein, as the contract of insurance at issue was a Kansas-compliant aircraft insurance policy that was executed in Topeka, Shawnee County, Kansas.

9.     Defendant Allianz Risk Consulting L.L.C. d/b/a Allianz Global Risks US Insurance Company has subjected itself to the jurisdiction of this Court by virtue of conducting business within the State of Kansas.

10.    Defendant AssuredPartners Aerospace, L.L.C. d/b/a AirSure Limited, L.L.C. has subjected itself to the jurisdiction of this Court by virtue of being a Foreign Limited Liability Company registered with the Kansas Secretary of State and by conducting business within the State of Kansas.

11.    Venue is proper in this Court pursuant to K.S.A. 60-604 and K.S.A. 60-605.

## III.    FACTS COMMON TO ALL COUNTS

12.    Plaintiff adopts and incorporates by reference paragraphs 1 through 11 of the Petition as if fully set forth herein.

13.    On or about February 18, 2017, William Leeds, deceased, entered into a written aircraft insurance contract (Policy No. SA 002061 01) that was arranged by Defendant   AssuredPartners   Aerospace,   L.L.C.   d/b/a   AirSure   Limited,   L.L.C.

(**"AirSure"**) and issued by Defendant Allianz Risk Consulting L.L.C. d/b/a Allianz Global Risk US Insurance Company (**"Allianz"**).  *See*: **Exhibit A: Aircraft Insurance Policy.**

14.  In consideration of the contract, William Leeds, deceased, tendered a policy premium payment of approximately one thousand four hundred fifty-two and 00/100 ($1,452.00).  *See* **Exhibit A, pg. 4, Aircraft Insurance Policy Declarations.**

15.  On July 31, 2017, William Leeds, deceased, passed away in a non-owned fixed wing, land aircraft bearing a "Standard" category Airworthiness Certificate, which had no more than four (4) total seats.  The aircraft crash occurred at Philip Billard Municipal Airport (KTOP) in Topeka, Shawnee County, Kansas.

16.  William Leeds, deceased, was a passenger in this aircraft for the purpose of receiving flight instruction from James Kevin Bergman to assist him in preparing for a private pilot multi-engine add-on examination check ride.

17. During the July 31, 2017, flight, James Kevin Bergman was Pilot in Command of the aircraft.

18.  William Leeds, deceased, did not hold a multi-engine land rating as part of his private pilot certificate; accordingly, as a matter of law, he could not be Pilot in Command of the aircraft; therefore, he was a passenger.

19.  The aircraft insurance contract between Williams Leeds, deceased, and Defendants AirSure and Allianz contained "Coverage D:  Single Limit Bodily Injury and Property Damage Liability Including Passengers. . ." which provided bodily injury coverage to William Leeds, deceased, as a passenger.  **Exhibit A, pg. 3, Aircraft Insurance Policy Declarations.**

20. The aircraft insurance contract between William Leeds, deceased, and Defendants AirSure and Allianz contained a "Non-Owned Aircraft: Liability Endorsement" which provided bodily injury coverage to William Leeds, deceased.  *See* **Exhibit A, pg. 40, "Endorsement Number 12."**

21. The aircraft insurance contract incorporated "death" into the agreed upon definition of "bodily injury." *See* **Exhibit A, pg. 7, "Definitions."**

22. The aircraft insurance contract between William Leeds, deceased, and Defendants AirSure and Allianz required cancellation by written notice by the named insured, William Leeds, deceased. *See* **Exhibit A, pg. 19, ¶ 14.**

23. Upon information and belief, William Leeds, deceased, did not provide written notice of cancellation to either Defendant AirSure or Defendant Allianz prior to passing away on July 31, 2017.

24. The policy of aircraft insurance issued to William Leeds, deceased, by Defendant AirSure and Defendant Allianz was in full force and effect at the time of Dr. Leeds's death on July 31, 2017.

25. After receiving notice of the passing of William Leeds, Defendant AirSure and Defendant Allianz provided the Plaintiff with a "Cancellation Endorsement," which was post-dated July 26, 2017.  *See* **Exhibit B.**

26. Defendants AirSure and Allianz failed to perform their obligations of the aircraft insurance contract, and, therefore, are in breach of that contract.

27. Defendants AirSure and Allianz owed fiduciary duties to both plaintiff and William Leeds, deceased, as their named insured.

28. Defendants AirSure and Allianz acted negligently and in bad faith by cancelling Dr. Leeds's aircraft insurance contract without written notice and in contravention to the aircraft insurance contract itself, thereby breaching the fiduciary duties they owed to plaintiff.

29. Defendants AirSure and Allianz acted negligently and in bad faith by mishandling and inappropriately denying the claim presented to them by the Estate and the surviving heirs-at-law of William Leeds, deceased, thereby breaching the fiduciary duties they owed to plaintiff.

30. On or about July 8, 2022, the Shawnee County, Kansas, District Court, in Case No. 2018 CV 00048 styled *Luanne Leeds as Executrix of the Estate of Wiliam Leeds, deceased, and Luanne Leeds, individually, and for an on behalf of all other surviving heirs-at-law of William Leeds, deceased, v. Sheila Upp-Bergman, Personal Representative for the Estate of James Kevin Bergman, deceased, and Amy Thornton and Maria Guglielmino-Iskenderoglu, Co-Executors of the Estate of James Guglielmino, deceased*, entered that "Findings of Fact, Conclusions of Law and Journal Entry of Judgment" entering judgment on behalf of the plaintiffs and against the defendants in an amount of $5,115,165.25. *See* **Exhibit C**.

31. The damages awarded to the plaintiffs should have been covered pursuant to the aircraft insurance contract entered into between Dr. Leeds and the defendants but for the defendants' breach of contract, the defendants' negligence, and the defendants' bad faith as more fully set forth above.

32.  As a direct result of the defendants' breach of contract, negligence, and bad faith, the plaintiff has been made to sustain damages in the amount $5,115,165.25, exclusive of attorney's fees, expenses, costs, and interest at the lawful rate.

33.  The plaintiff is entitled to a judgment against these defendants in an amount in the amount of $5,115,165.25.00, exclusive of attorney's fees, expenses, costs, and interest at the lawful rate.

34.  The plaintiff is entitled to attorney's fees, expenses, and costs pursuant to the provisions of K.S.A. § 40-256 and/or § 40-908, along with interest on the aforementioned judgment at the lawful rate.

WHEREFORE, the plaintiff prays that judgment be entered in favor of the plaintiff and against the defendants in an amount in excess of $75,000.00, along with attorney's fees, expenses, and costs of this action, interest on the aforementioned judgment at the lawful rate, and such other relief as the Court deems just and equitable.

Respectfully Submitted by:


*/s/Ronald P. Pope*
Ronald P. Pope, #11913
Thomas B. Diehl, #23166
RALSTON, POPE & DIEHL, L.L.C.
2913 SW Maupin Lane
Topeka, Kansas 66614
Phone: (785) 273-8002
Fax (785) 273-0744
ron@ralstonpope.com
tom@ralstonpope.com
*Attorneys for the plaintiff*

## REQUEST FOR TRIAL BY JURY

COMES NOW the plaintiff in the above-captioned matter and respectfully requests a trial by jury on all issues so triable as a matter of right.


*/s/Ronald P. Pope*
Ronald P. Pope, #11913
Thomas B. Diehl, #23166
RALSTON, POPE & DIEHL, L.L.C.
2913 SW Maupin Lane
Topeka, Kansas 66614
Phone: (785) 273-8002
Fax (785) 273-0744
ron@ralstonpope.com
tom@ralstonpope.com
*Attorneys for the plaintiff*

**Allianz** ⑪

Allianz Global Corporate & Specialty

# Aircraft Insurance Policy

**Prepared for:**

William Leeds
3765 SW Stonybrook Dr
Topeka, KS  66610

**Arranged by:**



An AssuredPartners Company

AirSure Limited, LLC.
25548 Genessee Trail Road
Golden, CO  80401

**Plaintiff's
Exhibit
A**



**Allianz** ⑪

# Allianz Global
# Corporate & Specialty

The following are your options for reporting a New Claim to
Allianz Global Corporate & Specialty via AirSure Limited:

 **Email:** claims@airsure.com

 **Call:** 303.526.5300

 **Fax:** 303.526.5303

✉ **Mailing Address:**

AirSure Limited - An Assured Partners Company
Attn: Select Claims Unit
25548 Genesee Trail Road
Golden, Colorado  80401

To contact Allianz Global Corporate & Specialty FNOL Claims Unit directly,
they can be reached at 1-888-323-6450 (outside of the U.S., +1-314-513-1353).
Please advise the claims representative that you are an AirSure Limited
customer with an "Elevon Program" policy.



ELEVON
EMPOWERING AVIATION INSURANCE SOLUTIONS™



Policy Number SA 002061 01

# AIRCRAFT INSURANCE POLICY DECLARATIONS

| Issued by:<br><br>Allianz Global Risks US Insurance Company<br>225 W. Washington St Suite 1800<br>Chicago, IL 60606-3484<br><br>(hereinafter known as the Company) | PRODUCER:<br><br>AirSure Limited, LLC.<br>25548 Genessee Trail Road<br>Golden, CO  80401 |
|---|---|

**ITEM 1.**  NAMED INSURED:   William Leeds
        MAILING ADDRESS:  3765 SW Stonybrook Dr
                Topeka, KS  66610

**ITEM 2.**  POLICY PERIOD:   FROM  February 18, 2017    TO    February 18, 2018
                BOTH AT 12:01 A.M. LOCAL TIME AT THE MAILING ADDRESS SHOWN IN **ITEM 1.**

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, THE COMPANY AGREES WITH THE INSURED TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

**ITEM 3. LIMITS OF INSURANCE**

| | | |
|---|---|---|
| **COVERAGE A:BODILY INJURY –** | $   Not Covered | Each Person |
| EXCLUDING **PASSENGERS** | $   Not Covered | Each **Occurrence** |
| | | |
| **COVERAGE B:PROPERTY DAMAGE** | $   Not Covered | Each **Occurrence** |
| | | |
| **COVERAGE C:PASSENGER** LIABILITY | $   Not Covered | Each **Passenger** |
| | $   Not Covered | Each **Occurrence** |
| | | |
| **COVERAGE D:**SINGLE LIMIT **BODILY INJURY** AND **PROPERTY DAMAGE** LIABILITY | $   1,000,000 | Each **Occurrence** |
| INCLUDING **PASSENGERS** WITH **PASSENGER** LIABILITY LIMITED TO: | $   100,000 | Each **Passenger** |
| | | |
| **COVERAGE E:MEDICAL EXPENSE –** | | |
| **INCLUDING CREW** | $   5,000 | Each Person |



**ITEM 4. COVERAGES F, G or H:** DESCRIPTION OF **AIRCRAFT** AND **PHYSICAL DAMAGE** COVERAGE:

| | | | | | | | Deductibles | |
|---|---|---|---|---|---|---|---|---|
| Reg. Number | Make & Model | Year Built | Seats Crew / Pass. | Insured Value | Cov. letter | Not In-Motion | In-Motion/ Ingestion/ Moored | |
| N736RA | Cessna 182RG Skylane | 1978 | 1 / 3 | $ 95,000 | F | Nil | Nil | |

**Physical Damage** Coverage letters mean as defined in Paragraph 3. Physical Damage Coverage of the Insuring Agreements. Coverage letters "N/C" mean not covered.

**ITEM 5.**   Pilots: When **In Flight** the **aircraft** will be operated only by pilots meeting the requirements of this policy.

**ITEM 6.**   The Aircraft will be used only for the purpose(s) indicated by "X" below (see Definitions)

☐ **Charter/Air Taxi**          ☐ **Commercial**          ☐ **Instruction and Rental**

☐ **Industrial Aid**          ☒ **Pleasure and Business**          ☐ Any use required by the **Named Insured**

☐ As Endorsed (See Purpose of Use Endorsement)

**ITEM 7.**   The **Named Insured** is and shall remain the sole owner of the **aircraft** and the **aircraft** is not subject to any encumbrance other than as shown in this policy.

**ITEM 8.**   **Premium**   Policy Premium          $      1,452.00

                              TRIA Liability                    Declined

                              Total                        $      1,452.00

| FORMS AND ENDORSEMENTS ATTACHED TO THIS POLICY AS OF THE EFFECTIVE DATE |
|---|
| Endorsements          1 - 19 |

**THESE DECLARATIONS, TOGETHER WITH THE AIRCRAFT INSURANCE POLICY AND COVERAGE FORM(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.**

**In Witness Whereof**, we have caused this policy to be executed and attested and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

Secretary                                        President

**AGCS-AC 1200 (09-09)**                                        **Page 2 of 3**



### International Flight Operations Notice

Although this policy provides coverage in Mexico, the Mexican Government (DGAC) may require proof of aircraft liability written through a Mexican insurance company.  Mexican liability coverage is available through the Company, if needed.

Other countries may require special evidences of coverage and/or have advance notification requirements.  The aircraft operator should familiarize itself with any such requirements and advise its insurance broker of any special needs well in advance of flight.

The aircraft along with its crew and passengers may be delayed or detained if proper evidence of insurance coverage cannot be provided.

All other provisions of this policy remain the same.

**Allianz (Ⅱ)**

# TABLE OF CONTENTS

AIRCRAFT INSURANCE POLICY ................................................................................................................ 2
   DEFINITIONS .......................................................................................................................................... 2
   INSURING AGREEMENTS ...................................................................................................................... 4
      1) LIABILITY COVERAGES .............................................................................................................. 4
      2) MEDICAL EXPENSE COVERAGE .............................................................................................. 4
      3) PHYSICAL DAMAGE COVERAGE .............................................................................................. 4
      4) DEFENSE, SETTLEMENT AND SUPPLEMENT-ARY PAYMENTS............................................ 4
      5) UNITED STATES ARMY, NAVY AND AIR FORCE INSURANCE REQUIREMENTS .................. 5
      6) POLICY PERIOD AND TERRITORY ............................................................................................ 5
      7) TWO OR MORE AIRCRAFT ........................................................................................................ 5
   SPECIAL INSURING AGREEMENTS ..................................................................................................... 5
   EXCLUSIONS ......................................................................................................................................... 6
   LIMIT OF THE COMPANY'S LIABILITY ................................................................................................ 10
      ALL COVERAGES -- Other Insurance ............................................................................................. 10
      COVERAGES A, B, C AND D -- Total Liability ................................................................................ 10
      COVERAGES A, B, C AND D -- Severability of Interests ................................................................ 11
      COVERAGE E -- Total Liability ........................................................................................................ 11
      COVERAGES F, G AND H -- Total Liability ..................................................................................... 11
   CONDITIONS ........................................................................................................................................ 12
      1) ACTION AGAINST THE COMPANY ............................................................................................ 12
      2) FINANCIAL RESPONSIBILITY ................................................................................................... 12
      3) NOTICE OF OCCURRENCE, LOSS, CLAIM OR SUIT ............................................................. 12
      4) SEVERABILITY OF INTEREST .................................................................................................. 12
      5) ACTION AGAINST THE COMPANY ............................................................................................ 12
      6) MEDICAL REPORTS: PROOF AND PAYMENT OF CLAIM........................................................ 12
      7) ACTION AGAINST THE COMPANY AND PAYMENT OF LOSS ................................................. 13
      8) APPRAISAL OF LOSS ................................................................................................................ 13
      9) AUTOMATIC REINSTATEMENT ................................................................................................ 13
      10) INSURED'S DUTIES WHEN LOSS OCCURS ............................................................................ 13
      11) NO BENEFIT TO BAILEE ............................................................................................................ 13
      12) ASSISTANCE AND COOPERATION OF THE INSURED ........................................................... 13
      13) BANKRUPTCY............................................................................................................................. 14
      14) CANCELLATION.......................................................................................................................... 14
      15) CHANGING THE POLICY ........................................................................................................... 14
      16) EXAMINATION OF INSURED'S BOOKS AND RECORDS ......................................................... 14
      17) FRAUD OR MISREPRESENTATION .......................................................................................... 14
      18) INSPECTION AND SURVEYS..................................................................................................... 14
      19) NONRENEWAL ........................................................................................................................... 14
      20) PREMIUMS.................................................................................................................................. 14
      21) REPRESENTATIONS .................................................................................................................. 14
      22) STATE STATUTES ...................................................................................................................... 15
      23) SUBROGATION........................................................................................................................... 15
      24) TITLES OF PARAGRAPHS ......................................................................................................... 15
      25) TRANSFER OF THE NAMED INSURED'S RIGHTS AND DUTIES UNDER THIS POLICY ........ 15
      26) VIOLATION OF STATUTE ........................................................................................................... 15

# AIRCRAFT INSURANCE POLICY

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Words and phrases that appear in **bold** type have special meaning. Refer to the section titled – DEFINITIONS.

In consideration of the payment of the premium, in reliance upon the statements of the Declarations made a part hereof, subject to all of the terms of this policy including the applicable limits of liability, the Company agrees with the **Named Insured** as follows:

## DEFINITIONS

When appearing in this policy in bold face print:

**"Aircraft"** means the aircraft described in **Item 4.** of the Declarations and, when appropriate, any aircraft qualifying under the provisions of Special Insuring Agreements **2.**a), b) or c), including the propulsion system and equipment usually installed in the aircraft (1) while installed in the aircraft, (2) while temporarily removed from the aircraft and (3) while removed from the aircraft for replacement until such time as replacement by a similar item has commenced; also tools and equipment which are specially designed for the aircraft and which are ordinarily carried therein.

**"Betterment"** means any improvement that would add value to the **Insured Aircraft**.

**"Bodily Injury"** means physical injury sustained by any person, caused by an **occurrence** during the policy period, including sickness, disease, mental anguish, and death at any time resulting therefrom. Mental Anguish does not include personal injury.

**"Charter / Air Taxi"** use means used in the business of the **Insured** for **passenger** or freight carrying for hire or reward and **Pleasure and Business** uses, but excluding instruction of or rental to others.

**"Commercial"** use means used in the business of the **Insured**, including student instruction and **passengers** or freight carrying for hire or reward. Rental to others is included but only for the purpose of **Pleasure and Business** and those uses defined under **Pleasure and Business**.

**"Cost Reimbursement"** means flights for which a charge is made provided that such charge is limited to:

1) fuel, oil, lubricants, and other additives,

2) travel expenses of the **crew**, including food, lodging, and ground transportation,

3) hangar and tie-down costs away from the **aircraft's** base of operation,

4) insurance obtained for the specific flight,

5) landing fees, airport taxes, and similar assessments,

6) customs, foreign permit, and similar fees directly related to the flight,

7) **in flight** food and beverage,

8) ground transportation for **passengers,**

9) flight planning and weather contact services and

10) an additional charge equal to 100% of the expenses listed in subparagraph 1) of this paragraph.

**"Crew"** means the pilot-in-command, co-pilot, flight engineer, flight attendant or anyone else who is in, on, or boarding the **aircraft** for the purpose of assisting in the operation of the **aircraft**.

**"Disappearance"** means missing **in flight** and not reported for sixty (60) days after commencing a flight.

**"Domestic objects"** means, with respect to turbine engines or turbine auxiliary power units, if part of the **aircraft**, objects or substances identified on the manufacturer's parts list or diagram as being parts of the engine or accessories to the engine or auxiliary power unit.

**"Federal Aviation Administration (FAA)"** means the duly constituted authority of the United States of America having jurisdiction over civil aviation, or its duly constituted equivalent in any other country.

**"In Flight"** means, with respect to fixed wing **aircraft,** the time commencing with the actual take-off run of the **aircraft** and continuing thereafter until it has completed its landing run. With respect to a rotorcraft, it means from the time the rotors start to revolve under power for the purpose of flight until they subsequently cease to revolve after landing. With respect to a balloon, it means while it is inflated or being inflated or deflated.

**"In Motion"** means while the **aircraft** is moving under its own power or the momentum generated therefrom or while it is **in flight** and, if the **aircraft** is a rotorcraft, any time that the rotors are rotating or while it is **in flight** and, if the aircraft is a glider or balloon, any time it is being transported, towed or while it is **in flight**.

**"Industrial Aid"** means operation of the **aircraft** by the **Insured,** but excluding any operation for hire or reward. Flights for which there is **cost reimbursement** shall be included within the definition of **Industrial Aid.**

**"Ingestion"** means damage to **aircraft** turbine engines or turbine auxiliary power units, if a part of the **aircraft**, caused by objects or substances not a part of the engine or its accessories, nor intended to be used in the engine, which occurs during the policy period and is the result of a single incident and of sufficient severity to require (or would require if its severity were known) immediate repair before further use.

**"Instruction and Rental"** means used in the business of the **Insured** for flight instruction to others and rental to others only for the purpose of **Pleasure and Business**. Sightseeing flights and introductory flights are included

but only if the flight departs and arrives at the same airport and does not exceed a radius of 25 nautical miles from the departure airport. In addition, those uses defined under **Pleasure and Business** are included.

**"Insured"** The unqualified word **"Insured"** wherever used in this policy includes not only the **Named Insured** but also any person while using or riding in the **aircraft** and any person or organization legally responsible for its use, provided the actual use is with the express permission of the **Named Insured**. Except with respect to the **Named Insured** the provisions of the paragraph do not apply:

1) to any employee with respect to **Bodily Injury**, sickness, disease or death of another employee of the same employer injured in the course of such employment;

2) to any person or organization or to any agent or employee thereof (other than any employee of the **Named Insured** while acting in the course of his employment by the **Named Insured**):

    a) who manufactures, builds, sells or distributes aircraft, aircraft engines, aircraft components, aircraft accessories or fuel used in aircraft, or

    b) who is engaged in the operation of an aircraft repair shop, aircraft sales agency, aircraft rental service, aircraft flying school, aircraft management service, aircraft aerial application service, aircraft inspection, appraisal, certification or examination service, commercial flying service, anyone providing piloting services, airline, airport, hangar, or pilot training center, or

    c) who is engaged in the activity of instruction, evaluation, examination or certification of any pilot or **crew** member or prospective pilot or **crew** member, or

    d) who charges a fee and/or receives any remuneration or benefit for providing any type of service whatsoever in connection with the ownership, maintenance, or use of the insured **aircraft**.

3) to any person or organization operating the **aircraft** under the terms of any rental agreement or training program which provides any remuneration to the **Named Insured** for the use of said **aircraft**;

4) to the owner or lessor, or any agent or employee thereof, of any **aircraft** which is the subject of the extended insurance provisions of **Special Insuring Agreements**.

**"Loss"** means direct and accidental **physical damage**.

**"Medical Expense"** means expenses for necessary medical, surgical, x-ray or dental services, including prosthetic devices, and necessary ambulance, hospital professional nursing and funeral services.

**"Mooring"** shall mean, while on water, a water alighting **aircraft** is anchored or moored, or during launching onto or hauling up therefrom (except under its own power or momentum).

**"Named Insured"** means the person or organization named in **Item 1.** of the Declarations.

**"Occurrence"** means an accident, including continuous or repeated accidental exposure to conditions, during the policy period, which results in **Bodily Injury** or **Property Damage** neither expected nor intended from the standpoint of the **Insured**. In the event of continuing or progressive **Bodily Injury** or **Property Damage** otherwise covered by the policy happening over an extended period of time, such **Bodily Injury** or **Property Damage** shall be deemed to be one **occurrence**, and shall be deemed to occur only when such **Bodily Injury** or **Property Damage** first commences.

**"Partial Loss"** means any **loss** which is not a **total loss**.

**"Passenger"** means any person in, on, or boarding the **aircraft** for the purpose of riding or flying therein or alighting therefrom after a flight or attempted flight therein, including **crew** member(s).

**"Physical Damage"** means direct or accidental physical **loss** of or damage to the **aircraft** not expected nor intended by the **Insured**, hereinafter called **loss**, but does not include loss of use or any residual depreciation or diminution in value (including loss of guaranty or warranty), if any, after repairs have been made.

**"Pleasure and Business"** means used in the business of the **Insured** including personal and pleasure uses but excluding any operation for hire or reward. Flights for which there is **cost reimbursement** shall be included within the definition of **Pleasure and Business**.

**"Premises"** means such portions of airports as are designated and used for the parking or storage of **aircraft** exclusive of **premises** owned by, or leased for more than thirty (30) days to the **Insured**.

**"Property Damage"** means (a) physical injury to or destruction of tangible property which occurs during the policy period, including loss of use thereof at any time resulting therefrom, or (b) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an **occurrence** during the policy period.

**"Related Claims"** means all claims for care and loss of service, loss of society and consortium, emotional distress, loss of support, medical and funeral expenses, and any and all other damage claims by a person or persons arising out of **Bodily Injury** to another person. Notwithstanding anything to the contrary in the definition of **Bodily Injury**, the Company's liability and coverage for damages for both **Bodily Injury** and **related claims** are included and combined within the "each person" and "each **occurrence**" Limits of Liability specified in the

Declarations, as applicable, and there are no separate or additional Limits of Liability for **related claims**.

"**Total Loss**" means any **Physical Damage loss** for which the "cost to repair" when added to the "salvage value" (the value of the **aircraft** after **Physical Damage** and prior to repairs) equals or exceeds the Insured Value of the **aircraft** as set forth in **Item 4.** of the Declarations. **Disappearance** of an **aircraft** or theft of the entire **aircraft** shall be considered a **total loss**.

## INSURING AGREEMENTS

The Company agrees:

### 1) LIABILITY COVERAGES

**Coverage A - Bodily Injury** Liability Excluding **Passengers** (including any and all **related claims**) - To pay on behalf of the **Insured** all sums which the **Insured** shall become legally obligated to pay as damages because of **Bodily Injury** sustained by any person excluding any **passenger**;

**Coverage B - Property Damage** Liability - To pay on behalf of the **Insured** all sums which the **Insured** shall become legally obligated to pay as damages because of **Property Damage**;

**Coverage C - Passenger Bodily Injury** Liability (including any and all **related claims**) - To pay on behalf of the **Insured** all sums which the **Insured** shall become legally obligated to pay as damages because of **Bodily Injury** sustained by any **passenger** and **related claims** associated with such **passenger**;

**Coverage D -** Single Limit **Bodily Injury** and **Property Damage** Liability (including any and all **related claims**) - To pay on behalf of the **Insured** all sums which the **Insured** shall become legally obligated to pay as damages because of **Bodily Injury** sustained by any person (excluding any **passenger** unless the words "including **passengers**" appear in **Item 3.** of the Declarations) and **Property Damage**;

caused by an **occurrence** and arising out of the ownership, maintenance or use of the **aircraft**; or only with respect to **Coverages A, B,** and **D**, caused by an **occurrence** and arising out of the maintenance or use of the **premises** in or upon which the **aircraft** is stored.

### 2) MEDICAL EXPENSE COVERAGE

**Coverage E - Medical Expense** - To pay all reasonable **medical expense** incurred within one year from the date of the injury, to or for each **passenger** (excluding any **crew** unless the words "including **crew**" appear in **Item 3.** of the Declarations) who sustains **Bodily Injury** caused by an **occurrence**, provided the **aircraft** is being used by or with permission of the **Named Insured**.

### 3) PHYSICAL DAMAGE COVERAGE

**Coverage F – In Flight, In Motion,** and Not **In Motion** - To pay for any **loss** to the **aircraft**, including **disappearance** of the **aircraft** while **in flight, in motion** and not **in motion**.

**Coverage G -** Not **In Flight** - To pay for any **loss** to the **aircraft** sustained while the **aircraft** is not **in flight** and which is not the result of fire or explosion following crash or collision while the **aircraft** was **in flight**.

**Coverage H -** Not **In Motion** - To pay for any **loss** to the **aircraft** sustained while the **aircraft** is not **in motion** and which is not the result for fire or explosion following crash or collision while the **aircraft** was **in motion** or **in flight**.

### 4) DEFENSE, SETTLEMENT AND SUPPLEMENTARY PAYMENTS

#### Under Coverages A, B, C and D

The Company shall have the right and duty to defend any suit against the **Insured** seeking damages on account of **Bodily Injury** or **Property Damage**, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.

During such time as the Company is obligated to defend a claim or claims under the provisions of the preceding paragraph, the Company will pay, with respect to such claim, in addition to the applicable limit of liability:

a) all expenses incurred by the Company, all costs taxed against the **Insured** in any suit defended by the Company and interest on that part of the judgment that does not exceed the limit of the Company's liability therein which accrues after entry of the judgment and before the Company has paid, tendered or deposited in court that part of the judgment,

b) premiums on appeal bonds required in any such suit, premium on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of this policy, and the cost of bail bonds required of the **Insured** because of an **occurrence** or violation of law or a regulation for civil aviation arising out of the use of the **aircraft**, not to exceed $5,000. per bail bond, but the Company shall have no obligation to apply for or furnish any such bonds,

c) expenses incurred by the **Insured** for first aid to others at the time of an accident for **Bodily Injury** to which this policy applies and

d) all reasonable expenses incurred by the **Insured** at the Company's request to assist the Company in the investigation or defense of the claim or suit, including actual loss of earnings up to $250.00 per day because of time off from work.

5) **UNITED STATES ARMY, NAVY AND AIR FORCE INSURANCE REQUIREMENTS**

**Under Coverages A, B, C and D**

If the Company issues a Civil Aircraft Certificate of Insurance Form DD 2400, or any replacement thereof, as required by regulations of the U.S. Army, Navy or Air Force, then the insurance policy provisions required by the regulations shall be deemed to be incorporated herein and substituted for any policy provisions inconsistent therewith.

6) **POLICY PERIOD AND TERRITORY**

**Under All Coverages**

This policy applies only to **Bodily Injury** or **Property Damage** which occurs, and to **physical damage** to the **aircraft** which is sustained, during the policy period and while the **aircraft** is within the United States of America, its territories and possessions, Canada, Mexico, Central America, or the West Indies or enroute between points therein.

7) **TWO OR MORE AIRCRAFT**

**Under All Coverages**

When two or more **aircraft** are insured under this policy, the terms of this policy shall apply separately to each.

## SPECIAL INSURING AGREEMENTS

1) This section is applicable only if the purpose of use shown in **Item 6**. of the Declarations is limited to **Pleasure and Business**.

2) Coverages provided under paragraphs a), b) and c). below shall apply only to aircraft of the same Category and Class, as defined by the Federal Aviation Regulations, as the aircraft described in **Item 4**. of the Declarations.

a) **TEMPORARY USE OF SUBSTITUTE AIRCRAFT**

**Under Coverages A, B, C, D and E**

While the **aircraft** described in **Item 4**. of the Declarations is withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction, such insurance as is afforded under **Coverages A, B, C, D** and **E** is extended to apply with respect to the use, by or on behalf of the **Named Insured**, of a substitute **aircraft**, not owned in whole or in part by the **Named Insured**, while temporarily used as a substitute therefor.

b) **USE OF OTHER AIRCRAFT**

**Under Coverages A, B, C, D and E**

If the **Named Insured** is one individual or one individual and spouse, such insurance as is afforded under **Coverages A, B, C, D** and **E** with respect to **aircraft** described in **Item 4**. of the Declarations is extended to apply with respect to the use, by or on behalf of the **Named Insured**, of the other **aircraft** not owned in whole or in part by, or furnished for regular use to such **Named Insured** and spouse. The insurance provided by this agreement shall apply only to the **Named Insured** and spouse.

c) **AUTOMATIC INSURANCE FOR NEWLY ACQUIRED AIRCRAFT**

**Under All Coverages**

If the **Named Insured** acquires ownership of an **aircraft** in addition to or replacement of the **aircraft** described in **Item 4**. of the Declarations and within thirty (30) days thereafter reports such acquisition to the Company, then the insurance afforded by this policy shall apply to such additional or replacement **aircraft** as of the time of such acquisition, provided that the Company insured all other **aircraft** owned in whole or in part by the **Named Insured** on such acquisition date. Unless the **Named Insured** and the Company agree otherwise, the coverages and limits of liability with respect to the additional or replacement **aircraft** shall be as follows:

(1) As respects Liability Coverage and Medical Expense coverage,

(a) if an additional **aircraft**, the same coverages and limits of liability shall apply as the **aircraft** having the greatest total seating capacity, as described in **Item 4**. of the Declarations or

(b) if a replacement **aircraft**, the same coverages and limits of liability as the **aircraft** being replaced.

(2) As respects **Physical Damage** coverage,

(a) if an additional **aircraft**, the same coverages, insured value and deductibles shall apply as the **aircraft** having the greatest total seating capacity, as described in **Item 4**. of the Declarations, or

(b) if a replacement **aircraft**, the same coverages, insured value and deductibles as the **aircraft** being replaced.

The **Named Insured** shall pay any additional premium required because of the application of the insurance to such other **aircraft**.

In no event shall the Company be liable for more than the **Named Insured** paid for any newly acquired or replacement aircraft subject to a maximum of $75,000,000.00.

## EXCLUSIONS

This policy does not apply to any:

1) **Insured** while the **aircraft** is **in flight** with the knowledge and consent of the **Insured** or of any executive officer, partner, or managing agent of such **Insured** for any unlawful purpose or any purpose not so designated in the Declarations;

2) **Bodily Injury** or **Property Damage** expected or intended from the standpoint of the **Insured**. This exclusion does not apply to **Bodily Injury** or **Property Damage** resulting from the use of reasonable force to protect persons or property, and to **Bodily Injury** or **Property Damage** resulting from efforts to prevent dangerous interference with the operation of the **aircraft**;

3) **Insured** while the **aircraft** is **in flight** with the knowledge and consent of the **Named Insured**:

   a) if piloted by other than the pilot or pilots designated in the Declarations except while the **aircraft** is under the care, custody or control of a **Federal Aviation Administration (FAA)** approved repair station for the purpose of maintenance, repair or test flights or

   b) if the **aircraft** does not possess a valid Standard or Utility Category Airworthiness Certificate unless the aircraft is being operated on a reposition, ferry or test flight, provided a special permit or waiver has been granted by the **FAA** for such flights and such flights are for the sole purpose of reinstatement or renewal of the Airworthiness Certificate.

4) **loss** or destruction of or damage to any property whatsoever or any loss or expense whatsoever resulting or arising therefrom or any consequential loss arising from:

   a) any legal liability of whatsoever nature directly or indirectly caused by or contributed to, by or arising from:

   (1) the radioactive, toxic, explosive or other hazardous properties of any explosive nuclear assembly or nuclear component thereof;

   (2) the radioactive properties of, or a combination of radioactive properties with toxic, explosive or other hazardous properties of, any other radioactive material in the course of carriage as cargo, including storage or handling incidental thereto;

   (3) ionizing radiations or contamination by radioactivity from, or the toxic, explosive or other hazardous properties of any other radioactive source whatsoever.

   b) it is understood and agreed that such radioactive material or other radioactive source in paragraphs **4)** a) (2) and (3) above shall not include:

   (1) depleted Uranium and natural Uranium in any form,

   (2) radioisotopes which have reached the final stage of fabrication so as to be useable for any scientific, medical, agricultural, commercial, educational or industrial purpose.

5) **Property Damage** or any consequential loss or any legal liability of whatsoever nature with respect to any of the nuclear risks described in exclusion **4)** above as to which:

   a) the **Insured** under this policy is also an **Insured** or an additional **Insured** under any other insurance policy, including any nuclear energy liability policy or

   b) any person or organization is required to maintain financial protection pursuant to legislation in any country or

   c) the **Insured** under this policy is, or had this policy not been issued would be, entitled to indemnification from any government or agency thereof.

6) **loss**, destruction, damage, expenses or legal liability in respect of the nuclear risks not excluded by reason of exclusion **4)** a) (2) and (3) above shall (subject to all other terms, conditions, limitations, warranties and exclusions of this policy) be covered, provided as follows:

   a) in the case of any claim in respect of radioactive material in the course of carriage as cargo, including storage or handling incidental thereof, such carriage shall in all respects have complied with the full International Civil Aviation Organization "Technical Instructions For The Safe Transport of Dangerous Goods By Air," unless the carriage shall have been subject to any more restrictive legislation, when it shall in all respects have complied with such legislation.

   b) this policy shall only apply to an incident happening during the policy period and where any claim by the **Insured** against the Company or by any claimant against the **Insured** arising out of

such incident shall have been made within three (3) years after the date thereof.

c) in the case of any claim for the loss of or destruction to or loss of use of an aircraft caused by or contributed to by radioactive contamination, the level of such contamination shall have exceeded the maximum permissible level set out in the following scale:

| Emitter<br><br>IAEA Health and Safety Regulations) | Maximum permissible level of non-fixed radioactive surface contamination (Averaged over 300 $cm^2$) |
|---|---|
| Beta, gamma and low toxicity alpha emitters | Not exceeding 4 Becquerels/$cm^2$ ($10^{-4}$ microcuries/$cm^2$) |
| All other alpha emitters | Not exceeding 0.4 Becquerels/$cm^2$ ($10^{-5}$ microcuries/$cm^2$) |

d) the coverage afforded by this paragraph **6)** may be cancelled at any time by the Company giving seven (7) days notice of cancellation.

**7)** claims caused by any of the following:

a) war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, martial law, military or usurped power or attempts at usurpation of power;

b) any hostile:

(1) detonation of any device employing atomic or nuclear fission and/or fusion or other like reaction and any radioactive contamination and electromagnetic pulse resulting directly from such detonation or

(2) use of radioactive contamination or matter,

c) strikes, riots, civil commotions or labor disturbances,

d) any act of one or more persons, whether or not agents of a sovereign power, for political or terrorist purposes and whether the **loss** or damage resulting therefrom is accidental or intentional,

e) any malicious act or act of sabotage,

f) confiscation, nationalization, seizure, restraint, detention, appropriation, requisition for title or use by or under the order of any government (whether civil, military or de facto) or public or local authority or

g) hijacking or any unlawful seizure or wrongful exercise of control of the **aircraft** or crew in flight (including any attempt at such seizure or control) made by any person or persons on board the **aircraft** acting without the consent of the **Insured**.  For the purpose of this exclusion **7) g)**

only, an aircraft is considered to be in flight at any time from the moment when all its external doors are closed following embarkation until the moment when any such door is opened for disembarkation or when the **aircraft** is in motion.  A rotor-wing **aircraft** shall be deemed to be in flight when the rotors are in motion as a result of engine power, the momentum generated therefrom, or autorotation.

Furthermore, this Policy does not cover claims arising while the **aircraft** is outside the control of the **Insured** by reason of any of the above perils.  The **aircraft** shall be deemed to have been restored to the control of the **Insured** on the safe return of the **aircraft** to the **Insured** at an airfield not excluded by the geographical limits of this Policy, and entirely suitable for the operation of the **aircraft** (such safe return shall require that the **aircraft** be parked with engines shut down and under no duress).

**8)** claims for:

a) any liability, including liability arising out of or assumed under contract, or any injury, **loss** or damage, including, but not limited to, fear of any injury, **loss** or damage, **Bodily Injury**, fear of **Bodily Injury**, personal injury, advertising injury, sickness, disease, occupational disease, disability, shock, death, mental anguish, mental injury, **Property Damage** or any **loss**, cost or expense, **loss** of use including grounding, or any other claim, cost or expense, including any costs associated with medical monitoring in connection with injury, **loss** or damage or fear of injury, **loss** or damage whatsoever directly or indirectly arising out of, resulting from, caused or occasioned by, happening through, in consequence of, or in any way involving or related to asbestos or the use of or exposure to asbestos, including the failure of any product or material containing asbestos, or the existence or presence of asbestos in any place or thing or in the atmosphere, land, or any watercourse or body of water,

b) any damages or any **loss**, cost or expense arising out of (i) any claim or suit by or on behalf of any governmental authority or any other allegedly responsible party because of, or (ii) any request, demand, order or statutory or regulatory requirement that any **Insured** or any other person or entity should be or is responsible for:

(1) assessing the presence, absence, amount or effects of asbestos,

(2) identifying, sampling, testing for, detecting, monitoring, cleaning up, containing, treating, detoxifying, neutralizing, abating, disposing of, mitigating or removing asbestos or any product or material containing asbestos or

(3) responding to asbestos or the potential effects of asbestos in any way other than as described in this exclusion **8)** b) (1) or (2) above or

c) any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with paragraphs **8)** b) (1) (2) or (3) of this exclusion.

The Company shall have no obligation to defend or indemnify, or to investigate claims or to share damages with or repay someone else due to or arising from, in whole or in part, any claim, action or suit against the **Insured** in connection with paragraphs a), b) and c) of this exclusion. The Company shall also not be responsible for any costs or expenses related to or associated with any such claims, action or suit.

**9)** under **Coverages A, B, C, D** and **E:**

a) to liability assumed by the **Insured** under any contract or agreement, but this exclusion does not apply:

(1) to the assumption by the **Named Insured** of the liability of others for **Bodily Injury** or **Property Damage** in any written hold harmless agreement required by a military or governmental authority as a prerequisite to the use of an airport or an airport facility;

(2) to liability the **Insured** would have in the absence of a contract or agreement.

b) to an **Insured** under this policy who is also an **Insured** under a contract of nuclear energy liability insurance issued by the Nuclear Energy Liability Insurance Association or the Mutual Atomic Energy Liability Underwriters and in effect at the time of the **occurrence** resulting in such injury, sickness, disease, death or destruction; provided, such contract of nuclear energy liability insurance shall be deemed to be in effect at the time of such **occurrence** notwithstanding such contract has terminated upon exhaustion of its limit of liability; or

c) to any liability including liability arising out of or assumed under contract, or any injury, **loss** or damage, including **Bodily Injury**, fear of **Bodily Injury**, damage or fear of damage, personal injury, advertising injury, sickness, disease, occupational disease, disability, shock, death, mental anguish, mental injury, **Property Damage** or any **loss**, cost or expense, loss of use including grounding, or any other claim, cost or expense whatsoever, directly or indirectly arising out of, resulting from, caused or occasioned by, happening through, in consequence of, or in any way involving any of the following:

(1) noise (whether audible to the human ear or not), vibration, sonic boom, and any phenomena associated with the foregoing,

(2) "pollution or contamination" of any kind whatsoever, or the exposure to pollution or contamination, or the fear of exposure to or the effects of pollution or contamination or the existence of pollution or contamination in any place or thing or in the atmosphere, land, or any watercourse or body of water, as well as any claim or suit by or on behalf of or any direction, demand or request or any statutory or regulatory requirement, or any voluntary decision, by or on behalf of any governmental authority or other alleged responsible party, that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to or assess the effects of pollutants or contaminants,

(3) electrical or electromagnetic emission or interference of any kind whatsoever,

(4) interference with the use of property or

(5) mold.

For purposes of this Exclusion the following definitions apply:

(6) "Pollution or contamination" means any actual, alleged or threatened discharge, dispersal, release, escape, seepage, migration, disposal or the mere presence of pollutants or contaminants in any form.

(7) "Pollutants or contaminants" means any pollutant, contaminant or irritant, including, without limitation, any solid, liquid, gaseous or thermal pollutant, contaminant or irritant, or any air emission, smoke, vapor, soot, fume, acid, alkali, chemical, or nuclear material alleged to be a possible or probable carcinogenic, odor, oil or other petroleum product, fungus (including mold or mildew or any mycotoxin, spore, scent or byproduct produced or released by fungi, other than any fungi intended by the **Insured** for human consumption), or "waste" of any kind whatsoever, including solid waste, waste water, waste oil, infectious medical waste, and human, animal or vegetable waste.

(8) "Waste" means any waste including material to be recycled, reconditioned or reclaimed, whether or not the material has been disposed of by you or any person handling the waste.

With respect to any provision in the policy concerning any duty of the Company to investigate or defend claims, such provision shall not apply

and the Company shall not be required to defend claims excluded by this exclusion **9)** c).

A claim or claims covered by the policy, when combined with any claims excluded by this exclusion **9)** c. are referred to below as "Combined Claims."

In respect of any "Combined Claims", the Company shall (subject to proof of loss and the limits of the policy) reimburse the **Insured** for that portion of damages awarded against the **Insured,** plus defense fees and expenses incurred by the **Insured,** which may be allocated to the claim or claims covered by the policy.

This exclusion **9)** c) shall not apply to any claim for **Bodily Injury** or **Property Damage** resulting from a crash, fire, explosion or collision of aircraft, or from a recorded **in-flight** emergency causing abnormal **aircraft** operation.

d) to claims in respect of death, **Bodily Injury,** illness or disease to any person or persons and/or damage to or destruction of property caused by or resulting from the application of or use by the **Insured** or his agent of all forms of fertilizers, fungicides, defoliants, herbicides, hormone selective weed killers, pesticides, insecticides and arsenical preparations or compounds or any other forms of chemical.

**10)** to any claim, **loss,** cost, expense or liability (whether in contract, tort, negligence, product liability, misrepresentation, fraud or otherwise) of any nature whatsoever arising from, occasioned by, or in consequence of (whether directly or indirectly and whether wholly or partly) any actual or alleged failure, malfunction or inadequacy of:

a) any of the following, whether belonging to any Insured or to others, whether or not part of any computer system or whether in the possession of the Insured or of any third party:

   (1) computer hardware, including microprocessors;

   (2) computer application software;

   (3) computer operating systems and related software;

   (4) computer networks;

   (5) microprocessors, computer chips, integrated circuits or other information technology equipment or systems;

b) any other products or systems and any services, data, or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in this exclusion;

due to the inability to correctly recognize, process, distinguish, interpret or accept:

  &ndash; the change of year from 1999 to 2000;

  &ndash; the change of date from August 21, 1999 to August 22, 1999;

  &ndash; any other change of year, date or time;

  &ndash; any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by or for the **Insured** to determine, rectify, or test for any potential or actual problems described in this exclusion.

**11)** under **Coverages A, C, and D:**

a) to any obligation for which the **insured** or any carrier as their insurer may be held liable under any workers' compensation, unemployment compensation or disability benefits law or any similar law; or

b) to **bodily injury** to any employee of the **Named Insured** arising out of and in the course of their employment by the **Named Insured,** but this exclusion b) does not apply to liability assumed by the **Named Insured** under any contract that is a prerequisite for the use of an airport facility.

**12)** under **Coverages B and D,** to **Property Damage** to property owned, occupied, rented or used by the **Insured** or in the care, custody or control of the **Insured** or as to which the **Insured** is for any purpose exercising physical control or transported by the **Insured.**

**13)** under **Coverages F, G and H:**

a) to **loss** or damage to an **aircraft** due to conversion, embezzlement or secretion by any person or organization with legal right to possession of such **aircraft** under bailment, lease, agreement to purchase, conditional sale, mortgage, or other legal agreement that governs the use, sale or lease of the **aircraft.** This exclusion does not apply to **loss** or damage to an **aircraft** when a renter pilot, renting such **aircraft** pursuant to a rental agreement, converts, embezzles or secretes the **aircraft** while it is in the renter pilot's possession provided the **Named Insured** or renter, lessor or owner of the **aircraft** are in no way associated with or a participant in such conversion, embezzlement, or secretion and have no prior knowledge thereof and have not acquiesced therein, or

b) to **loss** or damage to tires except where such **loss** or damage is caused by fire, theft, windstorm or vandalism or is the direct result of **physical damage** covered by this policy, or

c) to **loss** or damage which is due and confined to:

   (1) wear, tear, deterioration, freezing,

(2) any electrical malfunction or failure of any electronic component(s), accessory(ies), or electrically powered equipment,

(3) any mechanical, hydraulic, pneumatic, or structural malfunction or failure,

(4) corrosion or rust in any form

unless any such **loss** or damage in (1), (2), (3) or (4) is the direct result of other **physical damage** covered by this policy.

Damage resulting from electrical malfunction or failure of an electrical component(s), accessory(ies), or electrically powered equipment is considered breakdown of the entire electrical system containing such electronic component(s), accessory(ies), or electrically powered equipment.

Damage resulting from the breakdown, failure or malfunction of any engine component, accessory or part (as designated on the manufacturer's parts list for the engine) is considered mechanical breakdown of the entire engine.

d) to **loss** or damage to turbine **aircraft** engines and auxiliary power units **Insured** under this policy if such damage is caused by

(1) ingestion of **domestic objects**, or

(2) foreign objects unless a result of **ingestion**, or

(3) heat or temperature change from the operation, attempted operation or shutdown of the engine or auxiliary power unit

unless any such **loss** or damage is the direct result of other **physical damage** covered by this policy.

## LIMIT OF THE COMPANY'S LIABILITY

### ALL COVERAGES -- Other Insurance

Except with respect to insurance afforded by **Special Insuring Agreements 2)** a) and b) and to insurance specifically purchased by the **Insured** to apply in excess of this policy, if there is other insurance in the **Insured's** name or otherwise, against **loss**, liability or expense covered by this policy, the Company shall not be liable under this policy for a greater proportion of such **loss**, liability or expense than the applicable limit of the Company's liability bears to the total applicable limit of liability of all valid and collectible insurance against such **loss**, liability or expense. Insurance afforded by **Special Insuring Agreements 2)** a) and b) shall be excess insurance over any other valid and collectible insurance available to the **Insured**, either as **Insured** under a policy applicable to the **aircraft** or otherwise and if such other insurance shall have been written through the

Company as primary insurance then the Company's limits of liability under this policy shall be reduced by the applicable limits of such other policy.

### COVERAGES A, B, C AND D -- Total Liability

Regardless of the number of (1) **Insureds** under this policy, (2) persons or organizations who sustain **Bodily Injury** or **Property Damage**, (3) claims made or suits brought on account of **Bodily Injury** (including **related claims**) or **Property Damage** or (4) **aircraft** to which this policy applies, the Company's liability is limited as follows:

**Coverage A**. The total liability of the Company for all damages, including all **related claims** and all damages for care and loss of services, because of **Bodily Injury** sustained by any person as the result of any one **occurrence** shall not exceed the limit of liability stated in the Declarations as applicable to "each person". Subject to the above provision respecting "each person", the total liability of the Company for all damages, including all **related claims** and all damages for care and loss of services, because of **Bodily Injury** sustained by two or more persons as the result of any one **occurrence** shall not exceed the limit of liability stated in the Declarations as applicable to "each **occurrence**."

**Coverage B**. The total liability of the Company for all damages because of all **Property Damage** sustained by one or more persons or organizations as the result of any one **occurrence** shall not exceed the limit of liability stated in the Declarations as applicable to "each **occurrence**."

**Coverage C**. The total liability of the Company for all damages, including all **related claims** and all damages for care and loss of services, because of **Bodily Injury** sustained by any **passenger** as the result of any one **occurrence** shall not exceed the limit of liability stated in the Declarations as applicable to "each **passenger**". Subject to the above provision respecting "each **passenger**", the total liability of the Company for all damages, including all **related claims** and all damages for care and loss of services, because of **Bodily Injury** sustained by two or more **passengers** as the result of any one **occurrence** shall not exceed the limit of liability stated in the Declarations as applicable to "each **occurrence**".

**Coverage D**. The total liability of the Company for all damages, including all **related claims** and all damages for care and loss of services, because of **Bodily Injury** or **Property Damage** sustained by one or more persons or organizations as the result of any one **occurrence** shall not exceed the limit of liability stated in the Declarations as applicable to "each **occurrence**."

And further provided that if the Declarations are completed to show "**passenger** liability limited to", the total liability of the Company for all damages, including all **related claims** and all damages for care or loss of services because of **Bodily Injury** to **passengers** and **crew** shall not exceed the following:

1) as respects any one **passenger** or **crew** member, the amount stated in the Declarations as applicable to "each person".

2) as respects two or more **passengers** or **crew** members, subject to the above provisions respecting any one **passenger** or **crew** member, the amount stated in the Declarations as applicable to "each person" multiplied by the total number of **passenger** and **crew** seats as stated in **Item 4.** of the Declarations for the **aircraft** involved, but in no event shall the Company's Liability for all **Bodily Injury** (including **passenger Bodily Injury**) and **Property Damage** exceed the limits stated in the Declarations as applicable to "each **occurrence**".

For the purpose of determining the limit of the Company's liability, all **Bodily Injury** and **Property Damage** arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one **occurrence**.

### COVERAGES A, B, C AND D -- Severability of Interests

The insurance afforded applies separately to each **Insured** against whom claim is made or suit is brought, except with respect to the limits of the Company's liability.

### COVERAGE E -- Total Liability

The limit of liability stated in the Declarations as applicable to "each person" is the limit of the Company's liability for all expenses incurred by or on behalf of each person who sustains **Bodily Injury** (including **related claims**) in any one **occurrence**. The limit of liability stated in the Declarations for **Coverage E** as applicable to "each **occurrence**" is subject to the above provision respecting each person, the total limit of the Company's liability for all expenses incurred by or on behalf of two or more persons who sustain **Bodily Injury** (including **related claims**) in any one **occurrence**.

### COVERAGES F, G AND H -- Total Liability

With respect to **total loss**, the Company will pay the **Insured** value of the **aircraft**, as stated in the Declarations, subject to any applicable deductible.

With respect to **partial loss**, the company may pay for the least expensive and most reasonable means to repair the **aircraft** or may pay for the loss in money, subject to any applicable deductible as follows:

1) If repairs are made by other than the **Named Insured**, the total of the:

   a) cost to repair the damaged property with material of like kind and quality (excluding any charges for overtime), plus

   b) cost of the least expensive and most reasonable method of transporting new and/or damaged parts and/or the damaged **aircraft** to the place of repair and the return of the repaired **aircraft** to the place where the **loss** occurred or the place where the **aircraft** is regularly based, whichever is nearer;

2) if repairs are made by the **Named Insured**, the total of the:

   a) actual cost to the **Insured** of material of like kind and quality,

   b) actual wages paid for labor, excluding overtime,

   c) overhead and supervisory services up to a maximum of 150% of **2) b)** hereinabove and

   d) cost of the least expensive and most reasonable method of transporting new and/or damaged parts and/or the damaged **aircraft** to the place of repair and the return of the repaired **aircraft** to the place where the **loss** occurred or the place where the **aircraft** is regularly based, whichever is nearer.

With respect to any **partial loss** or **total loss,** the following shall apply;

3) The amount due under this policy shall not exceed the amount due were the **loss** payable as a **total loss**;

4) Any salvage value remaining shall inure to the benefit of the Company and the **Named Insured** shall provide clear title thereto;

5) Any equipment attached to the **aircraft**, even if subsequent to the effective date of coverage, shall be considered a part of the **aircraft**;

6) There shall be no abandonment of any damaged property without the consent of the Company.

If the **loss** is due to theft or **disappearance**, the Company shall have the right to return any found stolen property at any time prior to actual payment of the claim hereunder, with payment for any **Physical Damage** sustained thereto.

As available, the Company will pay for repair or replacement of like, kind and quality. The Company will not pay excess of like, kind and quality amounts for the cost of **betterment**.

## CONDITIONS

### APPLICABLE TO COVERAGES A, B, C AND D

**1) ACTION AGAINST THE COMPANY**

No person or organization has a right under this policy:

a) to join the Company as a party or otherwise bring the Company into a suit asking for damages from an **Insured** or

b) to sue on this policy unless all of its terms have been fully complied with.

A person or organization may sue the Company to recover on an agreed settlement or on a final judgment against an **Insured** obtained after an actual trial; but the Company will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by the Company, the **Insured** and the claimant or the claimant's legal representative. Service of process may be made upon the Company. However, the Company does not waive its rights to commence an action in any court of competent jurisdiction or to seek a transfer to another court as permitted by law.

**2) FINANCIAL RESPONSIBILITY**

If this policy is certified as proof of insurance under any governmental financial responsibility law applicable to aircraft, the Company will pay the minimum amount required by that law which does not exceed the limit of liability of this policy. The **Named Insured** agrees to reimburse the Company promptly for any amounts the Company would not have had to pay were it not for this clause.

**3) NOTICE OF OCCURRENCE, LOSS, CLAIM OR SUIT**

a) The **Named Insured** must promptly notify the Company of an **occurrence** that may result in a claim. Such notice shall be in writing to the Company claims notification address which is set forth with this policy. Such notice shall include all of the following:

  (1) particulars sufficient enough to identify the **Insured**,

  (2) how, when and where the **occurrence** took place and

  (3) the names and addresses of any injured persons and witnesses.

b) If claim is made or suit is brought against the **Insured**, the **Named Insured** must see to it that the Company receives prompt written notice of the claim or suit. The **Named Insured** and any other **Insured** involved must

  (1) immediately send the Company copies of any demands, notices, summonses or legal papers received in connection with the claim or suit,

  (2) authorize the Company to obtain records and other information,

  (3) cooperate with the Company in the investigation, settlement or defense of the claim or suit and

  (4) assist the Company, upon the Company's request, in the endorsement of any right against any person or organization which may be liable to the **Insured** because of injury or damage to which the insurance may also apply.

c) No **Insured** will, except at its own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without the Company's consent.

**4) SEVERABILITY OF INTEREST**

Except with respect to the Limit of the Company's Liability and any rights and duties specifically assigned in this policy to the first **Named Insured**, this insurance applies:

a) as if each **Named Insured** were the only **Named Insured** and

b) separately to each **Insured** against whom claim is made or suit is brought.

### APPLICABLE TO COVERAGE E – MEDICAL EXPENSE

**5) ACTION AGAINST THE COMPANY**

No person or organization has the right under this policy to sue on this policy unless all of its terms have been fully complied with and until thirty (30) days after the required proofs of claim have been filed with the Company.

**6) MEDICAL REPORTS: PROOF AND PAYMENT OF CLAIM**

a) The injured person or someone on his or her behalf, as soon as practical after an accident, must give the **Company** written proof of claim and, if requested by the Company:

  (1) provide his or her sworn statement under oath,

  (2) authorize the Company to obtain medical reports and copies of records and

(3) submit to physical examination by a physician selected by the Company, when and as often as the Company may reasonably require.

b) The Company may pay the injured person or any person or organization rendering the services and such payment:

(1) shall reduce the amount payable hereunder for the injury and

(2) shall not constitute admission of liability by an **Insured** or the Company.

## APPLICABLE TO COVERAGES F, G, AND H – PHYSICAL DAMAGE

### 7) ACTION AGAINST THE COMPANY AND PAYMENT OF LOSS

The Company does not have to pay, and the **Named Insured** does not have the right to sue on this policy, unless all of its terms have been fully complied with and until thirty (30) days after the required proofs of **loss** have been filed with the Company and the amount of **loss** is determined as provided by the policy, nor at all unless commenced within twelve (12) months after the date of the **loss**.

### 8) APPRAISAL OF LOSS

If the **Named Insured** and the Company fail to agree as to the amount of **loss**, each shall, upon written notice to the other, hire at its own expense an independent aircraft appraiser. The appraisers will then agree on a knowledgeable and neutral umpire. If they cannot agree on the umpire in fifteen (15) days, a Judge of the county of the pending appraisal will appoint the umpire. Agreement by any two of these three shall determine the amount of **loss**. The **Named Insured** and the Company will share the umpire's cost equally. But this clause shall not deprive or waive any rights of the Company.

### 9) AUTOMATIC REINSTATEMENT

In the event of **loss**, whether or not covered by this policy, the amount of insurance in respect to any **aircraft** shall be reduced as of the time and date of **loss** by the amount of such **loss** and such reduced value shall continue until repairs are commenced when the amount of insurance shall be automatically increased by the value of the completed repairs until the amount of insurance is fully reinstated or the policy has expired.

### 10) INSURED'S DUTIES WHEN LOSS OCCURS

When **loss** occurs, the **Insured** shall:

a) take all reasonable precautions to protect the property or **aircraft** after an **occurrence**. The

Company shall reimburse the **Insured** all reasonable cost in affording such protection,

b) not abandon the property or **aircraft**,

c) immediately contact the Company and provide prompt written notice at the address appearing on the policy back cover, including the following:

(1) time, place and description of events and

(2) a description and location of the **aircraft**,

d) promptly report theft and vandalism to the Company and local police,

e). do nothing after the **loss** to harm the Company's rights of recovery against any person or organization,

f) allow the Company to inspect the property,

g) submit to examination under oath if requested by the Company,

h). allow the Company to inspect all aircraft records, pilot logbooks, repair and service invoices, sales receipts and any other pertinent records until settlement of the **loss** and

i) file proof of **loss** with the Company within sixty (60) days after the date of **loss**, in the form of a sworn statement to include:

(1) the interest of the **Named Insured** and all others in the property affected,

(2) any encumbrances thereon,

(3) the actual cash value of the property at the time of the **loss**,

(4) the amount, place, time and cause of such **loss** and

(5) the description and amounts of all other insurance covering such property,

unless such time is extended in writing by the Company.

### 11) NO BENEFIT TO BAILEE

The insurance afforded by this policy shall not inure directly or indirectly to the benefit of any carrier or bailee liable for **loss** to the **aircraft**.

## APPLICABLE TO ALL COVERAGES

### 12) ASSISTANCE AND COOPERATION OF THE INSURED

The **Insured** shall cooperate with the Company and, upon the Company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The **Insured** shall not, except at its own cost, voluntarily

make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of an **occurrence**.

### 13) BANKRUPTCY

Bankruptcy or insolvency of the **Insured** or of the **Insured's** estate shall not relieve the Company of any of its obligations hereunder.

### 14) CANCELLATION

a) The first **Named Insured** shown on the Declarations may cancel this policy by mailing or delivering to the Company advance written notice of cancellation.

b) The Company may cancel this policy by mailing or delivering to the first **Named Insured** written notice of cancellation at least:

   (1) ten (10) days before the effective date of cancellation if the Company cancels for non-payment of premium or

   (2) thirty (30) days before the effective date of cancellation if the Company cancels for any other reason.

c) The Company will mail or deliver notice to the first **Named Insured's** last mailing address known to the Company.

d) If this policy is cancelled, the Company will return any premium refund due. If the Company cancels, the refund will be pro rata. If the **Named Insured** cancels, the refund may be less than pro rata. The cancellation will be effective even if the Company have not made or offered a refund. The Company shall not be liable for any return **Physical Damage** premium in respect to any **aircraft** on which a **total loss** has been paid.

e) If notice is mailed, proof of mailing will be sufficient proof of notice.

### 15) CHANGING THE POLICY

Nothing in this policy can be changed or waived except by the Company's written endorsement, approved and signed by the Company.

### 16) EXAMINATION OF INSURED'S BOOKS AND RECORDS

The Company may examine and audit the **Insured's** books and records as they relate to this policy at any time during the policy period and up to three (3) years afterward.

### 17) FRAUD OR MISREPRESENTATION

This policy shall be void if the **Named Insured** has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof or in case of any fraud, attempted fraud or false swearing by the **Named Insured** touching any matter relating to this insurance or the subject thereof, whether before or after a **loss**.

### 18) INSPECTION AND SURVEYS

The Company has the right but are not obligated to:

a) make inspections and surveys at any time,

b) give the **Named Insured** reports on the conditions found or

c) recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. The Company does not make safety inspections. The Company does not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. Additionally the Company does not warrant that conditions:

d) are safe and healthful or

e) comply with laws, regulations, codes or standards.

This condition applies not only to the Company, but also to any rating, advisory, rate service or similar organization that make insurance inspections, surveys, reports or recommendations.

### 19) NONRENEWAL

If the Company decides not to renew this coverage, the Company will mail or deliver to the first **Named Insured** shown in the Declarations written notice of the nonrenewal not less than thirty (30) days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

### 20) PREMIUMS

The first **Named Insured** shown in the Declarations is responsible for the payment of all premiums.

### 21) REPRESENTATIONS

By accepting this policy, the **Named Insured** agrees that:

a) the statements in the Declarations are accurate and complete,

b) those statements are based upon representations of the **Named Insured** to the Company and

c) the Company has issued this policy in reliance upon the **Named Insured's** representations.

## 22) STATE STATUTES

If the terms of this policy are in conflict with or inconsistent with the insurance statutes of any state where this policy is in effect, the policy will conform to those state statutes.

## 23) SUBROGATION

If the **Insured** has rights to recover all or part of any payment the Company has made under this policy, those rights are transferred to the Company. The **Insured** must do nothing after **loss** to impair them. At the request of the Company, the **Insured** will bring suit or transfer those rights to the Company and do whatever else is necessary to secure such rights. The **Insured** shall do nothing after a **loss** to prejudice such rights.

## 24) TITLES OF PARAGRAPHS

The titles of the various paragraphs of this policy and amendments, if any, attached to this policy are inserted solely for reference and are not to be deemed in any way to limit or affect the provision to which they relate.

## 25) TRANSFER OF THE NAMED INSURED'S RIGHTS AND DUTIES UNDER THIS POLICY

The **Named Insured's** rights and duties under this policy may not be transferred without the Company's written consent except in the case of the death or bankruptcy of an individual **Named Insured**.

If such individual **Named Insured** dies or is adjudged bankrupt or insolvent, his or her rights and duties will be transferred to the **Named Insured's** legal representative but only while acting within the scope of duties as such. Until the **Named Insured's** legal representative is appointed, anyone having proper temporary custody of the **Named Insured's** property will have such **Named Insured's** rights and duties but only with respect to that property, but in no event for more than sixty (60) days following such death or adjudication.

## 26) VIOLATION OF STATUTE

If coverage for a claim under this policy is in violation of any of United States of America's economic or trade sanctions, including but not limited to, sanctions administered by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"), then coverage for that claim shall be null and void.

-END-



**Named Insured:** **William Leeds**
**Policy Number:** **SA 002061 01**
**Effective Date:** **February 18, 2017**

**Endorsement Number**
**1**

## BROAD NAMED INSURED ENDORSEMENT

This endorsement modifies the policy to which it is attached as follows:

The **Named Insured** set forth on the Declarations is changed as follows:

William Leeds and any subsidiary, affiliated, owned or controlled companies or entities now in existence or hereafter formed or acquired jointly or severally, as their respective interests may appear.

"Subsidiary, affiliated, owned or controlled companies or entities" means any company or entity of which at least fifty percent (50%) of the stock or fifty percent (50%) of the members or, if a partnership, fifty percent (50%) interest in the partnership is owned by the **Named Insured**, or for which the **Named Insured** has assumed active management control. Subsidiary, affiliated, owned or controlled companies or entities acquired after the effective date of your policy shall be reported to the Company within thirty (30) days after they are acquired.

All other provisions of this policy remain the same.

**AGCS-AV 2105 (12-07)**                                                                                  **Page 1 of 1**



**Named Insured:** **William Leeds**
**Policy Number:** **SA 002061 01**
**Effective Date:** **February 18, 2017**

**Endorsement Number**
**2**

## PILOT WARRANTY ENDORSEMENT

In consideration of an additional premium of $Included, this endorsement modifies the policy to which it is attached as follows:

As respects:  N736RA, 1978 Cessna 182RG Skylane

It is a condition of this insurance that when **inflight**, the **aircraft** must at all times be operated by a pilot who possesses the appropriate **FAA** Pilot's Certificate and Ratings for the flight involved and who are either Named or meets or exceeds the Open Pilot requirements as shown below:

Named Pilots:

William Leeds

Open Pilot requirements:

Any pilot maintaining an FAA Private or more advanced Pilot Certificate and an Instrument Rating and who has logged a minimum of 500 total hours; of which at least 100 hours have been in Aircraft with retractable landing gear, at least 10 hours in the insured make and model aircraft.

All other provisions of this policy remain the same.

**AGCS-AC 2404 (02-08)**                                                                    **Page 1 of 1**

**Allianz ⏚**

| | |
|---|---|
| **Named Insured:** **William Leeds** | |
| **Policy Number:** **SA 002061 01** | **Endorsement Number** |
| **Effective Date:** **February 18, 2017** | **3** |

## TRIA DISCLOSURE ENDORSEMENT

THIS ENDORSEMENT, DETAILING THE PROVISIONS OF THE "TERRORISM RISK INSURANCE ACT", AS AMENDED, IS MADE A PART OF THIS POLICY.  NOTHING IN THIS ENDORSEMENT CHANGES ANY OF THE TERMS OR CONDITIONS OF THIS POLICY OR PROVIDES ANY ADDITIONAL COVERAGE.

I.   <u>Terrorism Risk Insurance Act Notice</u>

Please take note that under the Terrorism Risk Insurance Act, as amended, (collectively referred to herein as "TRIA"), the **Named Insured** has a right to purchase insurance coverage from the Company for losses arising out of an "act of terrorism" as defined in Section 102(1) of "TRIA".

II.  <u>Definition</u>

You are hereby notified that under the Terrorism Risk Insurance Act, as amended in 2015, the definition of act of terrorism has changed.  Solely with respect to this endorsement and to ensure compliance with the Terrorism Risk Insurance Act, as amended, an "act of terrorism" shall mean:

The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act to be an act of terrorism pursuant to such Act, as amended; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside of the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

III. <u>Federal Share of Compensation</u>

You should know that where coverage is provided by this policy for losses resulting from certified acts of terrorism, such losses by be partially reimbursed by the United States Government under formula established by Federal Law.  However, your policy may contain other exclusions which might affect your coverage, such as exclusion for nuclear events.  Under the formula, the United States Government generally reimburses eighty-five percent (85%) through 2015, 84% beginning on January 1, 2016, 83% beginning on January 1, 2017, 82% beginning on January 1, 2018, 81% on January 1, 2019 and 80% beginning on January 1, 2020 of covered terrorism losses exceeding the statutorily established deductible paid by the Company providing the coverage.  If you have purchased this coverage, the premium charged for this coverage (if any) does not include any charges for the portion of loss that may be covered by the Federal Government under the Act.

<u>$100 Billion Cap</u>

You should also know that the Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as the insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses in any one calendar year exceeds $100 billion.  If the aggregated insured losses for all insurers exceed $100 billion, your coverage may be reduced.

IV. <u>Conditional Termination of Endorsement</u>

A.  This endorsement terminates under the following conditions, whichever occurs first:

**AGCS-AV 3650 (01-15)**                                                                                     **Page 1 of 2**



    i.   upon the expiration of the policy, or

    ii.  if the "Terrorism Risk Insurance Program" (the "Program") terminates (as provided by "TRIA" at the end of December 31, 2020) with respect to the coverage provided by this policy, and the "Program" is not renewed, extended or otherwise continued by the federal government or,

    iii.  if, on or after December 31, 2020, a renewal, extension or continuation of the "Program" becomes effective without a requirement to make terrorism coverage available to the **Named Insured** or with revisions that do any of the following:

        a.  increase the Company's statutory percentage deductible under the "Program" for terrorism losses,

        b.  decrease the federal government's statutory percentage share in potential terrorism losses above such deductible or,

        c.  redefines terrorism or makes insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this policy.

B.  If none of the conditions set forth in paragraph IV. A. above occur, this endorsement will continue in effect unless the Company notifies the **Named Insured** of changes in response to federal law.

V.  <u>"TRIA" Terrorism Coverage may be purchased from the Company.  No coverage is provided by this notice. TRIA Terrorism Coverage must be purchased separately.</u>

If "TRIA" coverage is purchased, the premium will be stated on the TRIA Write-Back Endorsement(s) attached to this policy, or on the Declarations Page.

If "TRIA" coverage has not been purchased, coverages for liability and/or physical damage losses from "Acts of Terrorism" are offered for rates that are available upon request from the Company.

All other provisions of this policy remain the same.



**Named Insured:  William Leeds**
**Policy Number:  SA 002061 01**                              **Endorsement Number**
**Effective Date:   February 18, 2017**                                        **4**

## TRIA EXCLUSION ENDORSEMENT

In consideration of an additional premium of $Included, this endorsement modifies the policy to which it is attached as follows:

This policy does not cover claims caused by any losses, damages, or injuries arising directly or indirectly as a result of a certified "Act of Terrorism" defined by the Terrorism Risk Insurance Act, as amended.

Solely with respect to this endorsement and to ensure compliance with the Terrorism Risk Insurance Act, as amended, an "Act of Terrorism" shall mean:

> The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act, as amended; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside of the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

> This endorsement shall apply solely to the Terrorism Risk Insurance Act, as amended, and shall in no way conflict with the War, Hijacking and Other Perils Exclusion contained within this policy or write-backs thereto.

All other provisions of this policy remain the same.

**AGCS-AV 3700 (01-15)**                                                    **Page 1 of 1**



**Named Insured:** **William Leeds**
**Policy Number:** **SA 002061 01**
**Effective Date:** **February 18, 2017**

**Endorsement Number**
**5**

## BROAD COVERAGE ENDORSEMENT

In consideration of an additional premium of $Included, this endorsement modifies the policy to which it is attached as follows:

(Only the clause(s) indicated by an "X" shall apply.)

Exclusion 3) b) set forth in the policy provisions is deleted.

☒ AUTOMATIC INSURANCE FOR INCREASED INSURED VALUE

If the value of the **aircraft** increases due to **modification** or additional equipment accomplished during the Policy Period, the Amount of Insurance applicable to the **aircraft's physical damage** coverage shall increase automatically by the cost of such **modification** or additional equipment provided however that:

(a) such increase in value is reported to the Company within 30 days of completion of such **modification** or additional equipment;

(b) the maximum automatic increase for which the Company shall be liable shall not exceed 15% of the insured value applicable to such **aircraft** specified in the Declarations before such **modification** or additional equipment, subject however to a maximum insured value of $109,250.00 whichever is less;

(c) the **Insured** pays any additional premium when due on account of such increase in insured value.

"**Modification**" as used in this endorsement shall mean a physical change to an **aircraft** insured for **physical damage** by this policy to enhance or improve performance. Modification does not include routine or scheduled maintenance.

☒ **BAGGAGE** & HANGAR COVERAGES

**Property Damage** coverage is extended to include the following additional coverages:

(a) direct **physical damage** to **passenger's baggage** for not more than $2,500 each **passenger**, any one **occurrence**;

(b) **Property Damage** to hangars and the contents thereof, of others, in the care, custody or control of the **Insured**, for not more than $50,000 each **occurrence**.

This clause does not include coverage for damage to **aircraft** of others or any **aircraft** which could be insured elsewhere within this policy.

"**Baggage**" means handbags, suitcases, valises, briefcases and other forms of baggage or personal effects usually carried by travelers, and the contents thereof, but excluding accounts, bills, jewelry, deeds, evidences of debt, letters of credit, passports, documents, coupons, money, credit cards, notes, securities, manuscripts, valuable papers, airline and other tickets.

Coverage provided by this paragraph is secondary to and excess over any other valid insurance available and collectible by the **Insured**.

☒ DEFINITION OF **PREMISES**

"**Premises**" means such portions of airports and heliports used by the **Named Insured** directly in connection with the ownership, maintenance or use of any **aircraft** inclusive of premises owned, operated or maintained by the **Named Insured**.

The limit of insurance provided under Item 1) of the Insuring Agreements with respect to an **occurrence** and arising out of the maintenance or use of the **premises** in or upon which the **aircraft** is stored shall be:

**AGCS-AC 4020 (04-08)**

**Allianz ⑪**

(Only the clause indicated by an "X" shall apply.)

☒   the same limit as the Coverages A, B and D set forth on the Declarations; or

☐   $          per **occurrence**

Coverage provided by this paragraph is secondary to and excess over any other valid insurance available and collectible by the **Insured**.

☒   EMERGENCY OR UNEXPECTED LANDING

This policy is extended to pay for the reasonable expenses of disassembly and removal of an **aircraft** insured under this policy from a place of emergency or unexpected landing to the nearest airport, provided that the place of emergency or unexpected landing is inadequate for a safe take-off for flight.

The Company shall not be liable:

(a) if the **aircraft** is not insured while **in flight**,

(b) for any expense in correcting any mechanical difficulty,

(c) for any expenses that exceed 100% of the insured value of the **aircraft** involved.

If the cost to disassemble, remove and/or transport the **aircraft** equals or exceeds the **aircraft** insured value or actual cash value the Company will pay a **total loss** and all rights to any remaining salvage shall inure to the Company.

☒   **EXTRA EXPENSE** FOR RENTING SUBSTITUTE AIRCRAFT

Only with respect to **aircraft** insured for Ground and Flight coverage F:

1. The Company will pay the **Named Insured** for the **extra expense** caused by an **occurrence** and arising out of **Insured's physical damage loss** to an **aircraft** scheduled in the Declarations.

2. Limit of Liability

   $500 each day, each **aircraft**

   $10,000 each **occurrence**, each **aircraft**

3. The insurance afforded by this coverage does not apply to:

   (a)   any expenses incurred within 5 days from the date of **occurrence**.

   (b)   any expenses if another similar aircraft is available at no charge.

   (c)   any expenses if the **Named Insured** acquires through ownership, lease, lease purchase option, or otherwise, a permanent replacement aircraft for the damaged **aircraft**.

   (d)   any expenses if the **aircraft** is a **total loss** and the Company has offered the **Named Insured** a proof of loss.

   (e)   any expenses incurred after repairs covered under Ground and Flight Coverage F on the **aircraft** have been completed.

   (f)   any expenses incurred after 60 days from the date of **occurrence**.

   "**Extra Expense**" means the costs of leasing or renting a temporary substitute aircraft which exceeds the cost the **Named Insured** would have incurred if the **Named Insured** could have operated the **aircraft** had it not been damaged.

☒   EXTRA EXPENSE OF TEMPORARY REPLACEMENT AIRCRAFT PARTS

Only with respect to **aircraft** insured for Ground and Flight coverage F:

The Company will pay extra expense, including the direct cost of installation, removal and transportation, incurred by the **Named Insured** for renting or leasing aircraft parts as temporary replacements for aircraft parts;



1. damaged and being repaired, or
2. destroyed and being permanently replaced,

caused by a **physical damage loss** covered by this policy to an **aircraft** shown in the Declarations.

The Limit of the Company's Liability with respect to this coverage shall not exceed:

$2,500 each **loss**, regardless of the number of such replacement parts or **aircraft**.

The coverage provided herein shall be in addition to the Limit of Liability shown In the Declarations.

This coverage does not apply:

1. if the time to permanently replace, or to repair and return such part is less than 5 calendar days;

2. if the **aircraft** to which this coverage applies is a total, constructive total or arranged **total loss**;

3. to the **Insured's** spare parts;

4. to parts under existing rental, lease or exchange agreements;

5. to charges for wear, tear or depreciation, damage, **loss**, loss of use, maintenance, repairs or operating costs;

6. to charges incurred after such damaged or destroyed part has been permanently repaired or replaced;

7. to charges incurred while such **aircraft** or temporary replacement part is unusable on account of an Airworthiness Directive, factory Service Bulletin, airworthiness inspection, breakdown, malfunction or unsuitability;

8. to charges incurred during the period prior to installation of such temporary part on the **aircraft** if uninstalled for three (3) days or more.

☒ HANGARKEEPER'S LIABILITY

The Company will pay on behalf of the **Insured** all sums the **Insured** is legally obligated to pay as damages because of **Property Damage** caused by an **occurrence** to any aircraft but only while such aircraft is not **in flight** and is in the care, custody and control of the **Insured** for safekeeping, storage or repair.

This coverage shall not apply to:

(a) any **aircraft** that is owned by, leased to, rented or loaned to, the **Insured**, partners of the **Insured**, an officer or employee of the **Insured**;

(b) robes, wearing apparel, personal effects or merchandise;

(c) any damages due to theft or conversion by the **Insured**, partners of the **Insured**, or an officer or employee of the **Insured**;

(d) the **Insured's** liability under any agreement to be responsible for damages to any aircraft.

The Limit of Liability with respect to this coverage is $95,000 each **aircraft**, $95,000 each **occurrence** and is subject to a deductible of $1,000 each aircraft.

The Company's right and duty to defend will end when the Company has used up the applicable limits of insurance in the payment of judgments or settlements under this coverage.

☒ HOST LIQUOR LIABILITY

The Company will pay on behalf of the **Insured** all sums which the **Insured** becomes legally obligated to pay as damages because of **Bodily Injury** or **Property Damage** caused by an **occurrence** during the policy period arising out of the serving or giving of alcoholic beverages at or from the **Insured's premises** or any **aircraft** covered by this policy. The insurance provided by this coverage section is excess insurance.

The Limit of Liability with respect to this coverage is $1,000,000 aggregate.

☒ MOBILE EQUIPMENT LIABILITY



The Company will promptly pay on behalf of the **Insured** all sums the **Insured** becomes legally obligated to pay as damages because of **Bodily Injury** and **Property Damage** caused by an **occurrence** arising out of the ownership, maintenance or use of **mobile equipment**.

"**Mobile equipment**" shall mean a land vehicle (including any machinery or apparatus attached) that is not subject to motor vehicle registration or is used exclusively on **premises** owned by or rented to the **Named Insured**, but only while used on **premises** and in connection with the maintenance or operation of **aircraft** or **premises**. The insurance provided by this coverage shall be excess over any other coverage available to the **Insured**.

The Limit of Liability with respect to this coverage is $1,000,000 each **occurrence**.

☒ **PHYSICAL DAMAGE** TO SPARE ENGINES, PARTS, AVIONICS AND ACCESSORIES

**Physical damage** coverage is extended to insure aircraft engines, parts, avionics and accessories not attached to or forming a part of any aircraft and being the property of the **Named Insured** or the property of others for which the **Named Insured** is legally liable, against all risks of loss from external cause. In addition to the exclusions applying to **physical damage** coverage, the coverage extended by this paragraph does not apply to:

(a)   any property while temporarily detached from an aircraft;

(b)   **loss** or damage occurring once attachment or installation of such property has begun;

(c)   mysterious disappearance of the insured property;

(d)   depreciation, delay, loss of market or loss of use of the insured property.

The Limit of Liability with respect to this coverage is $10,000 each **occurrence** subject to a deductible of $1,000 each and every **loss**.

☒   **PREMISES** MEDICAL COVERAGE

The Company will pay all reasonable **medical expenses** incurred within one (1) year from the date of injury, to or for each person who sustains **Bodily Injury** caused by an **occurrence** and arising out of the ownership, maintenance or use of the **premises**. The same exclusions and conditions applicable to **aircraft medical expense** coverage in this policy shall also apply to this coverage.

The Limit of Liability with respect to this coverage is $5,000 each person.

☒   PRODUCTS LIABILITY - SALE OF **AIRCRAFT**, AIRCRAFT PARTS, FOOD AND BEVERAGE

Liability coverage is extended to include all sums which the **Insured** shall become legally obligated to pay for **Bodily Injury** or **Property Damage** caused by an **occurrence** and arising out of:

(a)   the sale or relinquishment from exclusive written lease by the **Named Insured** of **aircraft** or **aircraft** parts;

(b)   the furnishing to others of aircraft fuel or aircraft maintenance services by the **Named Insured** without intentional profit;

(c)   the furnishing to **passengers** of food and beverage by the **Named Insured** in connection with the operation of **aircraft** or **premises**.

This coverage shall apply only if the **Bodily Injury** or **Property Damage** occurs away from **premises** used by the **Named Insured** and after physical possession of such **aircraft**, aircraft parts, aircraft fuel, food or beverage has been relinquished to others and such services have been completed.

The Limit of Liability with respect to this coverage is $1,000,000 each **occurrence** and aggregate and such limit is in addition to the limits for aircraft liability.

☒   SEARCH AND RESCUE EXPENSES

DEFENSE, SETTLEMENT AND SUPPLEMENTARY PAYMENTS Insuring Agreement is extended to include the following additional coverages:



(a)  the cost of runway or **aircraft** foaming incurred by the **Insured** for minimizing **loss** under this policy, but not in excess of $25,000 each **occurrence** for each foaming;

(b)  the actual expenses incurred by the **Insured**, but not to exceed $25,000 any one **occurrence**, for search and rescue operations performed by or at the request of the **Named Insured**, but only after all governmental and military search and rescue operations have been discontinued.

☒ TRIP INTERRUPTION EXPENSE

DEFENSE, SETTLEMENT AND SUPPLEMENTARY PAYMENTS are extended to include the following expenses incurred as a result of a covered **physical damage loss**:

The Company will promptly reimburse the **Named Insured** for their reasonable expenses of food, travel and lodging of **passengers** incurred from the place where an **aircraft** insured hereunder suffers a covered **physical damage loss** to the intended final destination of the **aircraft**, or back to the place they originally boarded the aircraft, if the trip is discontinued. Coverage hereunder shall not exceed $500 for each **passenger**, each **occurrence**. The **Named Insured** will provide to the Company duplicate invoices for all covered expenses within thirty (30) days of the date such expenses are incurred.

☒ UNEARNED PREMIUM INSURANCE

In the event of a **total loss**, the Company shall refund the pro-rata unearned premium applicable only to **physical damage** coverage, with respect only to such **aircraft** which is a **total loss**.

All other provisions of this policy remain the same.



**Named Insured:** **William Leeds**
**Policy Number:** **SA 002061 01**
**Effective Date:** **February 18, 2017**

**Endorsement Number**
**6**

## WAR, HIJACKING, EXTORTION AND OTHER PERILS
## PHYSICAL DAMAGE WRITE-BACK ENDORSEMENT

In consideration of an additional premium of $Included, this endorsement modifies the policy to which it is attached as follows:

This Coverage does NOT apply to any **aircraft** with an Insured Value of "N/C" in Item 4 of the Declarations
Notwithstanding anything in the policy to the contrary, this endorsement provides the coverages shown below:

### SECTION ONE - LOSS OF OR DAMAGE TO AIRCRAFT
Subject to the terms, conditions and limitations set out below, this endorsement covers physical **loss** of or damage to the **aircraft** scheduled herein caused by

(a) War, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, martial law, military or usurped power or attempts at usurpation of power;
(b) Strikes, riots, civil commotions or labor disturbances;
(c) Any act of one or more persons, whether or not agents of a sovereign power, for political or terrorist purposes and whether the **loss** or damage resulting therefrom is accidental or intentional;
(d) Any malicious act or act of sabotage;
(e) Confiscation, nationalization, seizure, restraint, detention, appropriation, requisition for title or use by or under the order of any Government, (whether civil, military, or de facto) or public or local authority;
(f) Hijacking or any unlawful seizure or wrongful exercise of control of the **aircraft** or **crew in flight** (including any attempt at such seizure or control) made by any person or persons on board the **aircraft** acting without the consent of the **Insured**.

Furthermore, this endorsement covers claims while the **aircraft** is outside the control of the **Insured** by reason of any of the above perils (a) through (f). The **aircraft** shall be deemed to have been restored to the control of the **Insured** on the safe return of the **aircraft** to the **Insured** at an airfield not excluded by the geographical limits of this endorsement and entirely suitable for the operation of the **aircraft** (such safe return shall require that the aircraft be parked with engines shut down and under no duress).

### SECTION TWO - EXTORTION COVERAGE
The Company agrees to indemnify the **Insured** subject to the provisions below for any payment properly made in respect of threats against the **aircraft**, its **passengers** or **crew**, made during the currency of this endorsement.

### SECTION THREE - HIJACKING EXPENSE COVERAGE
The Company agrees to indemnify the **Insured** subject to the provisions below, for any payment properly made in respect of extra expenses necessarily incurred following confiscation, etc. (as per Section One Clause (e)) or hijacking, etc. (as per Section One Clause (f)) of the **aircraft**.

### SECTION FOUR - GENERAL EXCLUSIONS
This endorsement excludes **loss**, damage or expense caused by any of the following:

(a) War (whether there be a declaration of war or not) between any of the following States: United Kingdom, United States of America, France, the Russian Federation, the People's Republic of China; nevertheless, if the **aircraft** is in the air when an outbreak of such war occurs, this exclusion shall not apply in respect of such **aircraft** until the said **aircraft** has completed its first landing thereafter;
(b) Any detonation of any weapon of war employing atomic or nuclear fission and/or fusion, or other like reaction or radioactive force or matter, whether hostile or otherwise;
(c) Any debt, failure to provide bond or security or any other financial cause under court order or otherwise;



(d) The repossession or attempted repossession of the **aircraft** either by any title holder or arising out of any contractual agreement to which any **insured** protected under this endorsement may be party;

(e) Delay, loss of use or, except as specifically provided in Section Two, any other consequential **loss** whether following upon **loss** of or damage to the **aircraft** or otherwise;

## SECTION FIVE - GENERAL CONDITIONS

1.  With respect to the Coverages in Section Two and Three:

    (a) The **Insured** is at all times responsible for ensuring that no arrangements of any kind are made which are not permitted by the proper authorities;

    (b) The Limits of the Company's liability shall not exceed an amount equal to 90% of the Agreed Value of the **aircraft** (but not more than $1,000,000.) for both Section Two and Section Three coverages combined;

    (c) The **Insured** warrants the remaining 10% of such payments is not insured.

2.  The **Insured** shall use all reasonable efforts to ensure compliance with the laws (local and otherwise) of any country within whose jurisdiction the **aircraft** may be and to obtain all permits necessary for the lawful operation of the **aircraft**.

## SECTION SIX – AMENDMENT OF TERMS, SUSPENSION AND AUTOMATIC SUSPENSION

1.  Amendment of Terms

    The Company may give notice effective on the expiry of seven days from midnight G.M.T. on the day on which notice is issued, to review the rate of premium and/or geographical limits.

2.  Suspension by Notice

    (a) This insurance may be suspended by the Company or the **Insured** giving notice not less than seven days prior to the end of each period of three months from inception.

    (b) PROVIDED THAT if the **aircraft** is in the air when such outbreak of war occurs then this insurance, subject to its terms and conditions and provided not otherwise cancelled, terminated or suspended, will be continued in respect of such **aircraft** until the said **aircraft** has completed its first landing thereafter.

    (c) Upon the hostile detonation of any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force of matter wherever or whenever such detonation may occur and whether or not the insured **aircraft** may be involved.

3.  Automatic Suspension

    Whether or not such notice of suspension has been given, this insurance shall SUSPEND AUTOMATICALLY upon the outbreak of war (whether there be a declaration of war or not) between any one of the following countries, namely, the United Kingdom, United States of America, France, the Russian Federation, or the People's Republic of China.

> COVERAGE AS PROVIDED UNDER THIS ENDORSEMENT SHALL EXCLUDE ALL REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT OF 2002 and all subsequent renewals or amendments thereto.

All other provisions of this policy remain the same.

**AGCS-AV 4120 (08-10)**                                                                  **Page 2 of 2**

**Allianz ⑪**

| | | |
|---|---|---|
| **Named Insured:** | **William Leeds** | |
| **Policy Number:** | **SA 002061 01** | **Endorsement Number** |
| **Effective Date:** | **February 18, 2017** | **7** |

## TRIA PHYSICAL DAMAGE WRITE-BACK

This endorsement modifies the policy to which it is attached as follows:

The portion of the annual premium for this policy that is attributable to coverage for "Acts of Terrorism" is $Included, and does not include any charges for the portion of losses covered by the United States government under the Act.

Notwithstanding anything in the policy to the contrary, this endorsement provides the coverages shown below:

**Physical Damage Coverage for Scheduled Aircraft**

The Company will pay for the physical loss or **physical damage** to any insured **aircraft** unless specifically excluded below that is caused by an **occurrence** during the policy period arising out of the following peril:

An "Act of Terrorism" as defined within the United States Terrorism Risk Insurance Act, as amended, with respect to any one or more "Act of Terrorism." The Company will not pay any amounts for which the Company is not responsible under the terms of the Terrorism Risk Insurance Act, as amended, due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

This endorsement will not cover any loss, damage, or expense for any **occurrence** involving the following insured **aircraft** (if any) which the **Named Insured** has elected to not to purchase coverage as stated above.

Excluded Aircraft: None

All other provisions of this policy remain the same.

**AGCS-AV 4125 (01-15)**          **Page 1 of 1**



**Named Insured:** William Leeds
**Policy Number:** SA 002061 01
**Effective Date:** February 18, 2017

**Endorsement Number**
**8**

## WAR, HIJACKING AND OTHER PERILS LIMITED
## LIABILITY WRITE-BACK ENDORSEMENT

In consideration of an additional premium of $Included, this endorsement modifies the policy to which it is attached as follows:

1. Whereas the policy of which this Limited Write-Back Endorsement forms a part includes the War, Hijacking and Other Perils Exclusion – Exclusion **7)**, it is hereby understood and agreed that effective on the above date at 12:01 A.M., Standard Time, and only as respects **Bodily Injury**, **Property Damage** and **Passenger** Liability, all sub-paragraphs other than sub-paragraph 7) b) (1) and b) (2) of the War, Hijacking and Other Perils Exclusion forming part of this policy are deleted, subject to all terms and conditions of this Limited Write-Back Endorsement.

2. Only with respect to the deletion of sub-paragraph 7) a) from the War, Hijacking and Other Perils Exclusion by virtue of paragraph 1. above, this Limited Write-Back Endorsement shall not apply to liability for damage to any form of property on the ground situated outside Canada and the United States of America unless caused by or arising out of the use of **aircraft**.

3. LIMITATION OF LIABILITY

   The Company's liability in respect of this Limited Write-Back Endorsement shall be a sub-limit as shown in the schedule below any one **occurrence** and in the annual aggregate except with respect to passengers in an aircraft in which case the **Passenger** Liability set forth in Item 3. of the Declarations shall apply (subject to any annual aggregate). The sub-limit is included within the policy Limit of Liability applicable to Liability Coverages, and is not in addition thereto.

   In no event shall the Company's liability under this Limited Write-Back Endorsement exceed the annual aggregate regardless of the number of (a) **Insureds**, (b) **occurrences** or events, (c) claims made or suits brought, or (d) persons or organizations making claims or bringing suits.

   **Schedule**

   **Sub-limit:**   $ 50,000,000, or the applicable **aircraft occurrence** limit as it appears in ITEM 3 of the Declarations, whichever is less.

   Coverage Applies to all Scheduled Aircraft

**AGCS-AC 4140 (06-07)**

**Page 1 of 2**



4.  AUTOMATIC TERMINATION

This Limited Write-Back Endorsement shall terminate automatically upon the happening of any of the following circumstances:

a)  Upon the outbreak of war (whether there be a declaration of war or not) between any two or more of the following:  France, the People's Republic of China, the Russian Federation, the United Kingdom, or the United States of America;  or

b)  Only with respect to the deletion of sub-paragraph 7) a) from the War, Hijacking and Other Perils Exclusion by virtue of paragraph 1. above, upon the hostile detonation of any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter wherever or whenever such detonation may occur and whether or not an insured aircraft may be involved;

c)  Upon the requisitioning of any insured aircraft for title or use.

However, if an insured aircraft is **in flight** when (a), (b) or (c) above occurs, then this Limited Write-Back Endorsement (unless otherwise cancelled, terminated or suspended) shall continue in respect of such aircraft until completion of its first landing and any passengers have disembarked.

5.  REVIEW AND CANCELLATION

a)  The Company may give notice to review premium and/or geographical limits; such notice shall be effective on the expiration of seven (7) days from 12:01 A.M., Standard Time on the day on which notice is given.

b)  Following a hostile detonation as specified in paragraph 4. (b) above, the Company may give notice of cancellation of one or more parts of this Limited Write-Back Endorsement provided in paragraph 1. above; such notice shall be effective on the expiration of forty-eight (48) hours from 12:01 A.M., Standard Time on the day on which notice is given.

c)  This Limited Write-Back Endorsement may be cancelled by either the Company or the Insured giving notice to become effective on the expiration of seven (7) days from 12:01 A.M., Standard Time on the day on which such notice is given.

d)  All notices referred to herein shall be in writing

Nothing herein contained shall be held to vary, waive, alter, or extend any of the terms, conditions, agreements, or representations of the undermentioned policy, other than as above stated.

All other provisions of this policy remain the same.

**Allianz ⑪**

| | |
|---|---|
| **Named Insured:** | **William Leeds** |
| **Policy Number:** | **SA 002061 01** |
| **Effective Date:** | **February 18, 2017** |

**Endorsement Number**
**9**

# AUTOMATIC ATTACHMENT ENDORSEMENT
# FOR NEWLY ACQUIRED AIRCRAFT

In consideration of an additional premium of $Included, this endorsement modifies the policy to which it is attached as follows:

For the purposes of this endorsement only, Paragraph **1)** under **SPECIAL INSURING AGREEMENTS** does not apply.

Paragraph **2) c)** under **SPECIAL INSURING AGREEMENTS** is hereby deleted and replaced by the following:

1.  Coverages A, B, C, D and F shall attach with respect to the following **aircraft** indicated by an "X" to the left of the appropriate paragraph:

    ☐  (a)  Any fixed wing, land **aircraft** bearing a "Standard" or "Special Light Sport" category Airworthiness Certificate having no more than 4 total seats,

    ☒  (b)  Any fixed wing, land **aircraft** bearing a "Standard" or "Special Light Sport" category Airworthiness Certificate having no more than 4 total seats and having a certificated gross weight not in excess of 12,500 pounds,

    acquired by the **Insured**, as owner or exclusive lessee, during the policy term provided that the Company is advised of the full details of the transaction within 30 days of acquisition or lease and the applicable premiums paid therefor.

2.  As respects Liability Coverage and Medical Expense coverage,

    (a)  if an additional **aircraft**, the same coverages and limits of liability shall apply as the **aircraft** having the greatest total seating capacity, as described in **Item 4.** of the Declarations or

    (b)  if a replacement **aircraft**, the same coverages and limits of liability as the **aircraft** being replaced.

3.  As respects **Physical Damage** coverages:

    (a)  The insured value of such **aircraft** shall be the actual price paid including engine(s) as evidenced by the records of the **Insured** unless a different value is accepted by the Company after notification as required above.

    (b)  The maximum amount of insurance automatically provided for any one **aircraft** shall not exceed $95,000; and in the event an acquired **aircraft** shall have a value in excess of this amount, the Company shall not be liable in the event of loss for an amount greater than the percentage this limit bears to the actual value unless such actual value shall have been specifically approved on the particular **aircraft** by the Company in writing.

    (c)  The amount of insurance automatically provided hereunder is subject to deductibles of:

    | | | |
    |---|---|---|
    | Not **In Motion** | $ | 250 |
    | **In Motion**, **Ingestion**, or **Mooring** | $ | 2,500 |

4.  Item 1. of this endorsement shall not apply to, and Coverages A, B, C, D and F shall not automatically attach, with respect to any **aircraft** scheduled below:

    Schedule:

All other provisions of this policy remain the same.

**AGCS-AC 4160 (07-06)**                                                        **Page 1 of 1**



**Named Insured:** William Leeds
**Policy Number:** SA 002061 01
**Effective Date:** February 18, 2017

**Endorsement Number**
**10**

## PERSONAL INJURY EXTENSION

In consideration of an additional premium of $Included, this endorsement modifies the policy to which it is attached as follows:

This insurance is extended to cover the **Named Insured's** Legal Liability for damages arising out of aircraft operations sustained by any person arising out of one or more of the following offenses committed during the policy period:

1. False arrest, restraint, detention or imprisonment.

2. Malicious prosecution.

3. Wrongful entry, eviction or other invasion of the right of private occupancy.

4. The publication or utterance of a libel or slander or of other defamatory or disparaging material in violation of an individual's right of privacy except publication or utterance in the course of or related to advertising, broadcasting or telecasting activities conducted by or on behalf of the **Named Insured.**

The following additional exclusions shall apply to the insurance provided by this extension:

    (a) liability assumed by the **Insured** under any contract or agreement.

    (b) personal injury arising out of the willful violation of penal statute or ordinance, committed by or with the knowledge or consent of the **Named Insured.**

    (c) personal injury arising out of offense 4 above,

        (i) if the first injurious publication or utterance of the same or similar material was made prior to the effective date of this insurance;

        (ii) if such publication or utterance was made by or at the direction of the **Named Insured** with the knowledge of the false nature thereof.

    (d) liability for personal injury sustained by any person directly or indirectly related to the past, present or potential employment of such person by the **Named Insured.**

The Limit of Liability applicable to Personal Injury claims shall be $1,000,000 any one offense and $1,000,000 in the annual aggregate during the policy period being within the overall policy limit and not in addition thereto.

All other provisions of this policy remain the same.

**AGCS-AC 4200 (07-06)**                                     **Page 1 of 1**



**Named Insured:  William Leeds**
**Policy Number:  SA 002061 01**
**Effective Date:   February 18, 2017**

**Endorsement Number**
**11**

## NON-OWNED AIRCRAFT: PHYSICAL DAMAGE ENDORSEMENT

In consideration of an additional premium of $Included, this endorsement modifies the policy to which it is attached as follows:

1.  This policy is extended to apply to those sums which the **Named Insured** shall become legally liable to pay because of **physical damage** or **loss** to **aircraft** of others described in Paragraph 3. below (including the resultant loss of use thereof) being used by, or on behalf of, the **Named Insured**, provided such **aircraft** is not registered to, owned in whole or in part by, under a lease of more than a thirty (30) day term to, or under a lease-purchase option agreement to, or under the exclusive control of the **Named Insured**, or officer, partner, or employee thereof, or a member of the household of any of the foregoing.

2.  This insurance shall be secondary to and excess over any other valid and collectible insurance available to the **Insured**. If such other Insurance is written through the Company as primary insurance, then the total limit of the Company's liability under all such policies shall not exceed the greatest Limit of Liability applicable under any one such policy.

3.  The coverage provided by this endorsement only applies to the following **aircraft** indicated by an "X" to the left of the appropriate paragraph:

☐  (a)  Any fixed wing, land **aircraft** bearing a "Standard" or "Special Light Sport" category Airworthiness Certificate having no more than 4 total seats.

☒  (b)  Any fixed wing, land **aircraft** bearing a "Standard" or "Special Light Sport" category Airworthiness Certificate having no more than 4 total seats and having a certificated gross weight not in excess of 12,500 pounds.

In addition to the Exclusions appearing in the policy, the coverage provided by this endorsement does not apply:

(a)  if the Company does not insure all the **aircraft** owned by, registered to, leased to or under the exclusive control of the **Named Insured**;

(b)  to any claims arising out of any **Insured's** products manufactured, distributed or handled by any **Insured**;

(c)  to any liability assumed by any **Insured** except in a written contract with a military or governmental body necessary for the use of any airport, unless endorsed in writing onto the policy;

(d)  to any loss or damage to any material furnished by any **Insured** or to any work performed by the **Insured** out of which an accident or **occurrence** arises;

(e)  to claims for **loss** of or damage to wearing apparel, personal effects or property of any description owned, rented, controlled or transported by any **Insured** whether or not the aircraft is lost or damaged;

(f)  with respect to any **aircraft** rented, financed or leased to others by any **Insured**, or repossessed or reacquired by any **Insured**.

**AGCS-AC 4240 (05-10)**

**Page 1 of 2**



4. The Company's Limit of Liability with respect to the coverage under this endorsement shall in no event exceed:

$100,000 each **occurrence**, subject to the following deductible amounts each **occurrence**:

| | | |
|---|---|---|
| Not **In Motion** | $ | Nil |
| **In Motion**, **Ingestion**, or **Mooring** | $ | 500 |

The **Named Insured** shall bear the deductible amount.

The above Limit of Liability is included within the policy Limit of Liability applicable to Liability Coverages, and is not in addition thereto.

5. With respect to the coverage provided by this endorsement only, the pilot requirements specified in Item 5. of the Declarations are deleted.

All other provisions of this policy remain the same.

**Allianz (⑪)**

| | |
|---|---|
| **Named Insured:** **William Leeds** | |
| **Policy Number:** **SA 002061 01** | **Endorsement Number** |
| **Effective Date:** **February 18, 2017** | **12** |

## NON-OWNED AIRCRAFT: LIABILITY ENDORSEMENT

In consideration of an additional premium of $Included, this endorsement modifies the policy to which it is attached as follows:

1.  Such coverage as is afforded by this policy under Coverages A, B, C, D, and E also apply to the **Named Insured** (including any director, executive officer, partner, or employee, agent or stockholder thereof, but only while acting within his or her official duties as such) arising out of the use by, or on behalf of, the **Named Insured** of **aircraft** not owned in whole or in part by, registered to, or under a lease agreement with a term of more than thirty (30) days to the **Named Insured**,

2.  TEMPORARY USE OF SUBSTITUTE AIRCRAFT and USE OF OTHER AIRCRAFT Special Insuring Agreements are deleted.

3.  The coverage provided by this endorsement is secondary to and excess over any other valid and collectible insurance available to the **Insured**, except insurance purchased as excess of the coverage provided by this endorsement. If such other insurance is written through the Company, the total limit of the Company's liability under all such policies shall not exceed the greatest Limit of Liability applicable under any one such policy.

4.  This endorsement applies only to the non-owned **aircraft** indicated by an "X" to the left of the appropriate paragraph.

    ☐ (a) Any fixed wing, land **aircraft** bearing a "Standard" or "Special Light Sport" category Airworthiness Certificate having no more than 4 total seats.

    ☒ (b) Any fixed wing, land **aircraft** bearing a "Standard" or "Special Light Sport" category Airworthiness Certificate having no more than 4 total seats and having a certificated gross weight not in excess of 12,500 pounds.

5.  In addition to the Exclusions applicable to Coverages A, B, C, D, and E, the coverage provided by this endorsement also does not apply to:

    (a) Any person or organization with respect to **aircraft** owned in whole or in part by, registered to, or under a lease agreement with a term of more than thirty (30) days, to such person (or member of his/her household) or organization.

    (b) **Physical damage** or **property damage** to, destruction of, or loss of use of non-owned **aircraft**.

    (c) Claims arising out of any product designed, manufactured, sold, distributed, serviced or handled by an **Insured**.

    (d) Claims arising out of any aircraft rented to, financed for, or leased to others (or repossessed or reacquired) by any **Insured**, subsidiary, owned or controlled firm thereof.

    (e) Liability arising out of **aircraft** insured elsewhere in the policy to which this endorsement is attached.

6.  With respect to the coverage provided by this endorsement only, the pilot requirements specified in the Declarations are deleted.



7.  The Company's Limit of Liability with respect to the coverage under this endorsement shall in no event exceed:

| | | | |
|---|---|---|---|
| **COVERAGE A: BODILY INJURY –** **EXCLUDING PASSENGERS** | $ $ | Not Covered Not Covered | Each Person Each **Occurrence** |
| **COVERAGE B: PROPERTY DAMAGE** | $ | Not Covered | Each **Occurrence** |
| **COVERAGE C: PASSENGER** LIABILITY | $ $ | Not Covered Not Covered | Each **Passenger** Each **Occurrence** |
| **COVERAGE D:** SINGLE LIMIT **BODILY INJURY** AND **PROPERTY DAMAGE** LIABILITY **INCLUDING PASSENGERS** WITH **PASSENGER** LIABILITY LIMITED TO: | $ $ | 1,000,000 100,000 | Each **Occurrence** Each **Passenger** |
| **COVERAGE E:  MEDICAL EXPENSE –** INCLUDING **CREW** | $ $ | 5,000 Not Applicable | Each Person Each **Occurrence** |

The above Limit of Liability is included within the policy Limit of Liability applicable to Liability Coverages, and is not in addition thereto.

All other provisions of this policy remain the same.

**AGCS-AC 4245 (07-06)**                                                          **Page 2 of 2**

**Allianz ⑪**

Named Insured:  **William Leeds**
Policy Number:  **SA 002061 01**
Effective Date:  **February 18, 2017**

Endorsement Number
13

## DELETION OF EXCLUSION ENDORSEMENT – CO-EMPLOYEES

In consideration of an additional premium of $Included, this endorsement modifies the policy to which it is attached as follows:

Regardless of anything to the contrary in Exclusion 11) b) of this policy and in paragraph 1. of the Definition of **Insured**, Liability Coverages of this policy are extended to apply to **bodily injury** and **property damage** liability claims asserted by an employee of the **Named Insured** against another employee of the same **Named Insured** arising out of the ownership, maintenance or use of the **aircraft**. This endorsement does not provide coverage to the **Named Insured** for any **bodily injury** and **property damage** liability claims asserted by employees of the **Named Insured**, and all other provisions of Exclusion 11) b)and paragraph 1. of the Definition of **Insured** remain in full force and effect.

All other provisions of this policy remain the same.

**AGCS-AC 4320 (07-06)**                                                                                          **Page 1 of 1**

**Allianz ⑪**

Named Insured:   William Leeds
Policy Number:   SA 002061 01
Effective Date:    February 18, 2017

Endorsement Number
14

## AIRCRAFT RELOCATION EXPENSE REIMBURSEMENT ENDORSEMENT

In consideration of an additional premium of $Included, this endorsement modifies the policy to which it is attached as follows:

In the event a hurricane watch or warning is issued by the National Weather Service for where the **aircraft** is normally based, the Company will reimburse the **Named Insured** for a portion of the eligible expenses required to relocate the **aircraft** as follows:

    a.   This coverage shall apply only to those **aircraft** in the policy Declarations as having **Physical Damage** Coverage F, G or H.

    b.   The **Named Insured** must relocate the **aircraft** to another airport which is at least 100 nautical miles away and in an area that is not under a hurricane watch or warning.

    c.   The amount of reimbursement shall not exceed $500 per **aircraft** or 50% of the amount that the **Named Insured** incurred to relocate the **aircraft**, whichever is less.

    d.   Eligible expenses include fuel, oil, hangar rental or tie-down fees at the temporary airport, and costs associated with hiring a pilot.  Receipts for these expenses must be submitted to the Company for reimbursement.

All other provisions of this policy remain the same.

**AGCS-AV 4380 (07-06)**                                                    **Page 1 of 1**



**Named Insured:** **William Leeds**
**Policy Number:** **SA 002061 01**
**Effective Date:** **February 18, 2017**

**Endorsement Number**
**15**

## DAMAGE TO PREMISES ENDORSEMENT

In consideration of an additional premium of $Included, this endorsement modifies the policy to which it is attached as follows:

Regardless of anything to the contrary in Exclusion **12)** of this policy, the Company will pay on behalf of the **Insured** all sums which the **Insured** becomes legally obligated to pay as damages because of **property damage** to **premises** rented by or leased to the **Insured** and arising out of any one **occurrence** because of fire. The total limit of the Company's liability for coverage provided by this endorsement shall not exceed the limits stated below:

**$       25,000  Each occurrence**

The above Limit of Liability is included within the policy Limit of Liability applicable to Liability Coverages, and is not in addition thereto.

The insurance provided by this endorsement shall be excess insurance over any valid and collectible property insurance (including any deductible portion thereof), available to the **Insured**.

All other provisions of this policy remain the same.

**AGCS-AC 4500 (07-06)**

**Page 1 of 1**



**Named Insured:**  **William Leeds**
**Policy Number:**  **SA 002061 01**
**Effective Date:**  **February 18, 2017**

**Endorsement Number**
**16**

## PORTABLE EQUIPMENT ENDORSEMENT

In consideration of an additional premium of $Included, this endorsement modifies the policy to which it is attached as follows:

**Physical damage** coverage is extended to insure the following portable and/or additional aircraft equipment that is leased or owned by the **Named Insured:**

| Type of Equipment | Limit of Coverage | |
|---|---|---|
| Portable Avionics, Headsets | $ 1,500 | each **occurrence** |
| Safety Equipment | $ 1,500 | each **occurrence** |

The Company shall not be liable for more than:

(a)  the limit as shown above,

(b)  the actual invoice cost of such property including all costs of transportation and import duty, if any, or

(c)  the actual cash value of such property if it is not new, including all costs of transportation and import duty, if any,

whichever is the least amount.

The coverage provided herein shall be in addition to the **physical damage** limit(s) shown in the Declarations.

All other provisions of this policy remain the same.

**AGCS-AV 4680 (07-06)**

**Page 1 of 1**

**Allianz ⑪**

**Named Insured:  William Leeds**
**Policy Number:  SA 002061 01**
**Effective Date:     February 18, 2017**

**Endorsement Number**
**17**

## DATE CHANGE RECOGNITION EXCLUSION ENDORSEMENT
## LIMITED WRITE-BACK PROVISION

In consideration of an additional premium of $Included, this endorsement modifies the policy to which it is attached as follows:

The Date Change Recognition Exclusion – Exclusion **10)** shall not apply to any sums which the **Insured** shall become legally liable to pay as damages because of **bodily injury** or physical injury to or destruction of tangible property resulting from a covered **occurrence.**

All other provisions of this policy remain the same.

**AGCS-AC 4980 (07-06)**                                                                                    **Page 1 of 1**



Named Insured:  **William Leeds**
Policy Number:  **SA 002061 01**
Effective Date:  **February 18, 2017**

**Endorsement Number
18**

## KANSAS CANCELLATION / NONRENEWAL ENDORSEMENT

This endorsement modifies the policy to which it is attached as follows:

Wherever used in this endorsement: 1) "we", "us", "our", and "Insurer" mean the insurance company which issued this policy and/or the Company; and 2) "you", "your", "Named Insured", "First Named Insured", and "Insured" mean the Named Corporation, Named Organization, Named Sponsor, Named Insured, or Insured stated in the Declarations page; and 3) "Other Insured(s)" means all other persons or entities afforded coverage under the policy.

The following provisions are added and supersede any provisions of to the contrary unless provision provides greater coverage or allowances:

<u>CANCELLATION</u>

1.  We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, stating the reasons for cancellation, at least:

    a)  10 days before the effective date of cancellation if we cancel for nonpayment of premium.

    b)  30 days before the effective date of cancellation if we cancel for any other reason.

2.  If this policy has been in effect for 90 days or more, or if it is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

    a)  Nonpayment of premium;

    b)  This policy was issued because of material misrepresentation;

    c)  You or any other insured violated any of the material terms and conditions of this policy;

    d)  Unfavorable underwriting factors, specific to you, exist that were not present at the inception of this policy;

    e)  A determination by the insurance commissioner that continuation of coverage could place us in a hazardous financial condition or in violation of the laws of Kansas; or

    f)  A determination by the insurance commissioner that we no longer have adequate reinsurance to meet our needs.

<u>NONRENEWAL</u>

1.  If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the reasons for nonrenewal, to the first Named Insured at least 60 days prior to the expiration of the policy.

2.  Any notice of nonrenewal will be mailed or delivered to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

All other provisions of this policy remain the same.

**AGCS-AV KS01 (12-07)**

**Page 1 of 1**

**Allianz** ⑪

| | |
|---|---|
| **Named Insured:** William Leeds | |
| **Policy Number:** SA 002061 01 | **Endorsement Number** |
| **Effective Date:** February 18, 2017 | **19** |

## KANSAS AMENDATORY ENDORSEMENT

This endorsement modifies the policy to which it is attached as follows:

1. The policy provision referring to "Legal Action" or "Action Against the Company" is amended to extend the period of time for the **Named Insured** to commence suit as permitted by law.

2. The Appraisal of Loss provision is deleted and replaced by the following:

   APPRAISAL OF LOSS

   After a dispute has arisen, an appraisal or arbitration may take place if the **Named Insured** and the Company fail to agree on the amount of the **loss**. However, an appraisal or arbitration will take place only if both the **Named Insured** and the Company agree, voluntarily, to have the **loss** appraised or arbitrated. This clause shall not deprive or waive any rights of the Company.

All other provisions of this policy remain the same.

**AGCS-AV KS02 (02-08)**                                                                 **Page 1 of 1**

**Allianz Global Risks US Insurance Company**
**Privacy and Security Statement**

Protecting you and your family from loss is important to Allianz Global Risks US. Just as important to us is protecting your privacy and the personal information we use to provide you with superior products and service.

At Allianz Global Risks US, and its subsidiaries, our policy is to maintain appropriate confidentiality with regard to all personal information obtained in the course of doing business with you. Our pledge to protect your privacy is reflected in this Privacy Statement which outlines our principles in collecting, using and safeguarding your personal information and information about your relationship with us.

### *Personal Information Allianz Global Risks US Collects*
Allianz Global Risks US only collects personal information about you when it is necessary to conduct the business of insurance. We limit the collection of personal information to what we reasonably believe is needed to administer your account. As a result, we collect personal information from the following sources:

- Personal information you share with us either directly or through your agent, such as the information on your insurance application, requested policy change information or other forms you may complete.
- Personal information you provide or which is obtained through the process of handling a claim, including medical information, such as from an accident report.
- Personal information about you from your transactions with us, our affiliates or others such as the number of years you have been a policyholder with Allianz Global Risks US or the types of coverage you purchase.
- Personal information about you from a consumer reporting agency, such as a credit report or a Motor Vehicle Report.

If you visit or use the Allianz Global Risks US website, or one of our subsidiaries, we may use "cookies" (small text files transferred from our website to your hard drive) to recognize repeat users, track usage and facilitate your access to and use of the site. We do not use "cookies" to gather personal information, and we do not link cookies to identifiable information, such as your policy number. The "cookies" only enable you to use our website more easily.

### *Personal Information Allianz Global Risks US Discloses*
Allianz Global Risks US does not disclose any personal information about current or former customers to anyone, except as permitted by law.

When possible, we advise our vendors and other nonaffiliated third parties, to whom we legally provide your personal information in the course of conducting our insurance business, of our privacy policy. We make every effort to use vendors whose approach to customer privacy reflects our own.

### *Allianz Global Risks US's Policies and Practices with Respect to Security of Personal Information*
Allianz Global Risks US uses a variety of computer hardware and software tools to maintain physical, electronic and procedural safeguards that comply with applicable federal and state regulations to guard your personal information. We restrict access to personal information about you to only those employees who need that information to provide products or services to you.

Allianz Global Risks US, and its subsidiaries, also works hard to ensure that our websites are secure. We employ firewalls, encryption technology, user authentication systems and access control mechanisms to control access to the personal information that may be shared over these sites.

### *Notification of Change*
At Allianz Global Risks US, your trust is one of our most important assets. We will continually work to protect the privacy of our individual customers and will continually review our privacy policy. If at some point in the future we revise our privacy practices that affect your personal information, we will notify you prior to introducing any changes. This Privacy Statement is also displayed on our website. (www.agcs.allianz.com)

**For More Information or if You have Questions**

Should you have further questions regarding our privacy policy, you can contact us in a number of ways.  You may email us at AGCSNAPrivacyNotice@agcs.com or you can write to us at:

Allianz Global Risks US
Corporate Compliance Department
1465 North McDowell Blvd Petaluma, CA 94954-6516

**Allianz Global Risks US's Family of Companies**

The following lists the issuing companies Allianz Global Risks US uses to issue insurance policies nationwide:

AGCS Marine Insurance Company
Allianz Global Risks US Insurance Company
Allianz Underwriters Insurance Company
American Automobile Insurance Company
Associated Indemnity Corporation
Chicago Insurance Company
Fireman's Fund Insurance Company
Fireman's Fund Insurance Company of Ohio
Fireman's Fund Indemnity Corporation
Fireman's Fund Insurance Company of Hawaii
Interstate Fire & Casualty Company
National Surety Corporation
The American Insurance Company

Allianz (ⅲ)

**Named Insured:** William Leeds
**Policy Number:** SA 002061 01
**Effective Date:** July 26, 2017

**Endorsement Number**
**20**

## CANCELLATION ENDORSEMENT

In consideration of a return premium of $823.28, this endorsement modifies the policy to which it is attached as follows:

Date of Cancellation:  July 26, 2017

Effective on the above date, this policy is cancelled.

All other provisions of this policy remain the same.

**Plaintiff's
Exhibit
B**

**AGCS-AV 8950 (07-06)**                                                  Page 1 of 1

ELECTRONICALLY FILED
2022 Jul 08 PM 3:39
CLERK OF THE SHAWNEE COUNTY DISTRICT COURT
CASE NUMBER:  2018-CV-000048



**Court:**          Shawnee County District Court

**Case Number:**    2018-CV-000048

**Case Title:**     Luanne Leeds - Executrix of the Estate, et al. vs.
                    Sheila Upp-Bergman - Personal Representative et al

**Type:**           Findings of Fact, Conclusions of Law and Journal
                    Entry of Judgment

SO ORDERED.

/s/ Honorable Mary E Christopher, District Judge

Electronically signed on 2022-07-08 15:39:01     page 1 of 11

**Plaintiff's
Exhibit
C**

IN THE DISTRICT COURT OF SHAWNEE COUNTY, KANSAS
DIVISION NO. 8

|  |  |  |
|---|---|---|
| LUANNE LEEDS as Executrix | ) |  |
| of the Estate of WILLIAM | ) |  |
| LEEDS, deceased; | ) |  |
|  | ) |  |
| and | ) |  |
|  | ) |  |
| LUANNE LEEDS, individually, | ) |  |
| and for and on behalf of all other | ) | Case No. 2018 CV 000048 |
| surviving heirs-at-law of | ) |  |
| WILLIAM LEEDS, deceased. | ) |  |
|  | ) |  |
| Plaintiffs, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
|  | ) |  |
| SHEILA UPP-BERGMAN, | ) |  |
| Personal Representative for the Estate of | ) |  |
| JAMES KEVIN BERGMAN, Deceased; | ) |  |
|  | ) |  |
| and | ) |  |
|  | ) |  |
| AMY THORNTON and | ) |  |
| MARIA GUGLIELMINO-ISKENDEROGLU, | ) |  |
| Co-Executors of the Estate of | ) |  |
| JAMES GUGLIELMINO, Deceased. | ) |  |
|  | ) |  |
| Defendants. | ) |  |

Pursuant to K.S.A. Chapter 60

**<u>FINDINGS OF FACT, CONCLUSIONS OF LAW</u>**
**<u>AND JOURNAL ENTRY OF JUDGMENT</u>**

The above-captioned cause of action is before the Court for trial to the Court on this 15th day of June 2022. Plaintiff, Luanne Leeds, as Executrix of the Estate of William Leeds, deceased, and Luanne Leeds, individually, and for and on behalf of all other surviving heirs-at-law of William Leeds, deceased, appears in person and by and through counsel Ronald P. Pope and Thomas B. Diehl of Ralston, Pope & Diehl, LLC and Joseph

LoRusso and Caitlin LoRusso of LoRusso & LoRusso, Ltd. Defendant Estate of James Kevin Bergman, deceased, appears by and through Sierra Faler of Husch Blackwell, LLP. Defendant Estate of James Guglielmino, appears by and through Matthew Donnelly of Petefish, Immel, Hird, Johnson, Liebold & Sloan, LLP. There are no other appearances.

The Court, having heard and reviewed the testimony and trial exhibit evidence presented by plaintiffs during the trial from June 15 through June 16, 2022, makes the following findings of fact and reaches the following conclusions of law:

1. The Court finds and adopts the following Trial Stipulations agreed to by plaintiffs and defendants, to-wit:

    a. This Court has jurisdiction over the subject matter of this cause of action.

    b. This Court has personal jurisdiction over the parties to this cause of action.

    c. Venue is proper in the District Court of Shawnee County, Kansas.

    d. Kansas substantive law applies to the issues of negligence, causation, and damages.

    e. The parties waived their right to trial by jury and stipulate to a bench trial in this matter.

    f. The Kansas Survivor Action statutes, K.S.A. § 60-1801, *et seq.*, apply to this cause of action.

    g. The Kansas wrongful death statutes, K.S.A. § 60-1901, *et seq.*, apply to this cause of action.

    h. Luanne Leeds, as Executrix of the Estate of William Leeds, deceased, is the proper party to pursue damages on the Survivor Claim asserted in this action pursuant to K.S.A. § 60-1801, *et seq.*

i.  Luanne Leeds, individually, and for and on behalf of all other surviving heirs-at-law of William Leeds, deceased, is the proper plaintiff to pursue wrongful death damages as a result of the death of William Leeds, deceased, pursuant to K.S.A. § 60-1902.

j.  Those entitled to pursue and recover wrongful death damages as a result of the death of William Leeds, deceased, pursuant to K.S.A. § 60-1902 are: Luanne Leeds, surviving spouse; Casey Anne Leeds, surviving daughter; Samantha Leeds, surviving daughter; and Alexander Leeds, surviving son.

k.  The Kansas cap on non-economic damages, K.S.A. § 60-19a02, was held to be unconstitutional by the Kansas Supreme Court in *Hilburn v. Enerpipe, Ltd.*, 309 Kan. 1127, 442 P.3d 509 (2019).

l.  On July 31, 2017, at around 2030 CDT, a private airplane (twin-engine Piper Aircraft PA-30, Registration N22HW/serial number 30-791), owned by James Guglielmino but piloted by James Kevin Bergman, took off from Runway 18 at Philip Billard Municipal Airport (KTOP).

m.  William Leeds was a passenger in this Piper Aircraft for the purpose of receiving flight instruction from James Kevin Bergman to assist him in preparing for a private pilot multi-engine add-on examination check ride.

n.  James Kevin Bergman was a Certified Flight Instructor for multi-engine land-based aircraft and taught flight lessons throughout the State of Kansas.

o.  During the July 31, 2017, flight, James Kevin Bergman was Pilot in Command of the Piper Aircraft.

p.  William Leeds did not hold a multi-engine land rating as part of his private pilot certificate; accordingly, as a matter of law, he could not be Pilot in Command of the Piper Aircraft.

q.  Shortly after takeoff on July 31, 2017, the Piper Aircraft crashed on the premises of KTOP in Topeka, Shawnee County, Kansas.

r.  The Pilot in Command, James Kevin Bergman, was killed in the crash.

s.  Dr. William Leeds, passenger and student pilot, was killed in the crash.

t.  Sheila Upp-Bergman was appointed Personal Representative of the Estate of James Kevin Bergman, Deceased, in Case No. 17P9-PR01405 in the Circuit Court of Jackson County, Missouri.

u.  The Estate of James Kevin Bergman, Deceased, is the proper defendant in this cause of action.

v.  James Guglielmino passed away for reasons unrelated to this cause of action on April 9, 2021.

w.  Amy Thornton and Maria Guglielmino-Iskenderoglu were appointed as Co-Executors of the Estate of James Guglielmino, Deceased, in Case No. 2021-PR-236 in Wyandotte County, Kansas.

x.  The Estate of James Guglielmino, Deceased, is the proper defendant in this cause of action.

y.  The funeral expenses records for William Leeds, deceased, totaled $25,626.25.

z.  Dr. William Leeds was sixty-one (61) years of age at the time of his death on July 31, 2017, and his life expectancy at the date of his death was 21.02 years.

aa. Luanne Leeds was sixty-one (61) years of age at the time of William Leeds' death on July 31, 2017, and her life expectancy at the date of his death was 23.96 years.

bb. Casey Anne Leeds was thirty (30) years of age at the time of William Leeds' death on July 31, 2017, and her life expectancy at the date of his death was 52.26 years

cc. Samantha Leeds was twenty-seven (27) years of age at the time of William Leeds' death on July 31, 2017, and her life expectancy at the date of his death was 55.14 years.

dd. Alexander Leeds was twenty-five (25) years of age at the time of William Leeds' death on July 31, 2017, and his life expectancy at the date of his death was 52.43 years.

2. The Court further adopts and incorporates by reference as though fully set forth herein the "Additional Findings of Fact/Conclusions or Law" set forth in the Judge's Minutes filed in this matter on or about June 16, 2022.

3. The Court finds the Covenant Not to Execute and Assignment of Claims is fair, just, equitable, reasonable, and in the best interests of plaintiffs and defendants.

4. The Court finds upon testimony and exhibits offered as evidence during the trial of June 15-16, 2022, that James Kevin Bergman was negligent as the pilot in command and/or negligent as a certified flight instructor, and he was ultimately,

and legally, responsible for the safe operation of the aircraft and the overall safety of his student. Such negligence was a direct and proximate cause of the July 31, 2017, private airplane crash and the death of Dr. William Leeds.

5. The Court finds upon testimony and exhibits offered as evidence during the trial of June 15-16, 2022, that, as a certified flight instructor, Mr. Bergman negligently conducted simulated single engine operations beyond the scope of acceptability as detailed in the Aircraft's Pilot Operating Handbook (POH) and the Federal Aviation Administration's training criteria and evaluation standards, the Airman Certification Standards (ACS). Such negligence was a direct and proximate cause of the July 31, 2017, private airplane crash and the death of Dr. William Leeds.

6. The Court finds upon testimony and exhibits offered as evidence during the trial of June 15-16, 2022, that, among other negligent failures, Mr. Bergman performed a simulated single engine failure maneuver below the altitude recommended by the POH and the ACS, and he continued the maneuver beyond the point of a safe learning environment. Such negligence was a direct and proximate cause of the July 31, 2017, private airplane crash and the death of Dr. William Leeds.

7. The Court finds upon testimony and exhibits offered as evidence during the trial of June 15-16, 2022, that, as the pilot in command, Mr. Bergman performed a simulated single engine failure maneuver below the height recommended by the POH. Rather than rectifying the situation, and re-establishing safe operational control, he inappropriately and negligently transitioned to a single engine traffic pattern maneuver, which he again performed contrary to the POH. Such negligence

was a direct and proximate cause of the July 31, 2017, private airplane crash and the death of Dr. William Leeds.

8. The Court finds upon testimony and exhibits offered as evidence during the trial of June 15-16, 2022, that, rather than rectifying the situation and re-establishing safe operational control, Mr. Bergman inappropriately and negligently transitioned to a single engine landing, which, again, he performed contrary to the POH. Such negligence was a direct and proximate cause of the July 31, 2017, private airplane crash and the death of Dr. William Leeds.

9. The Court further finds that upon testimony and exhibits offered as evidence during the trial of June 15-16, 2022, that James Kevin Bergman and James Guglielmino were engaged in a joint venture regarding the subject aircraft that crashed on July 31, 2017. In support thereof, the Court heard testimony and reviewed exhibits which met the four elements of a joint venture as detailed in *Cullip v. Domann*, 266 Kan. 550, 972 P.2d 776 (Kan. 1999) and *Gragg v. Wichita State University*, 261 Kan. 1037, 934 P.2d 121 (Kan. 1997). Consequently, and pursuant to Kansas law's recognition and treatment of joint venture, the Court finds Mr. Bergman and Mr. Guglielmino jointly and severally liable for the plaintiffs' damages. *See* (*Cullip ex rel. Pitts v. Domann*, 266 Kan. 550, 556, 972 P.2d 776, 782 (1999) (citing *Stricklin v. Parsons Stockyard Co.*, 192 Kan. 360 (1964)).

10. The Court finds upon testimony and exhibits presented as evidence during the trial of June 15-16, 2022, that Dr. Leeds suffered mental anguish and harm from the point in time where he would have been aware that he was heading to a likely fatal aircraft crash until the time of his untimely passing due to the negligence and fault

of James Kevin Bergman, and, under Kansas law's recognition and treatment of joint venture, detailed herein, both James Kevin Bergman and James Guglielmino are liable for the plaintiffs' survival claim damages due to the July 31, 2017, private aircraft crash.

11. The Court finds, based upon the testimony and exhibits presented as evidence during the trial of June 15-16, 2022, that the losses, harms, and damages sustained by Luanne Leeds, as Executrix of the Estate of William Leeds, deceased, and Luanne Leeds, individually, and for and on behalf of all other surviving heirs-at-law of William Leeds, deceased, pursuant to the Kansas wrongful death and survivor statutes and Kansas law are as follows:

    a. Funeral Expenses:                 $    25,626.25

    b. Household Services (P/F):      $  307,880.15

    c. WD Noneconomic (P/F):       $  500,000.00

    d. Survival Noneconomic:         $  500,000.00

    e. Wentling Damages:

        i. Luanne Leeds:           $  217,405.66

        ii. Casey Leeds:            $    43,481.73

        iii. Samantha Leeds:       $    43,481.73

        iv. Alexander Leeds:       $    43,481.73

    f. Economic Losses:

        i. Loss of P&S Assoc:      $  684,908.00

        ii. Loss of Income/Support:   $ 2,748,900.00

    g. **TOTAL DAMAGES:**          **$5,115,165.25**

WHEREFORE, the Court finds that plaintiffs Luanne Leeds, as Executrix of the Estate of William Leeds, deceased, and Luanne Leeds, individually, and for and on behalf of all other surviving heirs-at-law of William Leeds, deceased, are entitled to judgment against Defendants Estate of James Kevin Bergman, deceased, and the Estate of James Guglielmino, deceased,  in the amount of **$5,115,165.25.** Post-judgment interest will accrue at the statutory rate from the date that this Judgment is entered in the District Court of Shawnee County, Kansas.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that judgment is hereby entered in favor in favor of plaintiffs Luanne Leeds, as Executrix of the Estate of William Leeds, deceased, and Luanne Leeds, individually, and for and on behalf of all other surviving heirs-at-law of William Leeds, deceased, and against Defendants Estate of James Kevin Bergman, deceased, and the Estate of James Guglielmino, deceased, in the amount of **$5,115,165.25.**

DATED THIS DAY OF JULY 2022.


Honorable Mary Christopher

Submitted and approved by:


/s/ *Ronald P. Pope*
Ronald P. Pope, #11913
Thomas B. Diehl, #23166
Joseph LoRusso, *pro ha vice, CO #48395*
Caitlin LoRusso, *pro hac vice, WY #7-5592*
RALSTON, POPE & DIEHL, L.L.C.
2913 S.W. Maupin Lane
Topeka, KS  66614
Phone:  (785) 273-8002
Fax:  (785) 273-0744
ron@ralstonpope.com
tom@ralstonpope.com
joelorusso@ralstonpope.com
caitlin@ralstonpope.com
*ATTORNEYS FOR PLAINTIFFS*

/s/ *Sierra Faler*
Sierra Faler, #27991
Scott L. Davis (pro hac vice)
HUSCH BLACKWELL, LLP
4801 Main St., Suite 1000
Kansas City, MO 64112
Phone: (816) 983-8000
Fax: (816) 983-8080
sierra.faler@huschblackwell.com
scott.davis@huschblackwell.com
ATTORNEYS FOR DEFENDANT
SHEILA UPP-BERGMAN,
PR FOR THE ESTATE OF JAMES
KEVIN BERGMAN, DECEASED

/s/ *Matthew Donnelly*
Matthew Donnelly, #23354
PETEFISH, IMMEL, HIRD, JOHNSON
LEIBOLD & SLOAN, L.L.P.
842 Louisiana Street
Lawrence, KS 66644
Phone: (785) 843-0450
Fax: (785) 843-0407
mdonnelly@petefishlaw.com
ATTORNEY FOR DEFENDANT
JAMES GUGLIELMINO

ELECTRONICALLY FILED
2022 Jul 26 PM 3:46
CLERK OF THE SHAWNEE COUNTY DISTRICT COURT
CASE NUMBER:  2022-CV-000447

Luanne Leeds

vs.

Allianz Risk Consulting LLC, et al. et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

**Allianz Risk Consulting LLC**

**RA/C T Corporation System 208 S LaSalle St., Suite 814**

**Chicago, IL  60604**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

Ronald Paul Pope

2913 SW Maupin Lane

Topeka, KS 66614

within 30 days after service of summons on you.

_____
Deputy Clerk for

Clerk of the District Court

Electronically signed  on 07/26/2022 04:42:56 PM

**Documents to be served with the Summons:**

Petition - Allianz Risk Consulting LLC

ELECTRONICALLY FILED
2022 Jul 26 PM 3:46
CLERK OF THE SHAWNEE COUNTY DISTRICT COURT
CASE NUMBER:  2022-CV-000447

Luanne Leeds

vs.

Allianz Risk Consulting LLC, et al. et. al.

**SUMMONS**

To the above-named Defendant/Respondent:

**AssuredPartners Aerospace LLC**

**RA/Corporation Service Company 2900 SW Wanamaker Drive, Suite 204**

**Topeka, KS  66614**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

Ronald Paul Pope

2913 SW Maupin Lane

Topeka, KS 66614

within 21 days after service of summons on you.

_____
Deputy Clerk for

Clerk of the District Court

Electronically signed  on 07/26/2022 04:42:56 PM

**Documents to be served with the Summons:**

Petition - Allianz Risk Consulting LLC

ELECTRONICALLY FILED
2022 Aug 18 PM 3:13
CLERK OF THE SHAWNEE COUNTY DISTRICT COURT
CASE NUMBER: 2022-CV-000447

Case #  2022-CV-000447

Service Type: Certified Mail          Shawnee   County

Service On: AssuredPartners Aerospace, LLC

Luanne Leeds

vs

RA / Corporation Company

2900 SW Wanamaker Drive, #204

Allianz Risk Consulting, LLC, et al.

Topeka, KS 66614

RETURN ON SERVICE OF  Summons and Petition

I hereby certify that I have served this  Summons and Petition                :

(1) **Personal Service**. By delivering a copy of such document to the above named party on the date indicated: _____.
                                                                                                    (Date)

(2) **Residence Service**. By leaving a copy of such document at the usual place of residence of the above named party with a person of suitable age and discretion residing therein on the date indicated: _____   _____.
                                                                                    (Name)                        (Date)

(3) **Agent Service.** By delivering a copy of such document to the following agent authorized by appointment or by law to receive service of process on the date indicated: _____   _____.
                                                                  (Agent Name)                  (Date)

(4) **Residence Service and Mailing.** By leaving a copy of such document at the usual place of residence of the above named party and mailing by first-class mail on the date indicated: _____.
                                                                                    (Date)

(5) **Service by Return Receipt Delivery.** By causing to be delivered on 08/15/2022 , a copy of such document by return receipt delivery to the above named party at the above address with such delivery made by the following person or entity:
Lauren Musick _____ attached hereto is a copy of the return receipt evidencing such delivery.
        (Name)

(6) **Return Receipt Refused.** By mailing a copy of such document by first-class mail, postage prepaid, addressed to the above named party at the above address on the date indicated: _____.
                                                                                    (Date)

(7) **Facsimile**: By faxing a copy of such document to the above named party on the date indicated:
_____ at ____ ____ ___        (____) ____-_____        (____) _____-_____
    (Date)              (Time)          (Number of transmitting machine)    (Number of receiving machine)

(8) **Avoidance of Service**. After diligent effort, I am satisfied that the above named party is secreting themselves in order to avoid the process of the Court

(9) **No Service.** The following above named party was not served.

Pursuant to K.S.A. 53-601, as amended, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on:  06/03/2019 .

Signature & Title of Officer or Process Server

Attorney Name:        Ronald P. Pope
Attorney Address:     RALSTON, POPE & DiEHL, LLC
                      2913 SW Maupin Lane
                      Topeka, Kansas 66614

Attorney File Number:   11913

**RETURN TO:**
**Clerk of the District Court**
**Shawnee County Courthouse**
**200 S.E. 7th St. Room 209**
**Topeka, Kansas 66603**
**Ph: (785) 251-4327**
**Fx: (785) 251-4911 or (785) 251-4908**

1



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Assured Partners Aerospace, LLC
R/A: Corporation Company
2900 Sw Wanamaker Drive, Suite 204
Topeka, KS 66614

9590 9402 6539 1028 0240 82

2. Article Number *(Transfer from service label)*

7017 2680 0000 4519 7423

PS Form **3811**, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by *(Printed Name)*   C. Date of Delivery
Lauren Wyson   8/15/22

D. Is delivery address different from Item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ ...cted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt



**USPS TRACKING #**

9590 9402 6539 1028 0240 82

**United States Postal Service**

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•

LAW OFFICE OF:
RALSTON, POPE & DIEHL, L.L.C.
2913 S.W. Maupin Lane
Topeka, Kansas 66614-4139

RECEIVED
AUG 18 2022
BY

Leeds v. Allianz - Petition & Summons
4-418593  to Assured Partners Airspace
LLC

ELECTRONICALLY FILED
2022 Aug 22 PM 3:07
CLERK OF THE SHAWNEE COUNTY DISTRICT COURT
CASE NUMBER: 2022-CV-000447

JOHN G. SCHULTZ   KS #22871
DANIELLE M. UZELAC  KS #26533
8900 Ward Parkway
Kansas City, MO 64114
(816) 421-7100 Phone
(816) 421-7915 Fax
*jschultz@fsmlawfirm.com*
*duzelac@fsmlawfirm.com*
**ATTORNEY FOR DEFENDANT**
**ALLIANZ GLOBAL RISKS U.S.**
**INSURANCE COMPANY**

IN THE DISTRICT COURT OF SHAWNEE COUNTY, KANSAS
DIVISION NO. 8

| | | |
|---|---|---|
| LUANNE LEEDS as Executrix of the<br>Estate of WILLIAM LEEDS, deceased, | ) | |
| | ) | |
| | ) | Case No.:  2022-CV-000447 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALLIANZ RISKS CONSULTING, L.L.C. d/b/a | ) | |
| ALLIANZ GLOBAL RISKS US INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ASSUREDPARTNERS AEROSPACE L.L.C | ) | |
| d/b/a AIRSURE LIMITED, L.L.C., | ) | |
| | ) | |
| Defendants. | ) | |

**REQUEST FOR CLERK'S 14 DAY EXTENSION**

Defendant Allianz Global Risks US Insurance Company, incorrectly listed as Allianz Risk

Consulting, L.L.C. d/b/a Allianz Global Risks US Insurance Company, by and through

undersigned counsel, and pursuant to Supreme Court Rule 113, respectfully requests a 14-day

extension in which to file their responsive pleading up to and including September 5, 2022.

1

Respectfully submitted,

**FRANKE SCHULTZ & MULLEN, P.C.**

*/s/ John G. Schultz*
JOHN G. SCHULTZ        KS # 22871
DANIELLE M. UZELAC   KS # 26533
8900 Ward Parkway
Kansas City, MO  64114
(816) 421-7100 Phone
(816) 421-7915 Fax
jschultz@fsmlawfirm.com
duzelac@fsmlawfirm.com
**ATTORNEY FOR DEFENDANT**
**ALLIANZ GLOBAL RISKS**
**US INSURANCE COMPANY**

**CERTIFICATE OF SERVICE**
The undersigned hereby certifies that the foregoing
document was filed via the court's electronic filing
system, and a copy was also sent via email transmission
this 22nd day of August, 2022, to:

Ronald P. Pope
Thomas B. Diehl
RALSTON, POPE & DIEHL, L.L.C.
2913 SW Maupin Lane
Topeka, KS 66614
Phone: (785) 273-8002
Fax: (785) 273-0744
Email: ron@ralstonpope.com
tom@ralstonpope.com
**Attorneys for Plaintiff**

*/s/ John G. Schultz*
**Attorney for Defendant**
**Allianz Global Risks US Insurance Company**

ELECTRONICALLY FILED
2022 Aug 22 AM 10:54
CLERK OF THE SHAWNEE COUNTY DISTRICT COURT
CASE NUMBER: 2022-CV-000447

Luanne Leeds

vs.

Allianz Risk Consulting LLC, et al. et. al.

**ALIAS SUMMONS**


To the above-named Defendant/Respondent:

> **Allianz Risk Consulting LLC**
>
> **Kansas Insurance Department/Commissioner**
>
> **1300 SW Arrowhead Rd.**
>
> **Topeka, KS  66604**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

> Ronald Paul Pope
>
> 2913 SW Maupin Lane
>
> Topeka, KS 66614

within 21 days after service of summons on you.


_____
Deputy Clerk for

Clerk of the District Court
Electronically signed  on 08/23/2022 10:58:15 AM

**Documents to be served with the Summons:**

Petition - Allianz Risk Consulting LLC

ELECTRONICALLY FILED
2022 Aug 22 PM 2:35
CLERK OF THE SHAWNEE COUNTY DISTRICT COURT
CASE NUMBER:  2022-CV-000447

Luanne Leeds

vs.

Allianz Risk Consulting LLC, et al. et. al.

**ALIAS SUMMONS**

To the above-named Defendant/Respondent:

> **Allianz Risk Consulting LLC**
>
> **Kansas Insurance Department/Commissioner**
>
> **1300 SW Arrowhead Rd.**
>
> **Topeka, KS  66604**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

> Ronald Paul Pope
>
> 2913 SW Maupin Lane
>
> Topeka, KS 66614

within 40 days after service of summons on you.

_Robat McKee_
Deputy Clerk for

Clerk of the District Court
Electronically signed  on 08/23/2022 11:29:13 AM

**Documents to be served with the Summons:**

Petition - Allianz Risk Consulting LLC

ELECTRONICALLY FILED
2022 Aug 22 AM 9:41
CLERK OF THE SHAWNEE COUNTY DISTRICT COURT
CASE NUMBER:  2022-CV-000447

IN THE DISTRICT COURT OF SHAWNEE COUNTY, KANSAS
DIVISION NO. 8

| | | |
|---|---|---|
| LUANNE LEEDS as Executrix of the<br>Estate of WILLIAM LEEDS, deceased, | ) | |
| | ) | |
| | ) | Case No.:  2022-CV-000447 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALLIANZ RISKS CONSULTING, L.L.C. d/b/a | ) | |
| ALLIANZ GLOBAL RISKS US INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ASSUREDPARTNERS AEROSPACE L.L.C | ) | |
| d/b/a AIRSURE LIMITED, L.L.C., | ) | |
| | ) | |
| Defendants. | ) | |

## ENTRY OF APPEARANCE

John G. Schultz of the law firm of Franke Schultz & Mullen, P.C. hereby enters his appearance on behalf of Allianz Risk Consulting, L.L.C. d/b/a Allianz Global Risks US Insurance Company.

Respectfully submitted,

FRANKE SCHULTZ & MULLEN, P.C.

*/s/ John G. Schultz*
JOHN G. SCHULTZ                    #22871
8900 Ward Parkway
Kansas City, MO  64114
(816) 421-7100 Phone
(816) 421-7915 Fax
jschultz@fsmlawfirm.com
**Attorney for Defendant**
**Allianz Global Risks US Insurance Company**

1

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that the foregoing document was filed via the court's electronic filing system, and a copy was also sent via email transmission this 22nd day of August, 2022, to:

Ronald P. Pope
Thomas B. Diehl
RALSTON, POPE & DIEHL, L.L.C.
2913 SW Maupin Lane
Topeka, KS 66614
Phone: (785) 273-8008
Fax: (785) 273-0744
Email: ron@ralstonpope.com
tom@ralstonpope.com
**Attorneys for Plaintiff**

*/s/ John G. Schultz*
**Attorney for Defendant**
**Allianz Global Risks US Insurance Company**

2

ELECTRONICALLY FILED
2022 Aug 22 AM 9:41
CLERK OF THE SHAWNEE COUNTY DISTRICT COURT
CASE NUMBER:  2022-CV-000447

IN THE DISTRICT COURT OF SHAWNEE COUNTY, KANSAS
DIVISION NO. 8

| | | |
|---|---|---|
| LUANNE LEEDS as Executrix of the<br>Estate of WILLIAM LEEDS, deceased,<br><br>        Plaintiff,<br><br>v.<br><br>ALLIANZ RISKS CONSULTING, L.L.C. d/b/a<br>ALLIANZ GLOBAL RISKS US INSURANCE<br>COMPANY,<br><br>and<br><br>ASSUREDPARTNERS AEROSPACE L.L.C<br>d/b/a AIRSURE LIMITED, L.L.C.,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.:  2022-CV-000447 |

## ENTRY OF APPEARANCE

John G. Schultz of the law firm of Franke Schultz & Mullen, P.C. hereby enters his appearance on behalf of Allianz Risk Consulting, L.L.C. d/b/a Allianz Global Risks US Insurance Company.

Respectfully submitted,

FRANKE SCHULTZ & MULLEN, P.C.

*/s/ John G. Schultz*
JOHN G. SCHULTZ                    #22871
8900 Ward Parkway
Kansas City, MO  64114
(816) 421-7100 Phone
(816) 421-7915 Fax
jschultz@fsmlawfirm.com
**Attorney for Defendant**
**Allianz Global Risks US Insurance Company**

1

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that the foregoing document was filed via the court's electronic filing system, and a copy was also sent via email transmission this 22nd day of August, 2022, to:

Ronald P. Pope
Thomas B. Diehl
RALSTON, POPE & DIEHL, L.L.C.
2913 SW Maupin Lane
Topeka, KS 66614
Phone: (785) 273-8008
Fax: (785) 273-0744
Email: ron@ralstonpope.com
tom@ralstonpope.com
**Attorneys for Plaintiff**

*/s/ John G. Schultz*
**Attorney for Defendant**
**Allianz Global Risks US Insurance Company**

2

ELECTRONICALLY FILED
2022 Aug 22 AM 9:41
CLERK OF THE SHAWNEE COUNTY DISTRICT COURT
CASE NUMBER:  2022-CV-000447

IN THE DISTRICT COURT OF SHAWNEE COUNTY, KANSAS
DIVISION NO. 8

| | | |
|---|---|---|
| LUANNE LEEDS as Executrix of the Estate of WILLIAM LEEDS, deceased, | ) ) ) | |
| Plaintiff, | ) ) | Case No.:  2022-CV-000447 |
| v. | ) ) ) | |
| ALLIANZ RISKS CONSULTING, L.L.C. d/b/a ALLIANZ GLOBAL RISKS US INSURANCE COMPANY, | ) ) ) ) | |
| and | ) ) | |
| ASSUREDPARTNERS AEROSPACE L.L.C d/b/a AIRSURE LIMITED, L.L.C., | ) ) ) | |
| Defendants. | ) ) | |

## **ENTRY OF APPEARANCE**

John G. Schultz of the law firm of Franke Schultz & Mullen, P.C. hereby enters his appearance on behalf of Allianz Risk Consulting, L.L.C. d/b/a Allianz Global Risks US Insurance Company.

Respectfully submitted,

FRANKE SCHULTZ & MULLEN, P.C.

*/s/ John G. Schultz*
JOHN G. SCHULTZ                    #22871
8900 Ward Parkway
Kansas City, MO  64114
(816) 421-7100 Phone
(816) 421-7915 Fax
jschultz@fsmlawfirm.com
**Attorney for Defendant**
**Allianz Global Risks US Insurance Company**

1

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that the foregoing document was filed via the court's electronic filing system, and a copy was also sent via email transmission this 22nd day of August, 2022, to:

Ronald P. Pope
Thomas B. Diehl
RALSTON, POPE & DIEHL, L.L.C.
2913 SW Maupin Lane
Topeka, KS 66614
Phone: (785) 273-8008
Fax: (785) 273-0744
Email: ron@ralstonpope.com
tom@ralstonpope.com
**Attorneys for Plaintiff**


*/s/ John G. Schultz*_____
**Attorney for Defendant**
**Allianz Global Risks US Insurance Company**

2

ELECTRONICALLY FILED
2022 Aug 22 AM 9:41
CLERK OF THE SHAWNEE COUNTY DISTRICT COURT
CASE NUMBER: 2022-CV-000447

IN THE DISTRICT COURT OF SHAWNEE COUNTY, KANSAS
DIVISION NO. 8

| | | |
|---|---|---|
| LUANNE LEEDS as Executrix of the<br>Estate of WILLIAM LEEDS, deceased,<br><br>        Plaintiff,<br><br>v.<br><br>ALLIANZ RISKS CONSULTING, L.L.C. d/b/a<br>ALLIANZ GLOBAL RISKS US INSURANCE<br>COMPANY,<br><br>and<br><br>ASSUREDPARTNERS AEROSPACE L.L.C<br>d/b/a AIRSURE LIMITED, L.L.C.,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 2022-CV-000447 |

## **ENTRY OF APPEARANCE**

John G. Schultz of the law firm of Franke Schultz & Mullen, P.C. hereby enters his appearance on behalf of Allianz Risk Consulting, L.L.C. d/b/a Allianz Global Risks US Insurance Company.

Respectfully submitted,

FRANKE SCHULTZ & MULLEN, P.C.

*/s/ John G. Schultz*
JOHN G. SCHULTZ                    #22871
8900 Ward Parkway
Kansas City, MO  64114
(816) 421-7100 Phone
(816) 421-7915 Fax
jschultz@fsmlawfirm.com
**Attorney for Defendant**
**Allianz Global Risks US Insurance Company**

1

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that the foregoing document was filed via the court's electronic filing system, and a copy was also sent via email transmission this 22nd day of August, 2022, to:

Ronald P. Pope
Thomas B. Diehl
RALSTON, POPE & DIEHL, L.L.C.
2913 SW Maupin Lane
Topeka, KS 66614
Phone: (785) 273-8008
Fax: (785) 273-0744
Email: ron@ralstonpope.com
tom@ralstonpope.com
**Attorneys for Plaintiff**

*/s/ John G. Schultz*
**Attorney for Defendant**
**Allianz Global Risks US Insurance Company**

2

ELECTRONICALLY FILED
2022 Aug 22 AM 9:52
CLERK OF THE SHAWNEE COUNTY DISTRICT COURT
CASE NUMBER:  2022-CV-000447

IN THE DISTRICT COURT OF SHAWNEE COUNTY, KANSAS
DIVISION NO. 8

|  |  |  |
|---|---|---|
| LUANNE LEEDS as Executrix of the<br>Estate of WILLIAM LEEDS, deceased,<br><br>Plaintiff,<br><br>v.<br><br>ALLIANZ RISKS CONSULTING, L.L.C. d/b/a<br>ALLIANZ GLOBAL RISKS US INSURANCE<br>COMPANY,<br><br>and<br><br>ASSUREDPARTNERS AEROSPACE L.L.C<br>d/b/a AIRSURE LIMITED, L.L.C.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.:  2022-CV-000447 |

## ENTRY OF APPEARANCE

John G. Schultz of the law firm of Franke Schultz & Mullen, P.C. hereby enters his appearance on behalf of Allianz Global Risks US Insurance Company incorrectly listed as Allianz Risk Consulting, L.L.C. d/b/a Allianz Global Risks US Insurance Company.

Respectfully submitted,

FRANKE SCHULTZ & MULLEN, P.C.

*/s/ John G. Schultz*
JOHN G. SCHULTZ                    #22871
8900 Ward Parkway
Kansas City, MO  64114
(816) 421-7100 Phone
(816) 421-7915 Fax
jschultz@fsmlawfirm.com
**Attorney for Defendant**
**Allianz Global Risks US Insurance Company**

1

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was filed via the court's electronic filing system, and a copy was also sent via email transmission this 22nd day of August, 2022, to:

Ronald P. Pope
Thomas B. Diehl
RALSTON, POPE & DIEHL, L.L.C.
2913 SW Maupin Lane
Topeka, KS 66614
Phone: (785) 273-8008
Fax: (785) 273-0744
Email: ron@ralstonpope.com
tom@ralstonpope.com
**Attorneys for Plaintiff**

*/s/ John G. Schultz*
**Attorney for Defendant**
**Allianz Global Risks US Insurance Company**

2

ELECTRONICALLY FILED
2022 Aug 22 PM 3:08
CLERK OF THE SHAWNEE COUNTY DISTRICT COURT
CASE NUMBER: 2022-CV-000447

JOHN G. SCHULTZ   KS #22871
DANIELLE M. UZELAC KS #26533
8900 Ward Parkway
Kansas City, MO 64114
(816) 421-7100 Phone
(816) 421-7915 Fax
*jschultz@fsmlawfirm.com*
*duzelac@fsmlawfirm.com*
**ATTORNEY FOR DEFENDANT
ALLIANZ GLOBAL RISKS U.S.
INSURANCE COMPANY**

IN THE DISTRICT COURT OF SHAWNEE COUNTY, KANSAS
DIVISION NO. 8

| | | |
|---|---|---|
| LUANNE LEEDS as Executrix of the Estate of WILLIAM LEEDS, deceased, | ) ) ) | |
| Plaintiff, | ) ) | Case No.: 2022-CV-000447 |
| v. | ) ) | |
| ALLIANZ RISKS CONSULTING, L.L.C. d/b/a ALLIANZ GLOBAL RISKS US INSURANCE COMPANY, | ) ) ) ) | |
| and | ) ) | |
| ASSUREDPARTNERS AEROSPACE L.L.C d/b/a AIRSURE LIMITED, L.L.C., | ) ) ) | |
| Defendants. | ) | |

## ENTRY OF APPEARANCE

Danielle M. Uzelac of the law firm of Franke Schultz & Mullen, P.C. hereby enters her

appearance as additional counsel on behalf of Allianz Global Risks US Insurance Company,

incorrectly listed as Allianz Risk Consulting, L.L.C. d/b/a Allianz Global Risks US Insurance

Company. John G. Schultz shall continue as lead counsel.

1

Respectfully submitted,

**FRANKE SCHULTZ & MULLEN, P.C.**

*/s/ Danielle M. Uzelac*
JOHN G. SCHULTZ          KS #22871
DANIELLE M. UZELAC   KS # 26533
8900 Ward Parkway
Kansas City, MO  64114
(816) 421-7100 Phone
(816) 421-7915 Fax
jschultz@fsmlawfirm.com
duzelac@fsmlawfirm.com
**ATTORNEY FOR DEFENDANT**
**ALLIANZ GLOBAL RISKS**
**US INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2022 a true and accurate copy of the foregoing was electronically filed with the Clerk of the District Court via the Courts e-Filing system, and served via electronic mail to:

Ronald P. Pope
Thomas B. Diehl
RALSTON, POPE & DIEHL, L.L.C.
2913 SW Maupin Lane
Topeka, KS 66614
Phone: (785) 273-8008
Fax: (785) 273-0744
ron@ralstonpope.com
tom@ralstonpope.com
**ATTORNEYS FOR PLAINTIFF**

*/s/ Danielle M. Uzelac*
**ATTORNEY FOR DEFENDANT**
**ALLIANZ GLOBAL RISKS**
**US INSURANCE COMPANY**

2

ELECTRONICALLY FILED
2022 Aug 23 AM 10:31
CLERK OF THE SHAWNEE COUNTY DISTRICT COURT
CASE NUMBER: 2022-CV-000447



**Court:**        Shawnee County District Court

**Case Number:**  2022-CV-000447

**Case Title:**   Luanne Leeds vs. Allianz Risk Consulting LLC, et al.

**Type:**         Clerk's 14 Day Extension (Proposed)

SO ORDERED.

_____
Deputy Clerk for

/s/ Robert Mitchell, Deputy Clerk

Electronically signed on 2022-08-23 10:30:59    page 1 of 2

JOHN G. SCHULTZ   KS #22871
DANIELLE M. UZELAC KS #26533
8900 Ward Parkway
Kansas City, MO 64114
(816) 421-7100 Phone
(816) 421-7915 Fax
*jschultz@fsmlawfirm.com*
*duzelac@fsmlawfirm.com*
**ATTORNEY FOR DEFENDANT
ALLIANZ GLOBAL RISKS U.S.
INSURANCE COMPANY**

IN THE DISTRICT COURT OF SHAWNEE COUNTY, KANSAS
DIVISION NO. 8

| | | |
|---|---|---|
| LUANNE LEEDS as Executrix of the<br>Estate of WILLIAM LEEDS, deceased, | ) | |
| | ) | |
| | ) | Case No.:  2022-CV-000447 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALLIANZ RISKS CONSULTING, L.L.C. d/b/a | ) | |
| ALLIANZ GLOBAL RISKS US INSURANCE | ) | |
| COMPANY, | ) | |
| and | ) | |
| ASSUREDPARTNERS AEROSPACE L.L.C | ) | |
| d/b/a AIRSURE LIMITED, L.L.C., | ) | |
| | ) | |
| Defendants. | ) | |

**JOURNAL ENTRY**

The Clerk of the Court, having been duly advised, and pursuant to Supreme Court Rule

113, hereby grants defendant Allianz Global Risks US Insurance Company, incorrectly listed as

Allianz Risk Consulting, L.L.C. d/b/a Allianz Global Risks US Insurance Company, an additional

14 days up to and including September 5, 2022, in which to answer or otherwise file a responsive

pleading.

IT IS SO ORDERED.

_____                          _____
DATE                                                                        CLERK OF THE COURT

1

ELECTRONICALLY FILED
2022 Aug 25 PM 12:10
CLERK OF THE SHAWNEE COUNTY DISTRICT COURT
CASE NUMBER:  2022-CV-000447

Luanne Leeds

vs.

Allianz Risk Consulting LLC, et al. et. al.

**ALIAS SUMMONS**

To the above-named Defendant/Respondent:

       **AssuredPartners Aerospace LLC**

       **RA/Corporation Service Company 112 SW 7th Street, Suite c**

       **Topeka, KS  66603**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

       Ronald Paul Pope

       2913 SW Maupin Lane

       Topeka, KS 66614

within 21 days after service of summons on you.



Clerk of the District Court

Electronically signed  on 08/25/2022 01:35:48 PM

**Documents to be served with the Summons:**

Petition - Allianz Risk Consulting LLC