## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

LUANNE LEEDS, as Executrix of the Estate of
WILLIAM LEEDS, deceased,

      Plaintiff,

      v.

                       Case No. 22-4046-JAR-ADM

ALLIANZ GLOBAL RISKS US INSURANCE
COMPANY,

      Defendant.

## MEMORANDUM AND ORDER

This case involves an insurance-coverage dispute arising from an aircraft crash that occurred in Topeka, Kansas on July 31, 2017.  William Leeds, a passenger of the aircraft, died in the crash (the "Aircraft Crash").  Mr. Leeds's wife, Luanne Leeds, individually, for and on behalf of all surviving heirs-at-law of Mr. Leeds, and as Executrix of the Estate of Mr. Leeds, brought suit in the District Court of Shawnee County, Kansas, against the Estate of James Kevin Bergman, the pilot flying the aircraft that crashed, as well as the Estate of James Guglielmino, the owner of the aircraft that crashed (the "State Court Action").  On July 8, 2022, after a bench trial on the merits, the State Court found Mr. Bergman and Mr. Guglielmino jointly and severally liable to the Leeds family and the Estate of Mr. Leeds, and entered judgment against the Estate of Mr. Bergman and the Estate of Mr. Guglielmino in the amount of $5,115,165.25.[1]  Thereafter, Plaintiff Luanne Leeds, as Executrix of the Estate of Mr. Leeds, filed the present lawsuit against Defendant Allianz Global Risks US Insurance Company ("Defendant" or "Allianz"), seeking to recover that judgment amount from it on the theory that coverage exists under a policy issued by

---

[1] Doc. 60-13.

Defendant to Mr. Leeds for the injuries and damages he suffered in the Aircraft Crash (the "Allianz Policy").[2]

Before the Court are the parties' cross-motions for summary judgment (Docs. 56, 59). Each party seeks summary judgment on the two general coverage issues provided for in the Phase 1 Scheduling Order: (1) Whether the Allianz Policy was in full force and effect at the time of the Aircraft Crash; and (2) Whether the Allianz Policy applies to the Aircraft Crash.[3]  These motions are fully briefed and the Court is prepared to rule.  As described more fully below, the Court grants in part and denies in part both motions.

## I.    Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[4]  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[5]  "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[6]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[7]  An issue

---

[2] Doc. 1-1.  The parties stipulated to the dismissal of Plaintiffs' claims against AssuredPartners Aerospace L.L.C. d/b/a Airesure Limited were dismissed without prejudice (Doc. 4).

[3] Doc. 27.

[4] Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

[5] *City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[6] *Bones v. Honeywell Int'l, Inc*., 366 F.3d 869, 875 (10th Cir. 2004).

[7] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc*., 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir. 1998)).

of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."[8]

To prevail on a motion for summary judgment on a claim upon which the moving party also bears the burden of proof at trial, the moving party must demonstrate "no reasonable trier of fact could find other than for the moving party."[9]  The facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[10]  Rule 56(c)(4) provides that opposing affidavits must be made on personal knowledge and shall set forth such facts as would be admissible in evidence.[11]  The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.[12]  "Where, as here, the parties file cross-motions for summary judgment, we are entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts."[13]  Cross summary judgment motions should be evaluated as two separate motions.[14]

Finally, summary judgment is not a "disfavored procedural shortcut;" on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[15]  In responding to a motion for summary judgment, "a party cannot rest on

---

[8] *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)).

[9] *Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015).

[10] *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000).

[11] Fed. R. Civ. P. 56(c)(4).

[12] *Id.*; *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citation omitted).

[13] *James Barlow Family Ltd. P'ship v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997) (citation omitted).

[14] *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019).

[15] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed. R. Civ. P. 1).

ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[16]

## II.     Uncontroverted Facts

Many of the material facts in this matter are stipulated in the Phase 1 Pretrial Order.[17]  To the extent the following facts are not stipulated, they are uncontroverted or viewed in the light most favorable to the nonmoving party.  The Court does not consider facts presented by the parties that the record does not support or that are immaterial to resolution of the motion.  Nor does the Court consider legal arguments or conclusions recited in the parties' statement of facts.

### A.     The Pre-Aircraft Crash Events

In February 2017, Mr. Leeds sought to purchase a Cessna 182RG Skylane ("Cessna") aircraft from New Century Flyers, LLC ("NCF").  On February 1, 2017, an Aircraft Bill of Sale regarding the Cessna was created between NCF as the seller and Mr. Leeds as the purchaser.[18] On or around that same day, Mr. Leeds paid NCF $5,000 towards the purchase price of the Cessna.  Soon thereafter, Mr. Leeds secured the Allianz Policy from Defendant.[19]  In April 2017, however, Mr. Leeds informed NCF that he no longer wished to purchase the Cessna.  As such, Mr. Leeds never paid the remaining balance of $80,000 to purchase the Cessna beyond the initial $5,000.  Similarly, because Mr. Leeds never completed the purchase of the Cessna, he never registered it with the Federal Aviation Administration ("FAA").

---

[16] *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

[17] Doc. 55.

[18] Doc. 60-1.

[19] Doc. 60-3.

NCF subsequently sold the Cessna to William A. and/or Kimberlee A. Wernsman.  An addendum of the Aircraft Bill of Sale between NCF and the Wernsmans, dated July 26, 2017, provides:

> This is a temporary Bill of Sale. It transfers all legal rights of ownership to William and Kimberlee Wernsman.
>
> New Century Flyers LLC 'NCF' agrees to resign a new Bill of Sale and registration when the balance is paid within 60 days. Purchase can if chooses [sic] change the name with no change in terms.
>
> NCF agrees to pay for tires, tail pipe, mp guage and oil change [sic] a plug cleaning.  All other maintenance is responsibility of purchaser as of July 26, 2017.  Plane is sold as is with no implied warranties.
>
> Balance of $35,000.00 to be paid by Sept. 30th 2017th [sic].
>
> August and September Hangar Rent $320 per month to NCF.  This could be extended at the same rate if Hangar is available.
>
> NCF can use the airplane at $160.00 per hour until the balance is paid as long as it does not interfere with William and Kimberlee Wernsman schedule and with prior permission before flight.  All PIC [pilot-in-command] must be approved by William and Kimberlee Wernsman.[20]

The addendum also includes a notation indicating that the aircraft was "paid in full" on August 8, 2017.[21]

Defendant used a company named Elevon to serve as the Managing General Underwriter for the Allianz Policy.  Defendant, through Elevon, subsequently sought to cancel the Allianz Policy issued to Mr. Leeds for the Cessna.  On July 26, 2017, Tom Renfro, a representative of NCF, sent an email to Mr. Leeds informing him of the sale of the Cessna and letting him know

---

[20] Doc. 58-8.

[21] *Id.*

that he should cancel the Allianz Policy.[22]  Mr. Renfro copied Vince Cinque, Mr. Leeds's insurance broker for the Allianz Policy, on the email.[23]  Mr. Leeds responded to Mr. Renfro's email later that same day, congratulating him on the sale and confirming that he would cancel the Allianz Policy.[24]  Mr. Renfro followed up with Mr. Cinque, again that same day, asking him to confirm that he received the cancellation of the Allianz Policy.[25]

On August 1, 2017, Mr. Cinque told Elevon to cancel the Allianz Policy for the Cessna, effective July 26, 2017, as the Cessna had been sold by NCF.[26]  Elevon responded on August 3, 2017 that it would need a signed Lost Policy Release ("LPR") for the cancellation, which could be processed on Elevon's system.[27]  Mr. Cinque followed up with Elevon again on August 3, 2017, informing them that Mr. Leeds had asked him to cancel the Allianz Policy on July 26, 2017, because he had sold the Cessna, but was killed in the Aircraft Crash on July 31, 2017.[28] On August 18, 2017, Elevon issued Endorsement Number 20 to the Allianz Policy, titled "Cancellation Endorsement," indicating that the effective date of cancellation of the policy was July 26, 2017.[29]

### B.    The Aircraft Crash

On July 31, 2017, Mr. Leeds died in the Aircraft Crash in Topeka, Kansas.  At the time of the Aircraft Crash, Mr. Leeds was a passenger on a Piper PA-30 ("Piper") aircraft for the

---

[22] Doc. 58-9.

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] Doc. 58-10.

[27] *Id.*

[28] Doc. 58-11.

[29] Doc. 58-2.

purpose of receiving flight instruction and training.  Mr. Leeds did not own the Piper; James Guglielmino did.  Nor was Mr. Leeds the Pilot in Command ("PIC") of the Piper on the day of the Aircraft Crash, and he could not have been because he did not have Multiengine land privileges.  Kevin Bergman was the PIC of the Piper during the flight.  Both Mr. Gugliemino and Mr. Bergman also died in the Aircraft Crash that day.

### C.    Post-Aircraft Crash Communications Between the Parties

On August 18, 2017, Plaintiff's counsel sent an email to Defendant's claims adjuster, Stephen Heinz, attaching a letter of representation and associated authorization regarding the passing of Mr. Leeds.[30]  On August 23, 2017, Mr. Heinz responded, explaining that Mr. Leeds had cancelled the Allianz Policy and that the official cancellation date was July 26, 2017.[31]  Mr. Heinz further explained that because the Allianz Policy was not effective at the time of the Aircraft Crash, Defendant was unable to provide Plaintiff's counsel with a claim reference, and because Defendant had no insurable interest in the Aircraft Crash, it did not conduct any investigation into it.  Finally, Mr. Heinz told Plaintiff's counsel that a refund of the premium in the amount of $823.28 would be processed.  A check for that amount was sent to Mr. Leeds on September 15, 2017, but was never cashed, deposited, or otherwise negotiated.

### D.    The State Court Action

Mr. Leeds's widow, Plaintiff Luanne Leeds, individually for and on behalf of all surviving heirs-at-law of Mr. Leeds, and as Executrix of the Estate of Mr. Leeds, brought the State Court Action against the Estates of Mr. Bergman and Mr. Guglielmino for their negligence in causing or contributing to the cause of the Aircraft Crash that resulted in the death of her

---

[30] Doc. 58-6.

[31] *Id.*

husband.  The Estate of Mr. Guglielmino asserted a counterclaim against Plaintiff for the total loss of the Piper.[32]

On May 31, 2018, Plaintiff's counsel tendered defense and indemnity of the counterclaim brought against Plaintiff in the State Court Action to Defendant, and also demanded payment for funeral expenses.  Defendant denied the claim and coverage for defense of the counterclaim, explaining that Mr. Leeds cancelled the Allianz Policy on July 26, 2017, and it was no longer in effect on the date of the accident.[33]  Attorneys for the Estates of Mr. Bergman and Mr. Guglielmino similarly demanded a defense and indemnity from Defendant, but they received a similar denial letter from Mr. Heinz on behalf of Defendant dated August 14, 2018.

On July 8, 2022, after a bench trial on the merits, the State Court found Mr. Bergman and Mr. Guglielmino jointly and severally liable to the Leeds family and the Estate of Mr. Leeds and entered judgment against the Estates of Mr. Bergman and Mr. Guglielmino in the amount of $5,155,165.25.[34]

### E.      The Allianz Policy

#### 1.      The Duration of the Allianz Policy

The Allianz Policy had an effective policy period from February 18, 2017, to February 18, 2018.

Section 14 of the Allianz Policy, titled "Cancellation," states the following "Conditions":

> a) The first **Named Insured** shown on the Declarations may cancel this policy by mailing or delivering to the Company advance written notice of cancellation.

---

[32] There is no evidence in the record as to the resolution of this counterclaim.

[33] Doc. 58-3.

[34] Doc. 60-13.

b) The Company may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

(1) ten (10) days before the effective date of cancellation if the Company cancels for non-payment of premium or

(2) thirty (30) days before the effective date of cancellation if the Company cancels for any other reason.

c) The Company will mail or deliver notice to the first **Named Insured's** last mailing address known to the Company.

d) If this policy is cancelled, the Company will return any premium refund due.  If the Company cancels, the refund will be pro rata.  If the **Named Insured** cancels, the refund may be less than pro rata.  The cancellation will be effective even if the Company has not made or offered a refund.  The Company shall not be liable for any return **Physical Damage** premium in respect to any **aircraft** on which a **total loss** has been paid.

e) If notice is mailed, proof of mailing will be sufficient proof of notice.[35]

The Allianz Policy also includes Endorsement Number 18, titled "KANSAS CANCELLATION/NONRENEWAL ENDORSEMENT," which modifies the policy and adds provisions that supersede any provisions to the contrary unless that provision provides greater coverage or allowances.  These additional and superseding provisions are as follows:

1. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, stating the reasons for cancellation, at least:

a) 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

b) 30 days before the effective date of cancellation if we cancel for any other reason.

2. If this policy has been in effect for greater than 90 days or more, or if it is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

---

[35] Doc. 58-1 at 19.

a) Nonpayment of premium;

b) This policy was issued because of material misrepresentation;

c) You or any other insured violated any of the material terms and conditions of this policy;

d) Unfavorable underwriting factors, specific to you, exist that were not present at the inception of this policy;

e) A determination by the insurance commissioner that continuation of coverage could place us in a hazardous financial condition or in violation of the laws of Kansas; or

f) A determination by the insurance commissioner that we no longer have adequate reinsurance to meet our needs.[36]

## 2.    Insureds Under the Allianz Policy

The only aircraft listed under Item 4 of the Allianz Policy Declarations is the Cessna.[37] The Allianz Policy defines "Named Insured" as "the person or organization named in Item 1 of the Declarations."[38]  Item 1 of the Allianz Policy Declarations lists only Mr. Leeds.[39]  Similarly, Item 7 of the Allianz Policy Declarations states that Mr. Leeds "is and shall remain the sole owner" of the Cessna.[40]

"Insured" is defined under the Allianz Policy as: "not only the **Named Insured** but also any person while using or riding in the aircraft and any person or organization legally responsible for its use, provided the actual use is with the express permission of the **Named Insured** . . . ."[41]

---

[36] *Id.* at 47.

[37] *Id.* at 4.

[38] *Id.* at 8.

[39] *Id.* at 3.

[40] *Id.* at 4.

[41] *Id.* at 8.

### 3.     Liability Coverage Under the Allianz Policy

Section 1 of the Allianz Policy provides several classes of "Liability Coverages" under the "Insuring Agreements."[42]  For Coverages A through D, Defendant agreed to pay for the following liabilities caused by an occurrence and arising out of the ownership, maintenance, or use of the Cessna:

> **Coverage A - Bodily Injury Liability Excluding Passengers** (including any and all **related claims**) – To pay on behalf of the **Insured** all sums which the **Insured** shall become legally obligated to pay as damages because of **Bodily Injury** sustained by any person excluding any passenger;
>
> **Coverage B - Property Damage Liability** – To pay on behalf of the **Insured** all sums which the **Insured** shall become legally obligated to pay as damages because of **Property Damage**;
>
> **Coverage C - Passenger Bodily Injury Liability** (including any and all **related claims**) – To pay on behalf of the **Insured** all sums which the **Insured** shall become legally obligated to pay as damages because of **Bodily Injury** sustained by any **passenger** and **related claims** associated with such **passenger**;
>
> **Coverage D - Single Limited Bodily Injury and Property Damage Liability** (including any and all **related claims**) – To pay on behalf of the **Insured** all sums which the **Insured** shall become legally obligated to pay as damages because of **Bodily Injury** sustained by any person (excluding any **passenger** unless the words "**including passengers**" appear in Item 3 of the Declarations) and **Property Damage**[.][43]

Section 2 of the Allianz Policy provides for Medical Expense Coverage, labeled as Coverage E, which provides:

> [A]ll reasonable **medical expense** incurred within one year from the date of the injury, to or for each **passenger** (excluding any crew, unless the words "**including crew**" appear in **Item 3** of the Declarations) who sustains **Bodily Injury** caused by an

---

[42] *Id.* at 9.

[43] *Id.*

**occurrence**, provided the **aircraft** is being used by or with permission of the **Named Insured**.[44]

### 4.    Endorsements Under the Allianz Policy

The Allianz Policy also includes a number of Endorsements, only two of which are relevant here.  First, the Allianz Policy includes Endorsement Number 11, titled "NON-OWNED AIRCRAFT: PHYSICAL DAMAGE ENDORSEMENT."[45]  This endorsement extends the policy "to apply [coverage] to those sums which the Named Insured shall become legally liable to pay because of physical damage or loss to aircraft of others . . . being used by, or on behalf of, the Named Insured . . ."[46]

Second, the Allianz Policy includes Endorsement Number 12, titled "NON-OWNED AIRCRAFT: LIABILITY ENDORSEMENT."[47]  By its terms, this Endorsement modifies the Allianz Policy in the following ways:

> Such coverage as is afforded by this policy under Coverages A, B, C, D, and E also apply to the **Named Insured** (including any director, executive officer, partner, or employee, agent or stockholder thereof, but only while acting within his or her official duties as such) arising out of the use by, or on behalf of, the **Named Insured** of **aircraft** not owned in whole or in part by, registered to, or under a lease agreement with a term of more than thirty (30) days to the **Named Insured**.[48]

## III.    Discussion

Pursuant to the Phase 1 Scheduling Order, each party has moved for summary judgment seeking a declaration regarding the following coverage issues: (1) Whether the Allianz Policy

---

[44] *Id.*

[45] *Id.* at 38–39.

[46] *Id.*

[47] *Id.* at 40–41.

[48] *Id.*

was in full force and effect at the time of the Aircraft Crash; and (2) Whether the Allianz Policy applies to the Aircraft Crash.  The parties agree that Kansas law governs the substantive issues in this case.

The parties have filed cross-motions for summary judgment on each of the above coverage issues.  Plaintiff asserts that she is entitled to summary judgment regarding a declaration that the Allianz Policy was in full force and effect at the time of the Aircraft Crash, and that the Allianz Policy applies to the Aircraft Crash.  Similarly, Defendant asserts that it is entitled to summary judgment regarding a declaration that the Allianz Policy was not in full force and effect at the time of the Aircraft Crash, and that the Allianz Policy does not apply to the Aircraft Crash.  The Court addresses each of these coverage issues in turn.

### A. Whether the Allianz Policy was in Full Force and Effect at the Time of the Aircraft Crash

Plaintiff argues that the Allianz Policy was never effectively or appropriately cancelled pursuant to its terms and, therefore, the policy was still in full force and effect at the time of the Aircraft Crash.  Defendant responds that the Allianz Policy was effectively and appropriately cancelled by Mr. Leeds on July 26, 2017, after the Cessna was sold to the Wernsmans and, therefore, was not in full force and effect at the time of the Aircraft Crash.  Thus, the Court is tasked with determining whether there is a genuine issue of material fact regarding whether Mr. Leeds successfully cancelled the Allianz Policy on July 26, 2017.  The Court finds that there is not.

Plaintiff rests her argument on the fact that the Allianz Policy was not cancelled pursuant to any method provided for by its terms.  The Court agrees—and Defendant does not dispute— that cancellation did not occur pursuant to a method laid out in the Allianz Policy.  However, "failure to comply with the cancellation procedure set forth in the insurance policy does not

preclude other methods of cancellation."[49]  Indeed, "[a] method of cancellation provided for in an insurance policy is not necessarily exclusive so as to preclude an effective cancellation by mutual agreement without compliance with the method so provided."[50]  Under Kansas law, "there must be a meeting of the minds to form a bilateral agreement to cancel an insurance policy."[51]

Here, the undisputed facts show that Mr. Leeds told his insurance broker, Mr. Cinque, to cancel the Allianz Policy on July 26, 2017, and that on August 1, 2017, Mr. Cinque told Elevon to cancel the Allianz Policy effective July 26, 2017.  The undisputed facts also show that Elevon issued the Cancellation Endorsement for the Allianz Policy on August 18, 2017, and that Mr. Leeds was sent a refund check on September 15, 2017.  These undisputed facts indicate a meeting of the minds at the earliest on August 18, 2017—well after the date of the Aircraft Crash.  "Cancellation of an insurance policy by mutual consent requires more than communication of intent by one party to another.  An agreement between the insured and the insurer that both parties are to be excused from the contract is essential."[52]  Such an agreement may be entered into at any time *before* a loss.[53]  As of the date of the Aircraft Crash that resulted in Mr. Leeds's death—July 31, 2017—Mr. Leeds had not delivered notice to Defendant, nor had Defendant agreed to cancel the Allianz Policy.  Therefore, the Court is satisfied that the Allianz

---

[49] *Williamson v. Williamson*, No. 68,769, 1993 WL 13965797, at *2 (Kan. Ct. App. July 9, 1993).

[50] *Id.* (quoting *Shunga Plaza, Inc. v. Am. Emp'rs Ins. Co.*, 465 P.2d 987, Syl. ¶ 1 (Kan. 1970), *vacated on other grounds* in 206 Kan. 16, 16 (Kan. 1970)); *see also Vandegrift v. Gabel*, 766 P.2d 1299 (Kan. Ct. App. Jan. 6, 1989) ("We are of the opinion the trial court erred in holding the policy could only be terminated by strict adherence to the policy provisions.").

[51] *Barnett v. Life Ins. Inv. Co. of Am.*, 293 F. Supp. 2d 1220, 1225 (D. Kan. 2003) (citing *Shunga Plaza, Inc.*, 465 P.2d at 995 (dissenting opinion, adopted as opinion of the court upon rehearing at 476 P.2d 642 (Kan 1970)).

[52] *Williamson*, 1993 WL 13965797, at *3 (citing *Copley v. Pekin Ins. Co.*, 488 N.E.2d 1004, 1009 (Ill. 1986)).

[53] *Id.* (citing 43 Am. Jur. 2d, Insurance § 415, p. 483 (emphasis added)).

Policy was in full force and effect at the time of the Aircraft Crash.  As such, the Court grants Plaintiff summary judgment on this issue and denies Defendant's motion for summary judgment.

**B.      Whether the Allianz Policy Applies to the Aircraft Crash**

Plaintiff asserts that the Allianz Policy applies to the Aircraft Crash because of the inclusion of two endorsements to the Allianz Policy—the Non-Owned Endorsements, Numbers 11 and 12.  Defendant, on the other hand, asserts that the Allianz Policy does not apply to the Aircraft Crash because Mr. Leeds lacked an insurable interest and because Endorsement Number 12 does not apply to the facts of this case.  The Court first addresses whether Mr. Leeds had an insurable interest under the Allianz Policy, and then turns to whether Endorsements Numbers 11 and/or 12 provide or exclude coverage here.

**1.      Did Mr. Leeds Have an Insurable Interest Under the Allianz Policy?[54]**

Defendant argues that Mr. Leeds did not have an insurable interest under the Allianz Policy because he was never the "sole owner" of the aircraft, as required under Item 7 of the policy.  In response, Plaintiff asserts that Mr. Leeds was the sole owner of the aircraft and even if he was not, ownership (or lack thereof) does not automatically equate to having an insurable interest (or lack thereof).  For the reasons explained below, the Court finds: (1) that determination of whether Mr. Leeds was the sole owner of the Cessna is unnecessary to determine whether he had an insurable interest under the Allianz Policy; and (2) that Mr. Leeds

---

[54] The Court acknowledges and rejects Plaintiff's argument that Defendant waived its right to assert this argument because it did not initially provide this as a basis for denying coverage to Plaintiff.  To the contrary, Defendant explained its position on this issue in its first correspondence via email with Plaintiff's counsel denying coverage, and then again in its letter denying Plaintiff's request for defense and indemnity regarding counterclaims filed against Plaintiff in the State Court Action. *See* Doc. 58-6 ("Additionally, because of the lack of insurable interest in the event itself, we have not conducted nor completed an investigation thus the reason why we are unable to comply with your information request."); Doc. 58-3 ("Due to the fact that New Century Flyers LLC had already sold the aircraft at the time of the accident, there was no Insurable Interest under the subject Policy.").  Moreover, as a general matter, "waiver and estoppel cannot be used to expand the *coverage* of an insurance contract." *Hennes Erecting Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 813 F.2d 1074, 1079 (10th Cir. 1987) (citations omitted)

did have an insurable interest under the liability insurance coverage provisions of the Allianz Policy.

> **a.      Mr. Leeds's Ownership of the Cessna is Not Relevant to Determination of His Insurable Interest Under the Allianz Policy**

The parties have not cited nor has the Court found any Kansas law directly addressing the question posed here: whether the policy requirement that the named insured be the sole owner of the insured property is relevant to consideration of whether the named insured had an insurable interest in liability insurance.  Because this Court is "called upon to interpret state law, [it] must look to rulings of the highest state court" to guide its interpretation.[55]  Since the Kansas Supreme Court has not addressed this issue, the Court must predict how it would rule after giving "proper regard to relevant rulings of other courts of the State."[56]  To make this prediction, the Court "may also consider 'appellate decision in other states with similar legal principals . . . and the general weight and trend of authority in the relevant area of the law.'"[57]

In other jurisdictions, whether an insured has an insurable interest depends on whether the provisions at issue are for property insurance or for liability insurance.[58]  In liability coverage

---

[55] *Amparan v. Lake Powell Car Rental Cos.*, 882 F.3d 943, 947 (10th Cir. 2018) (quoting *Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1077 (10th Cir. 2007)).

[56] *Bill Barrett Corp. v. YMC Royalty Co.*, 918 F.3d 760, 765 (10th Cir. 2019) (quoting *Stickley*, 505 F.3d at 1077).

[57] *Amparan*, 882 F.3d at 947 (omission in original) (quoting *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 666 (10th Cir. 2007)).

[58] *See, e.g., Allstate Ins. Co. v. Smith*, 442 F. Supp. 89, 91 (E.D. Okla. 1977) ("[W]ith respect to liability insurance, insurable 'interest does not depend upon whether the insured has a legal or equitable interest in property, but upon whether he may be charged at law or in equity with the liability against which the insurance is taken out.'" (quoting 43 Am. Jur. 2d *Insurance* § 529 (1969)); *see also Mercury Cas. Co. v. Chu*, 229 Cal. App. 4th 1432, 1452 (Cal. App. 4th Sept. 24, 2014) ("Therefore, title is not the test of an insurable interest in a contract of liability insurance." (quoting 3 Couch on Insurance (3d ed. 2011) § 41:28)); *W. Am. Ins. Co. v. Bogush*, No. 03C-11-217, 2006 WL 1064069, at *5 (Del. Super. Ct. Apr. 12, 2006) ("Based on the foregoing, it is clear that defendants need not prove that [the insured] owned [the property], equitably or legally, to establish she had an insurable interest in the West American liability insurance.").

cases such as this one, the insurable interest "is to be found in the interest that the insured has in the safety of those persons who may maintain, or the freedom from damage to property which become the basis of, suits against him in case of their injury or destruction."[59]  Therefore, for purposes of liability coverage, while "no legal or equitable interest in the insured vehicle *as property* is necessary," an insurable interest can be found if "the insured may be held liable for damages incident to its operation and use."[60]

The Court predicts that the Kansas Supreme Court would follow this general trend of authority.  In *Maryland Casualty Company v. American Family Insurance Group of Madison, Wis.*, the Court addressed a situation in which the seller of an automobile failed to transfer title, which made the sale void under Kansas law.[61]  The Court held that the seller's failure to transfer the title meant, as a matter of law, that the seller of the automobile  was still technically the owner and therefore still had an insurable interest in coverage for property damage to the vehicle after the buyer wrecked the vehicle.[62]  In dicta, however, the Court left open the question that an insured may have an insurable interest in an automobile absent compliance with the vehicle titling statute, based on the insured's possible exposure to liability for damages incident to use and operation of the automobile.[63]  Therefore, because the Allianz Policy provisions at issue here are for liability insurance, as opposed to property insurance, the Court predicts that the Kansas

---

[59] *Norris v. Ins. Co. of N. Am.*, 215 S.E.2d 379, 387 (Ct. App. N.C. 1975) (first citing 3 Couch, *Insurance* 2d, § 24:159, p. 273 and then citing Annot., 1 A.L.R. 3d 1193 (1965)).

[60] *Id.* (citing Annot., 1 A.L.R. 3d 1193, § 3, p. 1197 (1965) (emphasis in original)).

[61] 429 P.2d 931, 936 (Kan. 1967); *see also* K.S.A. § 8-135(c)(5) and (6) (requiring when a vehicle is sold that a certificate of title pass from the seller to the buyer).

[62] *Md. Cas. Co.*, 429 P.2d at 937.

[63] *See Snodgrass v. State Farm Mut. Auto. Ins. Co.*, 804 P.2d 1012, 1018–19 (Kan. Ct. App. 1991) (discussing *Md. Cas. Co.*, 429 P.2d at 938 ("With respect to automobile liability insurance, there is authority that the general rule requiring an insured to have an insurable interest is satisfied by the insured's possible exposure to liability for damages incident to the use and operation of the automobile and does not depend upon his legal or equitable title in the insured vehicle." (citations omitted)).

Supreme Court would agree that the issue of ownership of the Cessna is irrelevant for purposes of determining whether Mr. Leeds had an insurable interest in liability coverage under the Allianz Policy.[64]

To the extent Defendant suggests that sole ownership is a condition precedent to imposing coverage liability on Defendant, the Court likewise rejects such argument. Here, Defendant agreed to pay for liabilities "caused by an occurrence and arising out of the ownership, maintenance, or use" of the Cessna.[65] That liability coverage was extended to non-owned aircraft in Endorsement Numbers 12 and 13. Thus, by its terms, the liability coverage under the Allianz Policy is not conditioned on sole ownership of the Cessna.[66] The "sole owner" language in Item 7 of the Allianz Policy may be relevant to other coverage provisions of the Allianz Policy but is not relevant to the liability coverage provisions. For these reasons, the Court need not determine whether Mr. Leeds ever had sole ownership of the Cessna and turns instead to whether Mr. Leeds had an insurable interest under the liability coverage provisions of the Allianz Policy.

> **b.      Mr. Leeds had an Insurable Interest in the Liability Coverage Provisions in the Allianz Policy**

Having established that ownership of the Cessna is not relevant to the analysis, the Court must now determine whether Mr. Leeds had an insurable interest under liability coverage provisions of the Allianz Policy. When deciding these types of cases, courts have noted that

---

[64] *See Kan. Nat. Res. Coalition v. U.S. Dep't of the Interior*, 382 F. Supp. 3d 1179, 1185 (D. Kan. 2019) (explaining dicta is "indicative of the stance that the Tenth Circuit would take if the issue was squarely before it.").

[65] Doc. 58-1 at 9.

[66] *See, e.g., Norris v. Ins. Co. of N. Am.*, 215 S.E.2d 379, 387 (Ct. App. N.C. 1975) (rejecting similar argument that sole ownership of the insured aircraft at issue imposed a contractual requirement that ownership must have been bested in the named insured as a condition precedent to imposing any liability upon the insurer; explaining that while relevant to certain coverages under the policy against physical damage to the insured plane itself, ownership was not relevant to establish an insurable interest in the case of liability insurance coverage) (first citing 3 Couch, *Insurance* 2d, § 24:159, p. 273 and then citing Annot., 1 A.L.R. 3d 1193 (1965)).

liability policies can only be issued in instances where the insured could be held liable.[67]  And in

the area of liability insurance, an individual has an unlimited insurable interest in his own

individual liability.[68]  Here, there is no question that Mr. Leeds could have been sued and

potentially held personally liable for his use of the Cessna or a non-Cessna aircraft, or if the use

of the Cessna or a non-Cessna aircraft was used at his direction, whether for personal injury or

property damage.  Therefore, Mr. Leeds certainly had an insurable interest in the liability

coverage provisions of the Allianz Policy.

 For these reasons, the Court denies Defendant's motion for summary judgment seeking a

declaration that the Allianz Policy does not apply to the Aircraft Crash because Mr. Leeds lacked

an insurable interest thereunder.

### 2. Endorsement Number 12

 Next, Defendant argues that the Allianz Policy does not apply to the Aircraft Crash

because Endorsement Number 12 excludes coverage.  Endorsement Number 12, titled "NON-

OWNED AIRCRAFT: LIABILITY ENDORSEMENT," states that all of the coverage afforded

by the Allianz Policy (as set forth in Coverages A through E) also applies to the Named Insured

"arising out of the use by, or on behalf of, the Named Insured of aircraft not owned in whole or

---

[67] *See, e.g., W. Am. Ins. Co. v. Bogush*, No. 03C-11-217, 2006 WL 1064069, at *5 (Del. Super. Ct. Apr. 12, 2006) ("[L]iability insurance must only be issued in instances where the insured could be held liable.") (quoting 44 Am. Jur. 2d Insurance § 1004 (2003)); *Progressive N. Ins. Co. v. Consol. Ins. Co.*, 673 N.E.2d 522, 525 (Ind. Ct. App. 1996) ("Therefore, liability insurance must only be issued in instances where the insured could be held liable.").

[68] *See, e.g.,* 7 Am. Jur. 2d, Automobile Insurance, § 20 ("[T]herefore, in the area of liability insurance, a person or other legal entity has an unlimited insurable interest in his or its individual liability."); *see also* 3 Couch on Insurance (3d ed. 2011) § 41:28 ("Thus, an individual has an unlimited insurable interest in his or her own personal liability.").

in party by, registered to, or under a lease agreement with a term of more than thirty (30) days to the Named Insured."[69]

Defendant argues that the language in Endorsement Number 12 works to exclude liability coverage for anyone other than the Named Insured for occurrences caused by use of a non-Cessna aircraft.  In other words, it is Defendant's position that under Endorsement Number 12, Defendant would be obligated to pay a victim of bodily injury or property damage *on behalf of Mr. Leeds* if he were found legally obligated to pay such damages arising out of an incident involving a non-Cessna aircraft, but that Defendant is not obligated to pay a victim of bodily injury or property damage *on behalf of anyone else* found legally obligated to pay such damages arising out of an incident involving a non-Cessna aircraft.

Plaintiff, on the other hand, argues that this language in Endorsement Number 12 works to expand liability coverage to cover the Named Insured's injuries as a Passenger for occurrences caused by Bergman's negligence while piloting the Piper on behalf of the Named Insured.  In other words, Plaintiff's position is that under Endorsement Number 12, Defendant would be obligated to pay a victim of bodily injury or property damage—even if that victim is the Named Insured himself—*on behalf of the Named Insured or another Insured*, if the Named Insured or another Insured is found obligated to pay for such damages arising out of an occurrence involving a non-Cessna aircraft.

To resolve this dispute, the Court must first determine whether the language at issue is ambiguous, and then it must construe the language accordingly.  Under Kansas law,

> The language of a policy of insurance, like any other contract, must, if possible, be construed in such manner as to give effect to the intention of the parties.  Where the terms of a policy of insurance are ambiguous or uncertain, conflicting, or susceptible of

---

[69] Doc. 58-1 at 40–41.

> more than one construction, the construction most favorable to the
> insured must prevail.  Since the insurer prepares its own contracts,
> it has a duty to make the meaning clear.  If the insurer intends to
> restrict or limit coverage provided in the policy, it must use clear
> and unambiguous language in doing so; otherwise, the policy will
> be liberally construed in favor of the insured.[70]

But, "if the language in an insurance policy is clear and unambiguous, it must be construed in its

plain, ordinary, and popular sense," and the court must enforce the contract as made.[71]  "Whether

an ambiguity exists in a written instrument is a question of law to be decided by the court."[72]  To

determine whether a policy is ambiguous, a court must decide what a reasonably prudent insured

would understand the policy language to mean.[73]  "Ambiguity exists when the policy 'contains

language of doubtful or conflicting meaning based on a reasonable construction of the policy's

language.'"[74]  "If the terms are ambiguous, 'the construction most favorable to the insured must

prevail.'  But '[c]ourts should not strain to find an ambiguity where common sense shows there

is none.  The court must consider the terms of an insurance policy as a whole, without

fragmenting the various provisions and endorsements.'"[75]

 While complicated, the Court finds that the language at issue in Endorsement Number 12,

together with the corresponding coverage provisions under the Allianz Policy, is clear and

unambiguous.  It is clear from the text of Liability Coverages A through E that Defendant agreed

to provide liability coverage to an Insured (which includes the Named Insured) for various

---

[70] *Miller v. Great Am. Ins. Co.*, 601 F. Supp. 3d 953, 962 (D. Kan. 2022) (quoting *Cath. Diocese of Dodge City v. Raymer*, 840 P.2d 456, 459 (Kan. 1992)).

[71] *Bhd. Mut. Ins. Co. v. M.M. ex. rel. T.C.*, 292 F. Supp. 3d 1195, 1205 (D. Kan. 2017) (applying Kansas law) (citing *Marshal v. Kan. Med. Mut. Ins. Co.*, 73 P.3d 120 (Kan. 2003)).

[72] *Cath. Diocese*, 840 P.2d at 458 (citation omitted).

[73] *Miller*, 601 F. Supp. 3d at 962 (citing *Bhd. Mut. Ins.*, 292 F. Supp. 3d at 1205).

[74] *Id.*

[75] *Id.* (first citing *Bhd. Mut. Ins.*, 292 F. Supp. 3d at 1205, and then citing *City of Shawnee v. Argonaut Ins. Co.*, 546 F. Supp. 2d 1163, 1174 (D. Kan. 2008)).

liabilities caused by the ownership, use, or maintenance of the Cessna.  It is likewise clear from the text of Endorsement Number 12 that Defendant also agreed to provide liability coverage to the Named Insured only for those same liabilities caused by the use by or on behalf of the Named Insured of a non-Cessna airplane.  Taking these provisions together, it is clear to the Court—and the Court is satisfied that it would be clear to a reasonable insured—that Defendant did not agree to provide liability coverage to an Insured that is not the Named Insured, for any liabilities caused by the use by or on behalf of the Named Insured of a non-Cessna airplane.

Applied to the case at hand, this means that Defendant did not agree to provide liability coverage to Bergman—even if he was an Insured, which the Court does not need to decide—for liabilities caused by the use by or on behalf of Mr. Leeds of the Piper.  If Mr. Leeds was sued and found liable for, as an example, bodily injury or property damage, caused by the negligent acts, omissions, or commissions of Bergman while piloting the non-Cessna on Mr. Leeds's behalf, then Defendant would be obligated to make payments on Mr. Leeds's behalf to whomever sued Mr. Leeds.  But that is not the case here; Mr. Leeds has not—and could not have—sued himself.

Thus, the Court agrees with Defendant that Endorsement Number 12 does not provide liability coverage to Plaintiff for any liabilities of Bergman in the Allianz Policy.  Therefore, the Court grants Defendant and denies Plaintiff summary judgment on this basis.  The Court does not reach Defendant's alternative argument that the Piper was not used for the purpose of "Pleasure and Business" at the time of the crash.

### 3.    Endorsement Number 11

Finally, Plaintiff moves for summary judgment seeking a declaration that Endorsement Number 11 extends coverage for the Aircraft Crash.  It is Plaintiff's position that, based on her interpretation of the relevant provisions, Mr. Leeds was owed a duty by Defendant to defend

against counterclaims asserted against his Estate in the State Court Action under Endorsement Number 11.  Endorsement Number 11, titled "NON-OWNED AIRCRAFT: PHYSICAL DAMAGE ENDORSEMENT," provides that:

> This policy is extended to apply to those sums which the **Named Insured** shall become legally liable to pay because of **physical damage** or **loss** to **aircraft** of others described in Paragraph 3 below (including the resultant loss of use thereof) being used by, or on behalf of, the Named Insured, provided such **aircraft** is not registered to, owned in whole or in part by, under a lease of more than a thirty (30) day term to, or under a lease-purchase option agreement to, or under the exclusive control of the **Named Insured**, or officer, partner, or employee thereof, or a member of the household of any of the foregoing.[76]

Plaintiff argues that pursuant to this Endorsement, Defendant was liable to and obligated to defend Plaintiff against the counterclaim filed by the Estate of Mr. Guglielmino in the State Court Action, and that Defendant breached its duty by refusing to do so.  It is Plaintiff's position that because this counterclaim sought damages from Mr. Leeds's Estate for the "total loss" of the Piper, a non-Cessna airplane, Defendant was liable for such claims under Endorsement Number 11.  And because Defendant was liable for these counterclaims under Endorsement Number 11, the argument goes, Defendant had a duty to defend Plaintiff, and its failure to do so constituted a breach of such duty.

Defendant argues that this argument should not be considered by the Court at this point because it is outside the scope of Phase 1.  The Court agrees.  Under the Phase 1 Scheduling Order, the following coverage questions are at issue: (1) Whether the Allianz Policy was in full force and effect at the time of the aircraft crash at issue; and (2) Whether the Allianz Policy applies to the subject aircraft accident.[77]  The Phase 1 Pretrial Order, which  controls the issues

---

[76] Doc. 58-1 at 38.

[77] Doc. 27.

on the parties' instant summary judgment motions, does not set forth claims related to or even mention Endorsement 11.[78]  Thus, the questions Plaintiff presents in this motion—whether Endorsement Number 11 applies to a counterclaim for property damage asserted against Plaintiff in the State Court Action, and whether Defendant breached its duty to defend Plaintiff against such claim—do not fall under either of those two Phase 1 coverage questions.[79]  Addressing these questions in Phase 1 is premature, as the parties have only conducted discovery as to the two limited questions set forth in the Phase 1 Scheduling Order and, therefore, the Court denies Plaintiff's motion for summary judgment on these issues without prejudice to raise them in the next phase of these proceedings.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for Summary Judgment on Phase 1 Issues (Doc. 56) is **granted in part** and **denied in part**.  The motion is granted on Plaintiff's claims that the Allianz Policy was in full force and effect at the time of the aircraft crash.  The motion is denied on Plaintiff's claim that Endorsement Number 12 to the Allianz Policy provides coverage to Plaintiff for the aircraft crash.  The motion is denied without prejudice on the issue of whether Defendant breached its duty to defend Plaintiff against the State Court counterclaim under Endorsement Number 11 to the Allianz Policy, which will proceed to the next phase of this case pursuant to Judge Mitchell's Phase 1 Scheduling Order (Doc. 27).

---

[78] *See* Doc. 55.

[79] Moreover, it is not apparent to the Court how Endorsement 11 is relevant to the claims asserted in this case.  As Defendant points out, Plaintiff is not seeking property damages or any reimbursement for physical damage to the Piper; instead, Plaintiff only seeks damages for the amount of the State Court Judgment for survivor claims and wrongful death.  No property damages were included in that Judgment and Plaintiff has not asserted any claim for property damage to the Piper at any point in this case.  And as previously noted, there is no evidence in the record regarding resolution of this counterclaim.

**IT IS FURTHER ORDERED BY THE COURT** that Defendant Allianz Global Risks US Insurance Company's Motion for Summary Judgment (Doc. 59) is **granted in part** and **denied in part**.  The motion is granted on Defendant's claim that Endorsement Number 12 to the Allianz Policy excludes coverage to Plaintiff for the aircraft crash.  The motion is denied on Defendant's claims that the Allianz Policy was not in full force and effect at the time of the aircraft crash, and that Mr. Leeds did not have an insurable interest under the Allianz Policy.

**IT IS SO ORDERED.**

Dated: May 18, 2023

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE
